## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARTHUR HAMMELL and LINDA HAMMELL <br><br> Plaintiffs, <br><br><br> v. <br><br><br> AIR & LIQUID SYSTEMS CORPORATION, et al. <br><br>Defendants. | HON. MARY L. COOPER, USDJ <br><br> Civil Action No: 3:14-cv-0013 (MLC)(TJB) |

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR REMAND, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGEMENT STRIKING DEFENDANTS' GOVERNMENT CONTRACTOR DEFENSE

SZAFERMAN, LAKIND,
 BLUMSTEIN & BLADER, P.C.
By: Robert E. Lytle, Esq.
101 Grovers Mill Rd., Suite 200
Lawrenceville, New Jersey 08648
Telephone:  (609) 275-0400
Fax:  (609) 275-4511

LEVY KONIGSBERG, LLP
By:  Moshe Maimon, Esq.
    Joseph Mandia, Esq.
101 Grovers Mill Rd., Suite 200
Lawrenceville, New Jersey 08648
Telephone:  (609) 275-0400
Fax:  (609) 275-4511
*Attorneys for Plaintiffs*

*Of Counsel and On the Brief*
  Stephen Skillman, Esq.

*On the Brief*
  Robert E. Lytle, Esq.

1071318.1

# TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.    The Court Should Remand this Case to State Court Because the Government Contractors' Notices of Removal Do Not Raise a Colorable Federal Defense of Governmental Contractor Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    II    If the Court Determines That Defendants Have Presented a Colorable Defense of Governmental Contractor Immunity That Requires Denial of Plaintiffs' Motion for Remand, the Court Should Grant Partial Summary Judgment Striking this Defense Because it Is Undisputed under the Only Competent Evidence Before the Court That the Navy Never Approved the Defendants' Decisions Not to Give Warnings about the Asbestos Contained in Their Products . . . . . . . . . . . . . . . . . . . . . 30

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Accord Oliver v. Oshkosh Truck Corp.* 96 F.3d 1003 . . . . . . . . . . . . . . . . 9, 28

*Baker v. Air & Liquid Sys. Corp.*, Civil No. 11-8-GPM, 2011 WL 499963 . . . . 9
    *3 (S.D. Ill. Feb. 7, 2011)

*Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988) . . . . . . . . 7, 27, 28, 29

*Butler v. Ingalls Shipbuilding, Inc.*, 89 F.3d 582 (9th Cir. 1996) . . . . . . . . . . . . . 8

*Cardaro v. Aerojet Gen'l. Corp.*, Civil No. 05-2684, 2010 WL 3488207 . . . . . . 9
    (E.D. La. Aug. 27, 2010)

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . 31

*Cuomo v. Air & Liquid Sys. Corp.*, No. 13-cv-273 (SAS), 2013 . . . . . . . . . . . . 9
    WL 5913379 (S.D.N.Y., Nov. 1, 2013)

*Densberger v. United Techs. Corp.*, 297 F.3d 66 (2d Cir. 2002) . . . . . . . . . . . 28
    *cert. denied*, 537 U.S. 1147 (2003)

*Early v. Northrop Grumman Corp.*, No. 2:13-cv-3130, 2013 WL 3872218 . . . 15
    (C.D. Cal. July 24, 2013)

*Feidt v. Owens Corning Fiberglass Corp.*, 153 F.3d 124 (3d Cir. 1998) . . . . . . 7

*Getz v. Boeing Co.*, 654 F.3d 852 (9th Cir. 2011) . . . . . . . . . . . . . . . 2, 8, 28, 32
    *cert. denied*, 132 S.Ct. 1582 (2012)

*Green v. A.W. Chesterton Co.*, 366 F. Supp. 2d 149 (D. Maine 2005) . . . . . . . 33

*Hagen v. Benjamin Foster Co.*, . . . . . . . . . . . . . . . . . . . . . . . 10, 25, 26, 28, 29
    739 F. Supp. 2d 770 (E.D. Pa. 2010)

*Hilbert v. McDonnell Douglas Corp.*, 529 F. Supp. 2d 187 (D. Mass. 2008) . . 10

*Holdren v. Buffalo Pumps, Inc.*, . . . . . . . . . . . . . . . . 10, 16, 24, 25, 27, 29, 32
    614 F. Supp. 2d 129 (D. Mass. 2009)

*In re Asbestos Litig.*, 661 F. Supp. 2d 451 (D. Del. 2009) . . . . . . . . . . . . . . . . 9

*In re Joint Eastern & Southern District of* . . . . . . . . . . . . . . . . . . . . *8, 28, 32*
    *New York Asbestos Litigation*, 897 F.2d 626 (2d Cir. 1990)

*Lindenmayer v. Allied Packing & Supply, Inc.*, No. C09–05800 TEH, . . . . . . . . 9
    2010 WL 234906 (N.D. Cal. Jan. 14, 2010)

*McMann v. Air & Liquid Systerm Corp.*, Case No. C13-5721 . . . . 14, 15, 16, 24
    (W.D. Wash. Oct. 22, 2013)

*Mesa v. California*, 489 U.S. 121 (1989) . . . . . . . . . . . . . . . . . . . . . . . . 7

*Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992 (7th Cir. 1996) . . . . . . . . . . . . 7, 28
    *cert. denied*, 520 U.S. 1116 (1997)

*Prewett v. Goulds Pumps (IPG)*, No. C09-0838 RSM, . . . . . . . . . . 9, 13, 16, 24
    2009 WL 2959877 (W.D. Wash. Sept. 9, 2009)

*Tate v. Boeing Helicopters* . . . . . . . . . . . . . . . . . . . . 2, 7, 8, 9, 25, 27, 29, 32
    55 F.3d 1150 (6th Cir. 1995)

*Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n of Philadelphia* . . . . . . . 30
     657 F.2d 29 (3d Cir. 1981)

*Westmiller v. Imo. Indus., Inc.*, No. C05-945 RSM, 2005 WL 2850334 . . . 10, 33
     (W.D. Wash. Oct. 20, 2005)

*Williams v. Gen. Elec. Co.*, 418 F. Supp. 2d 610 (M.D. Pa. 2005) . . . . . . . . . . 10

## FEDERAL RULES

FED. R. CIV. P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

FED. R. CIV. P. 56(c)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32

## FEDERAL STATUTES

28 U.S.C. § 1442(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 35

## PRELIMINARY STATEMENT

This is a mesothelioma personal injury action that Plaintiffs brought in the Superior Court of New Jersey, Middlesex County. Plaintiff Arthur Hammell developed mesothelioma as a result of his exposure to asbestos. One alleged source of this exposure was from turbines and boilers sold to the United States Navy by Defendants Foster Wheeler Energy Corporation ("Foster Wheeler"), General Electric Company ("General Electric") and CBS Corporation f/k/a Westinghouse Electric Corporation ("Westinghouse"), which Mr. Hammell was exposed to while serving in the Navy from 1962 to 1964. Consequently, Plaintiffs joined these contractors as Defendants in the action. Plaintiffs' claims against these Defendants are limited to a strict liability cause of action which alleges that they failed to include any warnings about the dangers of asbestos either on the products they sold to the Navy or in the manuals that accompanied those products.

Foster Wheeler, General Electric and Westinghouse have removed this case to Federal District Court on the ground that they are immunized from liability by the government contractor defense and that they are entitled to have that defense determined by a federal court. Plaintiffs now move to remand the case to state court, or in the alternative for partial summary judgment, on the ground that the

affidavits Defendants have submitted with their Notices of Removal do not provide an adequate factual foundation to support a claim that they are immunized from liability based on their failure to provide warnings regarding the dangers of the asbestos in their products.

To avail itself of the government contractor defense in a failure to warn case, a military contractor must show that it acted in compliance with "reasonably precise specifications" imposed upon it by the military in deciding whether to provide warnings, and if warnings were provided, the content of those warnings. *Getz v. Boeing Co.,* 654 F.3d 852, 866 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 1582 (2012); *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995). The affidavits Defendants have submitted in support of their Notices of Removal would not support such a finding. Instead, those affidavits, as well as the affidavit of Captain (Ret.) Arnold Moore submitted by Plaintiffs in support of this motion, show:

- There is no evidence any of the Defendants <u>ever</u> made any effort to warn Navy servicemen about the hazards of the asbestos contained in the boilers and turbines they sold to the Navy.

- There is no evidence the Navy had any involvement in the Defendants' decision not to issue warnings about the dangers posed by the asbestos in their products.

- The relevant Navy specifications for the time period of Plaintiff

Hammell's service required equipment manufacturers to include warnings about the hazards associated with the use of their equipment in "technical manuals," with no mention of, or exemption for, asbestos-related hazards.

Unable to offer a single document reflecting any effort by any of the Defendants to warn Navy servicemen about asbestos, or reflecting any involvement by the Navy with their decisions not to provide such warnings, Defendants offer conclusory and unsupported affidavits from Ben J. Lehman, J. Thomas Schroppe and David Hobson. Significantly, none of these affiants point to any direct order or document prohibiting or even in any way addressing warnings about the dangers of asbestos. Nor do any of those affiants claim to have personal knowledge of any specific instance in which the Navy prohibited any Defendant from warning about any product hazard, let alone one as deadly as asbestos.

If there had been any prohibition against such warnings or directions regarding their contents, it reasonably could be expected that this would be reflected in the Navy archives in the form of military specifications, memoranda or even letters. However, the Lehman, Schroppe and Hobson affidavits are not accompanied by any such written documentation. The only evidence of actual Navy documents dealing with the responsibility of military contractors to provide

1023841.2                                    3

warnings concerning the dangers posed by their products are the voluminous attachments to the affidavit of Captain Moore submitted in support of Plaintiffs' motion. Those materials demonstrate that the Navy required military contractors to give warnings concerning the dangers posed by their products starting in the 1930s and continuing through the completion of Plaintiff Hammell's military service in 1964. Defendants here cannot immunize themselves from liability for the failure to provide adequate warnings about the dangers posed by their products simply because the Navy retained ultimate authority to approve or disapprove such warnings if the contractors had proposed them.

## PROCEDURAL HISTORY

The procedural history of the case can be briefly stated. On November 15, 2013, Plaintiffs filed their complaint in the Superior Court, Law Division. On January 2, 2014, Foster Wheeler and Westinghouse filed a notice of removal of the action to Federal District Court. On January 13, 2014, General Electric filed a notice joining in the removal. Plaintiffs now move to remand the case to state court.

1023841.2

4

## STATEMENT OF FACTS

For there Statement of Facts, Plaintiffs incorporate as if fully set forth herein their *L.Civ.R.* 56.1 Statement of Undisputed Material Facts ("SUMF"). The relevant facts consist of the statements contained in the affidavits supplied by Defendants from Ben J. Lehman, J. Thomas Schroppe and David Hobson, as well as the affidavit supplied by Plaintiffs from Captain Arnold Moore, including the voluminous exhibits that he supplies which address whether the Navy ever approved Defendants' decisions not to provide any warnings concerning the dangers posed by the asbestos contained in the boilers and turbines they sold to the Navy. To appreciate the significance of those statements, it is necessary first to set forth the law applicable to the government contractor defense in a case asserting a strict liability failure to warn claim. Therefore, Plaintiffs' discussion of the statements in the foregoing affidavits is deferred to the argument section of this brief, after a presentation of the applicable law.

1023841.2

5

# ARGUMENT

## POINT I

### THE COURT SHOULD REMAND THIS CASE TO STATE COURT BECAUSE THE GOVERNMENT CONTRACTORS' NOTICES OF REMOVAL DO NOT RAISE A COLORABLE FEDERAL DEFENSE OF GOVERNMENTAL CONTRACTOR IMMUNITY

Foster Wheeler, General Electric and Westinghouse have removed this case to Federal District Court pursuant to 28 U.S.C.§ 1442(a)(1), which is commonly referred to as the Federal Officer Removal Statute. That section provides in pertinent part:

> A civil action . . . commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district . . . embracing the place wherein it is pending:
>
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or any agency thereof, in an official or individual capacity, for or relating to any act under color of such office[.]

"To establish removal jurisdiction under section 1442(a)(1), a defendant . . . must establish that (1) it is a 'person' within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct 'acting under' a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office."

1023841.2

6

*Feidt v. Owens Corning Fiberglass Corp.*, 153 F.3d 124, 127 (3d Cir. 1998); *see Mesa v. California*, 489 U.S. 121, 134-139 (1989).

The Defendants who removed this case to Federal District Court manufactured asbestos-containing turbines and boilers which were installed in the USS Roan, a ship on which Plaintiff Arthur Hammell worked during his service in the United States Navy from 1962 to 1964. Defendants contend that they are immunized from liability by the government contractor defense for failing to provide any warnings to Navy personnel such as Plaintiff about the dangers posed by the asbestos in their products.

To avail itself of this defense, in a case asserting a strict liability claim for a failure to warn of the dangers posed by use of its product, a government contractor must show that "(1) the United States exercised its discretion and approved the warnings, if any; (2) the contractor provided warnings that conformed to the approved warnings; and (3) the contractor warned the United States of the dangers in the equipment's use about which the contractor knew but the United States did not." *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995); *see Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003-04 (7th Cir. 1996), *cert. denied*, 520 U.S. 1116 (1997). "[T]o satisfy the first condition – – government approval – – in failure to warn cases,

the government's involvement must transcend rubber stamping." *Tate*, 55 F.3d at 1157. The government contractor must actually propose warnings that the government "substantially approves[.]" *Id.* Put differently, to avail itself of the government contractor defense, "the contractor must show that it 'act[ed] in compliance' with 'reasonably precise specifications' imposed on it by the United States in deciding whether 'to provide a warning.'" *Getz v. Boeing Co.*, 654 F.3d at 866 (quoting *Butler v. Ingalls Shipbuilding, Inc.*, 89 F.3d 582, 586 (9th Cir. 1996)).

The courts have recognized that the military may approve the design of a product supplied by a government contractor without addressing the safety warnings that should be given to military personnel that use the product. In *Tate*, the Sixth Circuit stated that "[i]n the government contractor defense context, design defect and failure to warn claims differ practically as well as theoretically. Simply because the government exercises discretion in approving a design does not mean that the government considered the appropriate warnings, if any, that should accompany the product." 55 F.3d at 1156. Similarly, in *In re Joint Eastern & Southern District of New York Asbestos Litigation,* 897 F.2d 626, 631 (2d Cir. 1990), the Court observed that "it is not unreasonable to imagine that, as in this case, government contracts often may focus upon product content and design

1023841.2

8

while leaving their safety-related decisions, such as . . . the nature of product warnings, to the contractor's sole discretion."

A significant number of District Court decisions have recognized that the kind of conclusory affidavits upon which Defendants rely in support of their notices of removal do not provide an adequate foundation for finding that the government "substantively approve[d]," *Tate*, 55 F.3d at 1157, the contractor's warnings or, as in this case, the total absence of any warnings, about the dangers posed by its product. *See, e.g., Cuomo v. Air & Liquid Sys. Corp.*, No. 13-cv-273 (SAS), 2013 WL 5913379 *2, 3 (S.D.N.Y., Nov. 1, 2013)(granting the plaintiff's motion to remand - despite the conclusory claim made by the defendant's expert that the military would not have approved asbestos related warnings if they were submitted for consideration - because the affidavits supplied by the defendant "provided no evidence indicating that the Navy either forbid an asbestos warning or actively dictated the substance of any proposed warning"); *Accord*, Baker *v. Air & Liquid Sys. Corp.*, Civil No. 11-8-GPM, 2011 WL 499963, *3 (S.D. Ill. Feb. 7, 2011); *Cardaro v. Aerojet Gen'l. Corp.*, Civil No. 05-2684, 2010 WL 3488207, *2, 7 (E.D. La. Aug. 27, 2010); *Lindenmayer v. Allied Packing & Supply, Inc.*, No. C09–05800 TEH, 2010 WL 234906, *4, 6-7 (N.D. Cal. Jan. 14, 2010); *In re Asbestos Litig.*, 661 F. Supp. 2d 451, 454-55 (D. Del. 2009); *Prewett v. Goulds*

1023841.2                                    9

*Pumps (IPG)*, No. C09-0838 RSM, 2009 WL 2959877, *6, 7 (W.D. Wash. Sept. 9, 2009)(discussed *infra*); *Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129, 138-39, 145 (D. Mass. 2009)(discussed *infra*); *Hilbert v. McDonnell Douglas Corp.*, 529 F. Supp. 2d 187, 197-203 (D. Mass. 2008); *Williams v. Gen. Elec. Co.*, 418 F. Supp. 2d 610, 615-16 (M.D. Pa. 2005); *Westmiller v. Imo. Indus., Inc.*, No. C05-945 RSM, 2005 WL 2850334, *2, 3 (W.D. Wash. Oct. 20, 2005); *Contra, Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770 (E.D. Pa. 2010).

*Holdren* is a leading case, which subsequent cases have followed. The facts in *Holdren*, as in many of the other cases upon which Plaintiffs rely, were quite similar to the facts in this case. The plaintiff had worked as a boiler technician on various Navy ships and in Navy shipyards for a substantial period during which he was exposed to asbestos. 614 F. Supp. 2d at 137-38. This exposure caused him to develop mesothelioma. *Id.* at 138. The plaintiff brought suit in state court, claiming that the manufacturers of the asbestos-containing products to which he had been exposed in the Navy, which included General Electric and Foster Wheeler, had breached their duties to him by failing to warn about the health hazards posed by asbestos. *Id.* The manufacturers of the asbestos-containing products sought to remove the actions to Federal District Court on the ground that the Navy would have rejected any warnings the manufacturers attempted to

provide concerning the dangers posed by asbestos. *Id.* However, the proofs relied

upon by the manufacturers in support of removal did not include any evidence that

"the Navy ever exercised its final authority in any fashion that either expressly

barred or broadly preempted the inclusion of asbestos warnings with [the

manufacturer's] equipment." *Id.* at 139.

The District Court concluded that, in the absence of such evidence, removal

was not warranted and the case should be remanded to state court:

> When the military commissions a product, its design specifications
> reflect a trade-off between safety and performance that trumps
> conflicting state law. Warnings, by themselves, do not necessarily
> jeopardize that basic policy judgment. Rather, the decision not to
> warn about a particular hazard involves a separate discretionary
> judgment and requires separate proof . . . In order for a contractor to
> avoid liability, the decision not to warn must be the government's, not
> the contractor's, and it must reflect a federal interest incompatible
> with the important health and safety requirements of state law. . .
>
> The removing defendants have together submitted volumes of
> evidence seeking to show that the Navy would not have permitted
> them to warn about the dangers of asbestos, if they had tried. But the
> Court's decision rests ultimately on what is missing from the record.
> The defendants have submitted no evidence that the Navy expressly
> prohibited asbestos warnings by manufacturers; no evidence that they
> ever attempted to warn about asbestos on products destined for the
> Navy; no evidence that the Navy ever rejected any other
> manufacturer's proposed asbestos warning; and no evidence that
> defendants warned of asbestos on other, non-military equipment they
> produced during the same period, by contrast to the equipment they
> supplied to the Navy. Finally, they offer no persuasive evidence of an
> overall Navy-wide policy that would have conflicted with

manufacturer asbestos warnings.

> All told, the manufacturers do not claim that the Navy ever offered them any guidance on asbestos warnings, nor that they themselves ever contemplated warning about the dangers of asbestos. Their defense, instead, rests entirely on an untested hypothetical: If they had made such a proposal, the Navy *would have* refused that recommendation. This account rings of post-hoc justification.

> Under the circumstances, the Court finds that defendants have not shown the type of genuine and "significant conflict" between federal policy and state law that would support the federal contractor defense.

[*Id.* at 137].

The Court further explained:

> At its root, the [government contractor] defense may protect government discretion. . . but it only does so where that discretion has actually been exercised. It does not shield defendants where the government might have exercised its discretion and final authority but did not. Indeed, the purpose of both the federal officer removal statute and the federal contractor defense is to protect the execution of federal policies from state interference. If the government cannot be said to have made a decision – if it is simply silent – there is no federal policy or interest to protect. By default, any state-law duties thus remain intact.

[*Id.* at 144].

For these reasons, the Court concluded that the contractors had failed to show either a colorable federal defense to the plaintiff's failure to warn claim, *id.* at 142-49, or the requisite causal connection between the alleged federal mandate and the contractors' failure to warn Navy personnel about the dangers of asbestos, *id.* at

149-50.

Similarly, *Prewett* involved a state tort action by a plaintiff who developed lung cancer as a result of his exposure to asbestos. Foster Wheeler was joined as a defendant on the basis of the plaintiff's exposure to asbestos from steam generators Foster Wheeler sold to the Navy, to which the plaintiff was exposed during his military service. *Prewett*, 2009 WL 2959877, *1. Foster Wheeler removed the action to Federal District Court and the plaintiff moved to remand back to state court. *Id.* In opposing the motion, Foster Wheeler relied upon the same miliary contractor defense it relies upon in this case and submitted affidavits by J. Thomas Shroppe and Admiral Ben Lehman that were substantially similar to affidavits by those same persons that Foster Wheeler, Westinghouse and General Electric have submitted in support of their notices of removal in this case. *Id.* at *6.

In concluding that such affidavits provided an insufficient factual foundation for a government contractor defense to a state failure to warn claim, the Court stated:

> Foster Wheeler has provided no evidence that it ever attempted to warn, or that the Navy prohibited warnings. Instead, the affidavits merely show that the Navy "would not have allowed its equipment suppliers, such as Foster Wheeler, to affix any warning related to any asbestos hazards on their equipment." (Lehman Affidavit P. 14).

1023841.2

13

Statements to this effect are merely hypothetical in the absence of evidence that Foster Wheeler attempted to warn. The question is not what the Navy *would have* done if a contractor suggested warnings, but rather whether the Navy actually exercised its discretion in approving proposed warnings that conflicted with state law . . .. Because Foster Wheeler did not suggest warnings to the government, it is impossible that "the design feature in question," in this case the warnings, "was considered by a government officer, and not merely by the contractor itself.". . . Thus, Foster Wheeler's government contractor defense is not "colorable." Similarly, there is no causal nexus" because Foster Wheeler was not acting under color of any federal duty when it failed to provide warnings. In short, the government was not sufficiently involved in the decision not to warn to have a "federal interest in the matter" needed to justify a federal forum.

[*Id.* at *7].

The District Court for the Western District of Washington recently reached a similar conclusion in *McMann et al. v. Air & Liquid Systerm Corp., et al.*, Case No. C13-5721 (W.D.Wash. 2013). There, the plaintiff filed an action against Crane Co. in state court based on a failure to warn theory, alleging that he contracted mesothelioma as a result of his exposure to the defendant's asbestos containing products while he worked in the military. Crane removed the case to federal court based on the government contractor defense.

Crane supplied two affidavits in opposition to the plaintiff's motion for remand. With respect to the affidavit of Rear Admiral David Sargent, the Court observed that while he had "extensive and detailed knowledge of Navy

construction and procedures, he fail[ed] to identify any specific facts as to Navy specifications or warnings as to Crane's products that Mr. McMann may have been exposed to during his Navy service." *Id* at *2. The additional affidavit that Crane supplied from Dr. Samuel Forman also failed to "cite any specific document relating to Mr. McMann's allegations." *Id.* at *3.

The Court in *McMann* ultimately rejected Crane's claim of government contractor immunity and granted the plaintiff's remand motion, concluding that the evidence submitted by the defendant in support of its defense was "entirely speculative." *Id* at *4. In finding that Crane failed to satisfy the colorable defense element of its affirmative defense, the Court held:

> While the court agrees with Crane that it is not obligated to prove its case at this stage of the proceeding, Crane must produce more than speculation and hypothetical interactions. Based on Crane's submissions, the most that can be shown is that its contract with the Navy subjected it to precise specifications and, if it had warned the Navy, the Navy would have rejected that warning. The Court finds that such a showing fails to establish a colorable federal defense.

> [*Ibid*].

According to the Court, Crane's proofs also failed to satisfy the causal nexus element of the government contractor defense:

> As one court stated, a 'contract with the government is not a one-way ticket to federal court.' *Early v. Northrop Grumman Corp.*, 2013 WL 3872218, *6 (C.D.Cal. 2013). Because Crane has failed to allege any

actual interaction regarding any actual product that Mr. McMann would have actually been exposed to during his service aboard the USS Firedrake from 1961-1965, Crane has failed to show any nexus, let alone a causal nexus.

[*Ibid.*]

Like the affidavits relied upon by the military contractors in *Holdren, Prewitt* and *McMann* - as well as the other cited cases that remanded failure to warn claims against military contractors that sold asbestos-containing products to the military to state court - the affidavits that Foster Wheeler, Westinghouse and General Electric rely upon in support of their Notices of Removal do not provide a sufficient factual foundation for claiming that the decisions not to provide warnings about the dangers of asbestos were the Navy's rather than theirs.

In their Notice of Removal, Foster Wheeler and Westinghouse rely primarily upon the affidavit of Admiral (Ret.) Benjamin Lehman, who worked in the U.S. Navy Shipyard Management and Contract Administration department between 1942 and 1944, as well as between 1950 and 1954, but spent most of his career working for military contractors, including General Electric (See Lehman's curriculum vitae attached as Exhibit B to supporting Declaration of Robert Lytle ("Lytle Dec.")). His affidavit alleges in conclusionary terms, without any supporting documentation, that the Navy exercised "complete control" over every

1023841.2                                    16

piece of equipment it purchased from military contractors, including "the decision of which warnings should or should not be included." (Lehman affidavit attached to Foster Wheeler-Westinghouse Notice of Removal (collectively (FWNOR") as Ex. M at ¶ 10). The affidavit further alleges that the Navy "dictated every aspect of the . . . written documentation and warnings associated with its ships and did not permit any deviation from any of its contractors." (FWNOR, Ex. M at ¶11). Lehman also alleges, in equally conclusionary terms, that "[t]he U.S. Navy made a conscious . . . decision about how asbestos would be used on its ships and how exposures would be controlled, if at all, on its ships" (*Id.* at ¶13), and that "[t]he U.S. Navy would not allow its equipment suppliers, such as Foster Wheeler, to affix any warning related to any asbestos hazards on their equipment." (*Id.* at ¶14). General Electric also relies upon an affidavit by Mr. Lehman in support of its Notice of Removal ("GENOR"), which contains substantially similar statements. (GENOR, Ex. I).

However, Lehman's affidavit does not indicate that he has any first-hand knowledge concerning any decision the Navy may have made regarding warning its personnel about the dangers of asbestos or identify the source of any second-hand knowledge he may have purportedly acquired about this subject. Lehman also does not indicate that the Navy ever actually considered and rejected a

1023841.2                                    17

warning concerning the dangers of asbestos recommended by Foster Wheeler, General Electric, Westinghouse or any other military contractor.

Indeed, Lehman testified in a deposition in a case similar to this one that he was unaware of any instance where the Navy prohibited manufacturers from warning about the dangers arising from their equipment.

> Q: Do you have any knowledge, for any piece of equipment by any manufacturer at the time you were on active duty in the Navy, whether a manufacturer had suggested some sort of safety warning in the manuals that the Navy refused to allow in the manuals? Are you aware of that ever happening?
>
> A: Safety warnings in general? No, I am not aware that the Navy ever refused to permit a safety warning.

[Lytle Dec, Ex. C at 33:18-34:1].

Lehman further testified that he has no knowledge whether the Navy would have permitted warnings and never sought such information:

> Q: . . . When you were in the Navy, you never spoke to anybody about the subject of whether or not the Navy would permit any warnings about asbestos and the hazards of breathing asbestos by an equipment manufacturer or anybody else, right?
>
> A. When I was on active duty, that is correct.
>
> Q. And you never read anything at any point in time as to whether or not the Navy would have allowed that?
>
> A. That's correct.

Q. Is it fair to say that you don't know whether or not any equipment manufacturer, such as General Electric, ever even suggested putting a warning either on the outside of the turbine or in a manual about the hazards of breathing asbestos?

A. That is correct.

[Lytle Dec., Ex. C at 77:14-78:4].

Foster Wheeler and Westinghouse also rely upon an affidavit by J. Thomas Schroppe in support of their Notice of Removal. Schroppe acknowledges that he was an employee of Foster Wheeler from 1962 until his retirement in 1999 and that he was the President of Foster Wheeler for part of that period. (FWNOR, Ex. L at ¶1). Schroppe's affidavit alleges, in conclusionary language similar to the Lehman affidavits, and as with those affidavits without any supporting documentation, that the technical manuals Foster Wheeler provided to the Navy with its boiler "included safety information related to the operation of naval boilers only to the extent directed by the Navy[,]" (*Id.* at ¶21), and that "Foster Wheeler would not be permitted, under the specifications, associated regulations and procedures, and especially under actual practice as it evolved in the field, to affix any type of warning or caution statement to a piece of equipment intended for installation onto a Navy vessel, beyond those required by the Navy." (*Id.* at ¶22).

However, Schroppe's affidavit does not allege that the Navy exercised sole

control over the contents of the manuals supplied with Foster Wheeler boilers or that manufacturers such as Foster Wheeler were prohibited by the Navy from warning about the dangers from asbestos that the boilers posed to seamen. Indeed, Schroppe expressly testified in a deposition in a case similar to this one that he was unaware of any such prohibition:

> Q: Mr. Schroppe, as you sit here now and look back at the 1960's, did you ever receive from any agent, representative, or personnel of the United States Navy or the U.S. Government an instruction that you or your company, Foster Wheeler, was not to put any warning of the asbestos contained on the Foster Wheeler boilers on the boilers or in any manuals?
>
>      \*\*\*
>
> A: The answer is no.

[Lytle Dec., Ex. D at 117:18-118:5].

In support of its notice of removal, General Electric relies not only upon the previously discussed Lehman affidavit but also an affidavit by David Hobson. General Electric's submission does not include Hobson's curriculum vitae or any other information concerning his qualifications to discuss the requirements the Navy imposed upon government contractors with respect to the warnings provided with their products. However, Hobson has testified in depositions given in connection with other similar litigation that he was employed by General Electric

1023841.2

20

from 1969 through 1996 and that he has no experience or personal knowledge regarding Navy practices before 1969 (Lytle Dec., Ex. E at 123:20-124:12). Since Plaintiff's claims are based on his exposure to asbestos on the USS Roan from 1962 to 1964, Hobson has no personal knowledge of Navy specifications and practices before and during Plaintiff's service. Moreover, Hobson's affidavit does not identify any source of any purported second-hand knowledge of those specifications and practices. Thus, Hobson's conclusory statements that a contractor such as General Electric would not have been permitted to furnish any type of warning or cautions regarding the health hazards posed by its turbines, unless expressly directed by the Navy, lack any evidential foundation. Furthermore, Hobson does not allege that General Electric ever proposed to the Navy to include warnings about the dangers of asbestos on its turbines or in the accompanying written materials. Therefore, Hobson's suggestion that the Navy would not have given approval to such warnings is completely speculative.

Unlike the affidavits submitted by Foster Wheeler, Westinghouse and General Electric, which contain conclusory allegations regarding Navy specifications and practices that are not supported by any actual specifications or other documents issued by the Navy, the affidavit of Captain Arnold Moore, upon which Plaintiffs rely in support of their motion for remand, has attached as exhibits

voluminous Navy specifications and other documents which show that the Navy

not only did not prohibit contractors from providing warnings and safety

precautions concerning their products, but to the contrary, imposed affirmative

obligations upon contractors to provide warnings concerning the hazards posed by

their products (Moore Aff, ¶¶ 9-10).  Captain Moore, who served as a naval officer

for twenty-six years (Moore Aff,¶¶ 1-8), conducted a detailed survey of Navy

specifications for the construction of ships going back at the 1930's (Moore

affidavit, at ¶ 10), the results of which are summarized in his affidavit (Moore Aff.

¶¶ 12-23).

Those specifications indicate that the Navy did not prohibit military

contractors from providing warnings with the products they sold to the Navy or

dictate the content of any safety warnings that were included with such products.

To the contrary, those specifications required military contractors to provide

instructions with their products that include any "cautions or warnings which must

be observed to protect personnel and equipment." (Moore Aff., ¶ 17).

The Navy adopted a "Uniform Labeling Program" in 1956, which required

the labeling of any "toxic" substances that "may give off a harmful vapor, dust,

fume or mist during handling or operations." (Moore Aff.,¶19).  The document

establishing this program stated that the "mode of entry into the body" from a

1023841.2                                      22

"toxic hazard" could include "inhalation" and that its "injurious effect" could "arise from . . . repeated exposures over a prolonged period (chronic)." (*Id.*) This document also stated that its warning requirements were applicable to "all hazardous materials throughout the Naval Establishment wherever distribution of hazardous chemicals and materials is made to the actual consumer (ship, office or unit)[,]" (*id.*), which would include asbestos-containing material delivered to a shipyard for installation aboard a Navy ship. The Navy documents attached to the Moore affidavit include a similar document, entitled Warning Labels, Manufacturing Chemists Association, dated April 1946, which states that there is a need for information covering hazardous materials to reach every person using those materials and that the most practical means for the seller of a hazardous product to disseminate this information is through labels. (Moore Aff., ¶ 20).

Thus, as demonstrated by Captain Moore, the Navy placed the burden upon military contractors such as Foster Wheeler and General Electric to identify any hazards posed by their products and to develop appropriate warnings. Therefore, even though the Navy retained ultimate authority to approve any warning proposed to be affixed to a product or included in instructions for its use, it looked to military contractors to identify the hazards posed by their products and recommend proposed warnings.

1023841.2                                    23

Although the Lehman, Schroppe and Hobson affidavits hypothesize that the Navy would not have approved any warnings about the dangers of the asbestos contained in the products of military contractors - such as Foster Wheeler, Westinghouse and General Electric - they do not cite a single instance where a contractor actually recommended such a warning and the Navy rejected the recommendation. Therefore, the record before the Court on this motion is essentially the same as the record that the Federal District Courts found to be insufficient to justify remand in *Holdren, Prewitt, McMann* and the other previously cited cases. As summarized in *Holdren:*

> The removing defendants have together submitted volumes of evidence seeking to show that the Navy would not have permitted them to warn about the dangers of asbestos, if they had tried. But the Court's decision rests ultimately on what is missing from the record. The defendants have submitted no evidence that the Navy expressly prohibited asbestos warnings by manufacturers; no evidence that they ever attempted to warn about asbestos on products destined for the Navy; no evidence that the Navy ever rejected any other manufacturer's proposed asbestos warning; and no evidence that defendants warned of asbestos on other, non-military equipment they produced during the same period, by contrast to the equipment they supplied to the Navy.

> [614 F. Supp. 2d at 137].

These comments also describe the statements in the Lehman, Schroppe and Hobson affidavits upon which Defendants rely in their Notices of Remand in this case.

Stated another way, those affidavits indicate that Foster Wheeler, Westinghouse and General Electric never "actually propose[d] warnings [about asbestos] that the government substantially approve[d,]" *Tate*, 55 F.3d at 1157, or disapproved. Consequently, the contractors have not presented a colorable claim of immunity under the government contractor defense for their failure even to propose warnings that could have protected Plaintiff and other seamen from the dangers of asbestos.

Plaintiffs anticipate that in opposition to this motion for remand the Defendant contractors will rely upon the decision of Judge Robreno in *Hagen*, 739 F. Supp. 2d 770, which they characterize in the papers submitted in support of their notices of removal as a "landmark" case. Before discussing the reasoning of that opinion, Plaintiffs note that *Hagen* is only a decision of another Federal District Court and therefore entitled to no more precedential weight than *Holdren* and the other District Court opinions that directly support remand.[1] In any event, the rationale of *Hagen* does not withstand analysis in light of the leading cases dealing with the government contractor defense.

The critical paragraph of Judge Robreno's opinion holding that the military

---

[1] Plaintiffs note that Exhibit C to Defendants' Notices of Removal contains a decision by another Federal District Court sitting in New Jersey, *Lewis v. Asbestos Corp.*, which, relying upon *Hagen,* concludes that removal is appropriate in a failure to warn case such as this. Plaintiffs respectfully submit that this case was incorrectly decided for the same reasons *Hagen* was incorrectly decided.

contractors' affidavits provided a sufficient foundation for asserting the government contractors defense states as follows:

> [T]he affidavits submitted show (1) that the Navy exercised discretion and control over the products created; which (2) Defendants conformed to by failing to warn. The affidavits do this by stating that Defendants would not be permitted to include "any type of warning or caution statement," (Schroppe Aff. ¶ 22), and that the applicable specifications furnished by the Navy required manufacturers to yield all oversight of the manufacture and testing phases to the Navy. (*See, e.g.,* Hobson Aff. ¶ 13-14). This is particularly true given that the specifications 'covered the nature of any communication affixed to boilers or other equipment supplied to the Navy.' (*See* Horne Aff. ¶ 12). Indeed, according to Defendants' evidence, the Navy controlled 'the decision of which warnings should or should not be included.' (Lehman Aff. ¶ 10). Therefore, to the extent the affidavits are true, it is clear that the Navy was responsible for the lack of warnings. This demonstrates the first two elements of the government contractor defense.

[793 F. Supp. 2d at 784].

However, conspicuously absent from this paragraph is any indication that either the contractors or the Navy ever gave actual consideration to the inclusion of warnings about the dangers of asbestos either on the boilers and turbines themselves or in the manuals and other written materials that accompanied them. The affidavits quoted in this paragraph of *Hagen* simply indicate that if a contractor had proposed to provide warnings about the dangers of asbestos with its product, the Navy's approval would have been required before such warnings

1023841.2                                    26

could have been given.  As Judge Gertner correctly concluded in *Holdren*, such affidavits provide an insufficient factual foundation for assertion of a "colorable federal defense." *See Holdren*, 614 F. Supp. 2d at 140 ("Because it alone confers Article III jurisdiction, the 'colorable' standard requires that a federal court carefully weigh the plausibility of the proffered defense.").

The seminal case dealing with the government contractor defense is *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), which involved a design defect rather than, as in this case, a failure to warn claim.  In that context, the Court concluded that the military contractor defense could be asserted only if "the United States [had] approved reasonably precise specifications" for the military equipment alleged to have been defectively designed. *Id.* at 512.  The Court adopted this prerequisite for assertion of the government contractor defense to "assure that the design feature in question was considered by a Government officer, and not merely by the contractor itself." *Id.*

In the Circuit Courts of Appeals' reformulation of this prerequisite as applied to failure to warn cases such as this one, a military contractor asserting the defense must show that "the United States exercised its discretion and approved the warnings, if any[.]" *Tate*, 55 F.3d at 1157.  This prerequisite cannot be satisfied simply by showing that the government "rubber stamp[ed]" the

1023841.2                           27

contractor's decision regarding warnings; instead, the contractor must show that the government "substantively approve[d]" the contractor's warnings or, as in this case, the contractor's decision not to give any warnings. *Id. Accord Oliver v. Oshkosh Truck Corp.* 96 F.3d at 1003-04; *In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d at 630 ("Boyle's requirement of government approval of 'reasonably precise specifications' mandates that the federal duties be imposed upon the contractor. The contractor must show that whatever warnings accompanied a product resulted from a determination of a government official"); *see also Densberger v. United Techs. Corp.*, 297 F.3d 66, 75 (2d Cir. 2002) *cert. denied*, 537 U.S. 1147 (2003) ("In failure to warn cases, . . . the ultimate product users cannot sue the contractor for failure to warn if the government controlled which warnings the contractor was allowed to provide *to those users* , and thereby precluded the warnings at issue from being given"). As the Ninth Circuit recently stated, to avail itself of the government contractor defense in a failure to warn case, "the contractor must show that it 'act[ed] in compliance with "reasonably precise specifications" imposed on it by the United States' in deciding whether 'to provide a warning.'" *Getz v. Boeing Co.*, 654 F.3d at 866.

Under this well-established authority, *Hagen* was wrongly decided because none of the affidavits quoted by Judge Robreno indicated that there were any

1023841.2                                    28

specifications or other communications from the Navy prohibiting the contractor from giving warnings about the dangers of asbestos or substantively authorizing the contractors' decision to withhold such warnings. Thus, those affidavits did not provide any factual foundation for Judge Robreno's ultimate conclusion that "the Navy was responsible for the lack of warnings." *Hagen*, 739 F. Supp. 2d at 784. Rather, as Judge Gertner correctly concluded in *Holdren*, the military contractors' assertion of the government contractor defense in *Holdren, Hagen* and this case "rests entirely on an untested hypothetical: If [the contractors] had made . . . a proposal [to provide warnings about the dangers of asbestos], the Navy would have refused that recommendation." *Holdren*, 614 F. Supp. 2d at 137. Such speculation does not constitute the "reasonably precise specification" or "substantive approval" that *Boyle, Tate* and their progeny require a military contractor to show in order to invoke the government contractor defense.

## POINT II

**IF THE COURT DETERMINES THAT DEFENDANTS HAVE PRESENTED A COLORABLE DEFENSE OF GOVERNMENTAL CONTRACTOR IMMUNITY THAT REQUIRES DENIAL OF PLAINTIFFS' MOTION FOR REMAND, THE COURT SHOULD GRANT PARTIAL SUMMARY JUDGMENT STRIKING THIS DEFENSE BECAUSE IT IS UNDISPUTED UNDER THE ONLY COMPETENT EVIDENCE BEFORE THE COURT THAT THE NAVY NEVER APPROVED THE DEFENDANTS' DECISIONS NOT TO GIVE WARNINGS ABOUT THE ASBESTOS CONTAINED IN THEIR PRODUCTS**

Initially, Plaintiffs note that a District Court cannot grant a summary judgment motion without first determining that it has jurisdiction over the action. *Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n of Philadelphia*, 657 F.2d 29, 36 (3d Cir. 1981). Therefore, the Court would need to address Plaintiffs' motion for partial summary judgment only if it rejects Plaintiffs' motion for a remand to state court.

A Court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that could be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R.

*CIV. P.* 56(c)(4). Under these provisions, a party who can demonstrate that a defense has "no factual basis" is entitled to a summary judgment striking that defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The affidavit of Captain Moore submitted in support of this motion demonstrates that the Navy never approved Defendants' decisions not to provide warnings about the dangers posed by the asbestos in their products, and the affidavits relied upon by Defendants in support of their notices of removal are not based on personal knowledge and do not allege that the Navy ever actually approved decisions by Defendants or any other military contractors not to provide warnings about the asbestos contained in the products they sold to the Navy.

Plaintiffs have already discussed the law applicable to the government contractor defense and the factual allegations contained in the affidavits of Captain Moore and Defendants' witnesses at length in Point I of this brief. Therefore, it is unnecessary to repeat that entire discussion under this point. Instead, Plaintiffs only briefly review this law and factual allegations, which must be viewed through the prism of the standards set forth in Rule 56 to determine Plaintiffs' entitlement to summary judgment.

As discussed in Point I, a Defendant who asserts a government contractor defense to a failure to warn claim must present evidence that the Government

1023841.2                          31

approved the alleged inadequate warnings or failure to give any warnings. *Getz v. Boeing Co.*, 654 F.3d at 866; *Tate v. Boeing Helicopters*, 55 F.3d at 1157; *In re Joint E. & S. Dist. of N. Y. Asbestos Litig.*, 897 F.2d at 631. Where there is a motion for a partial summary to strike this defense based on evidence that the Government did not affirmatively approve a Defendant contractor's decision not to give warnings, the Defendant cannot defeat the motion simply by alleging that the Government gave such approval; rather, the contractor must present competent evidence based on personal knowledge that such approval was obtained. *FED. R. CIV. P.* 56(c)(4). Moreover, the contractor must show that the Government gave actual approval of its warnings or failure to give warning rather than simply relying upon evidence that the Government would not have given such approval if it had been sought. *Getz v. Boeing Co.*, 654 F.3d at 855; *Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d at 137.

In support of their motion, Plaintiffs have presented clear and unequivocal evidence in the form of Captain Moore's affidavit, supported by voluminous documentary evidence derived from Navy archives, which demonstrates the absence of any approval by the Navy of the Defendant contractors' decisions not to provide any warnings about the dangers of the asbestos contained in their products. The affidavits relied upon by the Defendant contractors in support of

1023841.2    32

their notices of removal do not contain any contrary evidence that the Navy ever gave actual approval to the contractors' decisions not to give any warnings about the dangers of asbestos. Those affidavits merely express the unsupported opinion that if the contractors had sought such approval, it would not have been given. Such an opinion based on hypothetical facts does not create an issue of fact regarding the Navy's lack of actual affirmative approval of the contractors' decision not to give warnings about the dangers of asbestos sufficient to defeat Plaintiffs' motion for partial summary judgment striking the government contractor defense.

Furthermore, the general statements in the Lehman, Schroppe and Hobson affidavits regarding the contents of Navy specifications, which do not have any of those specifications attached as exhibits, are hearsay and therefore are not competent evidence that can defeat a motion for summary judgment. *See Green v. A.W. Chesterton Co.*, 366 F. Supp. 2d 149, 157 (D. Maine 2005); *see also Westmiller v. IMO Ind., Inc.*, No. C05-945 2005 WL 2850344, *1 (W.D.Wash October 20, 2005).

In sum, the Defendant contractors have not presented any competent evidence to dispute the voluminous factual material derived from Navy archives attached to Captain Moore's affidavit, which shows that the Navy did not prohibit

1023841.2

33

contractors from including proposed warnings about the dangers of the products they sold to the Navy on the products themselves or in accompanying written materials. Since it is undisputed that the Defendant military contractors never proposed any warnings about the dangers of the asbestos contained in the turbines and boilers they sold to the Navy, Plaintiffs are entitled to a partial summary judgment striking Defendants' government contractor defense.

1023841.2                          34

## **CONCLUSION**

For the foregoing reasons, it is respectfully submitted that this Court should enter an Order remanding this case back to state court because this Court lacks subject matter jurisdiction pursuant to 28 U.S.C. §1442(a)(1).  In the alternative, this Court should enter an Order granting partial summary judgment and striking Defendants' government contractor defense.  In that case, Plaintiffs' complaint should be remanded to state court since there is no longer any basis for the assertion of subject matter jurisdiction pursuant to 28 U.S.C. §1442(a)(1)

Respectfully submitted,

**SZAFERMAN, LAKIND, BLUMSTEIN & BLADER, P.C.**

Robert E. Lytle

1023841.2

35