# Exhibit D

Scanned Copy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

---oOo---

BARBARA DAVIS, Individually,        )
and as Successor-in-Interest to   )
EARL DAVIS, Deceased; and          ) Case No. 303804
BARBARA DAVIS, JENNIFER DAVIS,   )
ANNA DAVIS, SARA DAVIS, and       )
MARY DAVIS, a minor, by her        )
Guardian Ad Litem, BARBARA        )
DAVIS, as Legal Heirs of EARL    )
DAVIS, Deceased,                       )
                                                )
            Plaintiffs,      )
                                                )
        vs.                              )
                                                )
ASBESTOS DEFENDANTS (BHC),        )
                                                )
            Defendants.        )
                                                )

TELEPHONIC DEPOSITION OF

J THOMAS SCHROPPE

OCTOBER 28, 2005

ATKINSON-BAKER, INC.
COURT REPORTERS
180 Montgomery Street, Suite 800
San Francisco, California 94104

REPORTED BY: MARY E. GARLAND, CSR NO 4721

FILE NO.: 9F09263

it, if ever?

A. I don't recall that I ever specifically looked at it.

Q. So you can't tell me, as you sit here today, if, in the mill spec for insulation block, the word "asbestos" is even used?

A. I can't tell you that. I don't recall.

Q. Do you have a recollection as you sit here now if, in 1965, you were aware that asbestos fiber was in the thermal insulation material that was being used to line the casings of the boilers?

A. I don't recall.

Q. Have you ever worked with Richard Silloway?

A. On a few occasions.

Q. And when I say "work with," I'm referring to in a matter that didn't involve litigation.

A. No.

Q. Mr. Schroppe, as you sit here now and you look back to the 1960s, did you ever receive from any agent, representative, or personnel of the United States Navy or the U.S. government an instruction that you or your company, Foster Wheeler, was not to put any warning of the asbestos contained in the Foster Wheeler boilers on the boilers or in any manuals?

A. Repeat that.

117

MR. GOLDSTEIN: I can have it read back. It might be easier for me. Would you mind, Mary?

THE REPORTER: Certainly.

(Record by the reporter.)

THE WITNESS: The answer is no.

MR. GOLDSTEIN: Mr. Schroppe, I don't think I any questions for you, any further questions, this afternoon. I appreciate your time. And unless counsel has a question, we can go off the record.

MR. SCADDEN: I don't have any questions. I think you and I wanted to talk about some stipulations, or did we already cover that, regarding the documents?

MR. GOLDSTEIN: Well, your letter indicates --

MR. SCADDEN: Hang on. If there is more discussion for us, can I suggest this? Since it's now Mr. Schroppe's dinner time, Mr. Schroppe, you can hang up. I will be touching in with you sometime in the not too distant future, but you're done for today.

THE WITNESS: All right. Let me give you another number --

MR. SCADDEN: No, no, no. Don't do that.

THE WITNESS: Eileen has my other number.

MR. SCADDEN: Okay. Very good. Thank you.

THE WITNESS: Okay Bye.

MR. GOLDSTEIN: Thank you.

118

Exhibit E

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In re: NEW YORK CITY ASBESTOS LITIGATION

Deposition Under
Oral Examination
of DAVID HOBSON

PRIORITY-ONE COURT REPORTING SERVICES, INC.
899 Manor Road
Staten Island, New York 10314
(718) 761-0527

---

Transcript of the deposition of DAVID HOBSON, called for Oral Examination in the above-captioned matter, said deposition being taken pursuant to the Federal Rules of Civil Procedure by and before Victoria Rohl, Court Reporter and Notary Public in and for the State of New York; taken at the Boston Logan Airport Hilton, Boston, Massachusetts, on May 20, 2004, commencing at 9:45 a.m.

Page 2

---

APPEARANCES:
JERRY KRISTAL, ESQ.
WEITZ & LUXENBERG
180 Maiden Lane
New York, New York 10038
Appearing for the Plaintiffs

DAVID SPEZIALI, ESQ.
SPEZIALI, GREENWALD & HAWKINS, LLC
1081 Winslow Road, Box 1086
Williamstown, New Jersey 08094
Appearing for the Defendant
General Electric

JOHN A. HELLER, ESQ.
SIDLEY, AUSTIN, BROWN & WOOD, LLP
Bank One Plaza
10 S. Dearborn Street
Chicago, Illinois 60603
Appearing for the Defendant
General Electric

RICHARD B. KIRBY, ESQ.
KEEGAN, WERLIN & PABIAN, LLP
265 Franklin Street
Boston, Massachusetts 02110-3113
Appearing for the Defendant
Dresser-Rand

Page 3

---

IT IS HEREBY STIPULATED AND AGREED by and between the attorneys for the respective parties hereto that filing, sealing and certification of the within Examination Before Trial be waived; that all objections, except as to form, are reserved to the time of trial.

IT IS FURTHER STIPULATED AND AGREED that the transcript may be signed before and Notary Public with the same force and effect as if signed before a Clerk or Judge of the Court.

IT IS FURTHER STIPULATED AND AGREED that the within examination may be utilized for all purposes as provided by the CPLR.

IT IS FURTHER STIPULATED AND AGREED that all rights provided to all parties by the CPLR shall not be deemed waived and the appropriate sections of the CPLR shall be controlling with respect thereto.

Page 4

1 (Pages 1 to 4)

Q. To be rebuilt, right, when reassembling. I think that's what it says.

A. Yes. This is during the life of the ship.

Q. Okay. So during the life of the ship —

A. This is a joint, metal-to-metal joint on whatever this — it looks like a valve chest on the top of the turbine, that this could be disassembled, and that's what they call the parting line is where the metal-to-metal joint would get disassembled.

Q. So as part of this lagging drawing that was supplied to the shipyards as you've explained it, there was also a part that indicated if the portion of the turbine that's depicted here is disassembled, that the lagging would have to be broken out and then rebuilt when reassembled?

A. That's correct.

Q. Okay.

A. During the maintenance activity or what have you; during the life of the ship.

Q. All right. Now, there's another page, a blow-up there. This is we talked about, these

Page 121

washers. All right. By this drawing, it seems to be indicating that GE is directing whoever is doing the insulating as to how these washers should be installed. Is that fair to say? It says, quote, washers made of galvanized sheet iron to be placed on both, both sides of asbestos cloth under rings. Do you see that?

A. Yes.

Q. So GE was, at least to that level of detail, directing how these washers were to be installed on the asbestos cloth?

A. That's correct. And it would have been — they would have to go to this level of detail based on the mil. spec requirement on track.

Q. Okay.

A. Otherwise this drawing would never have been approved by the Navy.

Q. Right. All of these drawings, all of the parts have to meet Navy approval if it's a Navy ship. That's a given? Fair to say?

A. Yes. That's why they're at this level of detail.

Q. Well, maybe we don't need to get into this now. There are very detailed drawings for

Page 122

non-Navy ships, commercial ships that have this level of detail that don't require Navy approval, right?

A. Typically Marine commercial turbine designs do not go to the level of detail that Navy turbine designs go to, whether it's material identification and certification, or whether it's drawing detail, because the commercial Marine turbine drawings don't come close to the approval levels of Navy, Navy drawings. In fact, they probably aren't on a commercial Marine, just strictly a GE turbine.

Q. As they turn it over to GE, they work out the contract and trust GE?

A. As long as they meet the performance requirements, the Marine ship owners accept the product.

Q. Okay.

A. Where it's a much different situation on Navy, Navy designs.

Q. Going back to the affidavit, we need to go into more detail, but if we can, let me ask a very broad question and see if this answers it. The affidavit that you're giving that talks about GE and the relationship of the Navy,

Page 123

and paragraph nine about the staffing of the officers, and ten talks about the specs and all of those things, from your personal knowledge, that would be December of '69 forward?

A. Correct.

Q. And other than what you described as looking at old drawings, you would obviously have personal knowledge of that, but you don't know specifically from your personal knowledge the historical practices of GE and the Navy pre'69?

A. That's correct.

Q. Okay. Just as an example, this master plan for lagging which has been marked as Exhibit 20, would that be in the drawing room currently, or should be, at least, if everything else is equal, with the other drawings? That's a 1944, '45 time frame.

A. Yes. If you would go to drawing 6666515, you should be able to find it.

Q. Now, how would one, if you can tell us, find the universe of master plans for lagging? Is there a listing, one number, or you would have to go to each main list and look for —

A. You have to look at each turbine —

Page 124

31 (Pages 121 to 124)

Exhibit F

Westlaw.

Page 1

Not Reported in F.Supp.2d, 2011 WL 499963 (S.D.Ill.)
**(Cite as: 2011 WL 499963 (S.D.Ill.))**

C
Only the Westlaw citation is currently available.

United States District Court,
S.D. Illinois.
Thomas Franklin BAKER, Jr., Plaintiff,
v.
AIR & LIQUID SYSTEMS CORPORATION, a/k/a
Buffalo Pumps, Inc., et al., Defendants.

Civil No. 11–8–GPM.
Feb. 7, 2011.

Andrew J. Balcer, Ethan A. Flint, Saville & Flint
LLC, Glen Carbon, IL, for Plaintiff.

Ashley M. Felton, Daniel M. Finer, James L. Svajgl
, Segal, McCambridge et al., Chicago, IL, for
Defendants.

### MEMORANDUM AND ORDER

MURPHY, District Judge.

*1 This matter is before the Court on the motion for remand to state court brought by Plaintiff Thomas Franklin Baker, Jr. (Doc. 10) and the motion to stay brought by Defendant Foster Wheeler Energy Corporation ("Foster Wheeler") (Doc. 14). In this case Baker seeks damages for lung cancer that he has contracted allegedly as a result of exposure to asbestos. This case was filed originally in the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, and Foster Wheeler, which is sued individually and as successor-in-interest to C.H. Wheeler, has removed the case to this Court.[FN1] Federal subject matter jurisdiction is alleged on the basis of 28 U.S.C. § 1442, the so-called "federal officer" removal statute. Baker in turn has filed what he styles an "emergency" motion for remand of this case to state court for lack of subject matter jurisdiction. Foster Wheeler has requested a stay of these proceedings pending transfer of this case to a multidistrict litigation ("MDL") proceeding by the Judicial Panel on Multidistrict Litigation ("JPML").

Having considered the matter carefully, the Court now rules as follows.

FN1. It appears from the record of this case that, in addition to Air & Liquid Systems Corporation, a/k/a Buffalo Pumps, Inc., Foster Wheeler's co-Defendants are: A.W. Chesterton Co.; Aldrich Pump Co., a subsidiary of Ingersoll–Rand; Alfa Laval, Inc., individually and as successor-in-interest to Sharpless Corp.; A.O. Smith Corp.; Asco Valves, Inc.; Aurora Pump Co.; Borg–Warner Corp. by its successor-in-interest Borgwarner Morse Tec, Inc.; Carrier Corp.; Carver Pump Co.; CBS Corp., a Delaware corporation, f/k/a Viacom, Inc., successor by merger to CBS Corp., a Pennsylvania corporation, f/k/a Westinghouse Electric Corp.; Certain–Teed Corp.; Cleaver–Brooks, Inc., f/k/a Cleaver Brooks, a division of Aqua–Chem, Inc.; Control Components, Inc., sued individually and as successor-in-interest to Bailey Valves Co.; Copes Vulcan, Inc.; Crane Co., sued individually and as successor-in-interest to Cochrane, Inc., a/k/a Jenkins Valves, Inc., a/k/a Pacific Pump, Inc.; Crown Cork & Seal Co.; Dana Cos., LLC; Deere & Co., a/k/a John Deere Co.; Dezurik; Dover Corp., Blackmer Pump Division; Eaton Corp.; Elliott Turbomachinery Co.; Flowserve Corp., sued individually and as successor-in-interest to BW/IP International, Inc., f/k/a Byron Jackson Pump Division and Pacific Pumps; FMC Corp., sued as successor of Northern Ford Motor Co., Pumps, and Peerless Pumps; Gardner Denver, Inc.; General Electric Co.; Genuine Parts Co., a/k/a NAPA Auto Parts; Georgia–Pacific, LLC; Goulds Pumps, Inc.; Grinnell, LLC; Hardie–Tynes Co.; Honeywell International, Inc.; Illinois

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 499963 (S.D.Ill.)
**(Cite as: 2011 WL 499963 (S.D.Ill.))**

Tool Works, Inc., individually and as successor-in-interest to Devcon, Ltd.; Imo Industries, Inc., individually and as successor-in-interest to Delaval Turbine, Inc.; Ingersoll–Rand Co.; ITT Corp., f/k/a ITT Industries, Inc.; John Crane, Inc.; John Morrell & Co.; Johnston Boiler Co.; J.P. Bushnell Packing Supply Co.; Kaiser Gypsum Co.; Metropolitan Life Insurance Co.; Owens–Illinois, Inc.; Peerless Industries, Inc.; Pneumo Abex Corp.; Rexnord Industries, LLC, a/k/a Falk Corp.; Riley Power, Inc., f/k/a Riley Stoker Corp.; SB Decking, Inc., f/k/a Selby, Battersby & Co.; Sprinkmann Sons Corp.; Trane U.S., Inc., f/k/a American Standard, Inc.; Tyco International (U.S.), Inc., for Tyco Valves & Controls, a unit of Tyco Flow Control, as successor to Yarway Corp., J.E. Lonergan, Grinnell Corp., and Kunkle Valve; Union Carbide Corp.; Velan Valve Corp.; Viad Corp., as successor-in-interest to Griscom–Russell; Viking Pumps, Inc.; Warren Pumps, LLC; Weil–McLain Co.; Weir–Valves & Controls U.S.A., Inc., d/b/a Atwood & Morrill Co.; William Powell Co.; Yarway Corp.; York International Corp.; Young Group, Ltd., f/k/a Young Sales Corp.; Young Insulation Group of St. Louis, Inc.; and Zurn Industries, LLC.

The Court turns first to Foster Wheeler's request for a stay of proceedings in this action pending transfer of the action by the JPML to an MDL proceeding for coordinated or consolidated pretrial proceedings. *See* 28 U.S.C. § 1407. As Foster Wheeler acknowledges, the Court retains full jurisdiction over this action until such time as a transfer order by the JPML is filed in the office of the clerk of the district court of the transferee district, in this instance the United States District Court for the Eastern District of Pennsylvania. *See Illinois Mun. Ret. Fund v. Citigroup, Inc.,* 391 F.3d 844, 850 (7th Cir.2004). The decision to grant or

deny a stay rests within the Court's discretion. *See Brooks v. Merck & Co.,* 443 F.Supp.2d 994, 997 (S.D.Ill.2006). This Court has adopted a framework for deciding whether to address a motion to remand a case for lack of subject matter jurisdiction or to defer consideration of the motion pending transfer of a case by the JPML. Under this framework, the Court's "first step should be to make a preliminary assessment of the jurisdictional issue." *Rutherford v. Merck & Co.,* 428 F.Supp.2d 842, 846 (S.D.Ill.2006) (quoting *Meyers v. Bayer AG,* 143 F.Supp.2d 1044, 1048 (E.D.Wis.2001)). If this first step indicates that removal was improper, "then the court 'should promptly complete its consideration and remand the case to state court.'" *Id.* (quoting *Meyers,* 143 F.Supp.2d at 1049). The Court's initial assessment of Baker's motion for remand and the response thereto filed by Foster Wheeler suggests that the removal of this case is improper. Therefore, the Court concludes that it should consider the jurisdictional issue raised by the motion for remand even though Foster Wheeler is attempting to have this case transferred by the JPML. *See Illinois Mun. Ret. Fund,* 391 F.3d at 852 ("Though some district courts stay proceedings during the interim following a conditional transfer order, this is not required where the court concludes that it lacks subject matter jurisdiction.") (citation omitted). Foster Wheeler's motion will be denied.

*2 The Court turns then to the merits of Baker's motion for remand. In this case, as noted, the asserted basis for federal subject matter jurisdiction is 28 U.S.C. § 1442, which provides, in relevant part, for the removal of "[a] civil action ... commenced in a State court against ... [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office[.]" 28 U.S.C. § 1442(a)(1). To effect removal as a person acting under a federal officer, Foster Wheeler must prove three elements: (1) it is a "person" within the meaning of the statute; (2) it acted under the direction of a federal officer,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 499963 (S.D.Ill.)
(Cite as: 2011 WL 499963 (S.D.Ill.))

meaning that there is a nexus or causal connection between Baker's claims and the acts Foster Wheeler allegedly performed under the direction of a federal officer; and (3) Foster Wheeler has a colorable federal defense to state-law liability. *See Jefferson County, Ala. v. Acker,* 527 U.S. 423, 431, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999); *Mesa v. California,* 489 U.S. 121, 129, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989); *Willingham v. Morgan,* 395 U.S. 402, 407, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969); *Wisconsin v. Schaffer,* 565 F.2d 961, 964 (7th Cir.1977); *Mills v. Martin & Bayley, Inc.,* Civil No. 05–888–GPM, 2007 WL 2789431, at *5 (S.D.Ill. Sept.21, 2007). Removal pursuant to Section 1442 does not require Foster Wheeler to notify or obtain the consent of any other Defendant in this case in order to remove the entire case to federal court. *See Alsup v. 3–Day Blinds, Inc.,* 435 F.Supp.2d 838, 842–43 (S.D.Ill.2006) (collecting cases). As the proponent of removal, however, Foster Wheeler "bears the burden of establishing federal subject matter jurisdiction," and "[d]oubts concerning removal must be resolved in favor of remand to the state court." *Id.* at 841.

Foster Wheeler claims that it is entitled to invoke federal officer jurisdiction because at least part of Baker's alleged exposure to asbestos occurred while Baker was serving in the United States Navy ("USN") aboard the U.S.S. *Chemung,* a vessel for which Foster Wheeler claims that it manufactured components, including boilers and economizers, that contained asbestos. The parties do not dispute that Foster Wheeler is a "person" for purposes of the first prong of the test of federal officer jurisdiction. *See Glein v. Boeing Co.,* Civil No. 10–452–GPM, 2010 WL 2608284, at *2 (S.D.Ill. June 25, 2010) (a corporation is a "person" within the meaning of 28 U.S.C. § 1442); *Stephens v. A.W. Chesterton, Inc.,* Civil No. 09–633–GPM, 2009 WL 3517560, at *2 (S.D.Ill. Oct.22, 2009) (same). With respect to the second and third prongs of the test, Foster Wheeler claims that in designing equipment for the U.S.S. *Chemung* the company acted under the direction of the USN and that the

company is entitled to assert the so-called "government contractor defense" or "military contractor defense." That defense provides generally, of course, that a private contractor is shielded from liability under state law for defects in products or equipment that it produced for the United States if: (1) the United States approved reasonably precise specifications for the products or equipment; (2) the products or equipment conformed to those specifications; and (3) the contractor warned the United States about any dangers known to the contractor but not to the United States. *See Boyle v. United Techs. Corp.,* 487 U.S. 500, 512, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988); *Oliver v. Oshkosh Truck Corp.,* 96 F.3d 992, 997–98 (7th Cir.1996); *Lambert v. B.P. Prods. N. Am., Inc.,* Civil No. 04–347–GPM, 2006 WL 924988, at *6 (S.D.Ill. Apr.6, 2006). To establish the second prong of the test of federal officer jurisdiction with respect to Baker's claim of negligence against Foster Wheeler based on the latter's alleged failure to warn of the asbestos contained in the products the company furnished to the USN, Foster Wheeler must produce evidence that the USN prevented the company from complying with its duty to warn under state law. *See Rinier v. A.W. Chesterton, Inc.,* Civil No. 09–1068–GPM, 2010 WL 289194, at *2 (S.D.Ill. Jan.19, 2010). Similarly, to establish the first prong of the government contractor defense, Foster Wheeler must show that the USN approved specific warnings that precluded Foster Wheeler from complying with its state-law duty to warn. *See Weese v. Union Carbide Corp.,* Civil No. 07–581–GPM, 2007 WL 2908014, at ——7–9 (S.D.Ill. Oct.3, 2007).[FN2]

> FN2. The second prong of the test of federal officer jurisdiction and the first prong of the government contractor defense are very similar, obviously, and they tend to merge in the analysis of a claim of federal officer jurisdiction. *See, e.g., Hilbert v. Aeroquip, Inc.,* 486 F.Supp.2d 135, 147–48 & n. 11

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 499963 (S.D.Ill.)
**(Cite as: 2011 WL 499963 (S.D.Ill.))**

(D.Mass.2007).

**\*3** In support of its claim of federal officer jurisdiction Foster Wheeler has submitted to the Court an affidavit given by J. Thomas Schroppe, an employee of Foster Wheeler between 1962 and 1999, and a transcript of a deposition of Schroppe. *See* Doc. 2–2 at 135–39; Doc. 2–3 at 1–47; Doc. 13–3. Also, Foster Wheeler has submitted to the Court an affidavit given by Ben J. Lehman, a retired USN rear admiral who served as a ship superintendent in the USN and who claims in that capacity to have had personal involvement with the supervision and oversight of ship construction as well as ship alterations and equipment overhauls, and a transcript of a deposition of Lehman. *See* Doc. 2–3 at 48–55; Doc. 13–5; Doc. 13–6.[FN3] In the past the Court has attached little significance to such evidentiary materials, unaccompanied as they are by exemplar contracts between the USN and its contractors or pertinent regulations promulgated by the USN or another responsible agency. *See, e.g., Sether v. Agco Corp.,* Civil No. 07–809–GPM, 2008 WL 1701172, at ——3–4 (S.D.Ill. Mar.28, 2008). Most importantly, even assuming for the sake of argument that it is the case that, as Schroppe and Lehman claim, the USN exercised the final control over the content of the warnings that accompanied the equipment supplied to it by Foster Wheeler, this does not dispose of the possibility that Foster Wheeler had responsibility for designing the warnings, in whole or in part, or that the USN required contractors like Foster Wheeler to provide safety warnings in accordance with state-law duties of care. *See id.* at *4. The Court is mindful that, "[b]ecause federal officer removal is rooted in 'an anachronistic mistrust of state courts' ability to protect and enforce federal interests and immunities from suit,' although such jurisdiction is read 'expansively' in suits involving federal officials, it is read narrowly where, as in this instance, only the liability of a private company purportedly acting at the direction of a federal officer is at issue." *Weese,* 2007 WL 2908014, at *3 (quoting *Freiberg v. Swinerton & Walberg Prop.*

*Servs., Inc.,* 245 F.Supp.2d 1144, 1150, 1152 n. 6 (D.Colo.2002)). Additionally, the Court is required to construe the record in this case "in the light most favorable to remand while resolving all deficiencies in the record against ... the proponent of removal [ .]" *Alsup,* 435 F.Supp.2d at 846. The Court concludes that this action is due to be remanded to state court.

> FN3. Foster Wheeler also has submitted to the Court the affidavit of Lawrence Stilwell Betts, a physician and retired USN officer. *See* Doc. 13–4. The gist of Betts's affidavit is that the USN's knowledge of the health hazards associated with the use of asbestos at the times relevant to this case represented the state of the art and, consequently, Foster Wheeler could not have possessed any information regarding the dangers posed by the use of asbestos that was not already known by the USN. Because the Court concludes that Foster Wheeler has failed to prove the first prong of the government contractor defense, the Court need not address whether Foster Wheeler has proven the third prong of the defense.

To conclude, Foster Wheeler's motion for a stay (Doc. 14) is **DENIED.** Baker's motion for remand (Doc. 10) is **GRANTED.** Pursuant to 28 U.S.C. § 1447(c), this case is **REMANDED** to the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, for lack of federal subject matter jurisdiction.

**IT IS SO ORDERED.**

S.D.Ill.,2011.
Baker v. Air & Liquid Systems Corp.
Not Reported in F.Supp.2d, 2011 WL 499963 (S.D.Ill.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Exhibit G

Westlaw.

Not Reported in F.Supp.2d, 2010 WL 3488207 (E.D.La.)
**(Cite as: 2010 WL 3488207 (E.D.La.))**

▷
Only the Westlaw citation is currently available.

United States District Court,
E.D. Louisiana.
Terry CARDARO, et al.
v.
AEROJET GENERAL CORPORATION, et al.

Civil Action No. 05–2684.
Aug. 27, 2010.

Mickey P. Landry, David Ryan Cannella, Frank J. Swarr, Landry & Swarr, LLC, New Orleans, LA, Charles S. Siegel, Julie L. Celum, Kevin E. Oliver, Peter A. Kraus, Waters & Kraus, LLP, Dallas, TX, for Terry Cardaro, et al.

Elia Diaz-Yaeger, Katherine Leigh Osborne, Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, John Joseph Hainkel, III, Andrew Mark Maestri, Angela M. Bowlin, James H. Brown, Jr., John C. Morris, IV, Sheri Sport Faust, Frilot L.L.C., Jonathan Paul Hilbun, Lawrence G. Pugh, III, Donna M. Young, Pugh, Accardo, Haas & Radecker, Carey & Hymel, New Orleans, LA, Alison S. Borison, Attorney at Law, Youngsville, LA, for Aerojet General Corporation, et al.

***ORDER AND REASONS***
A.J. McNAMARA, District Judge.

*1 Before the court is the **Motion to Remand** (Doc. No. 35). Filed by Plaintiffs, Terry Cardaro, et al.[FN1] Defendant, Crane Company, Inc. (Crane), the removing defendant, filed a reply brief. General Electric Company (one of numerous defendants named in Plaintiffs' state court Petition), and Foster Wheeler Energy Corporation (named as an additional Defendant in Plaintiffs' Amended Petition which was filed after the matter was removed from state court and before a ruling was made on Plaintiffs' Motion to Remand) each filed a memorandum in opposition. The motion, set for hearing on Wednesday, August 25, 2010, is before

the court on briefs, without oral argument.[FN2] Now, having considered the memoranda of counsel, the record, and the applicable law, the court finds that the motion should be granted because this court lacks subject matter jurisdiction.

FN1. Plaintiffs' motion is styled "Plaintiffs' Emergency Motion for Remand, and in the Alternative Motion for Severance and Remand," and it was timely filed on July 25, 2005. (Doc. No. 35). Disposition of this motion has been unfortunately delayed for an inordinate amount of time due at least in part to the procedural quagmire of this case through the MDL court and transfer back to this court. (*See* footnote 2, *infra* ).

FN2. The court previously noted that the underlying state court matter was removed to this court in two separate removal procedures: (1) removal by Defendant, Crane Company, Inc. on June 29, 2005 (and given Civil Action No. 05–2684 in this court); and (2) removal by Defendant, Buffalo Pumps, Inc. on June 30, 2005 (and was given Civil Action No. 05–2709 in this court). (*See* Order, Doc. No. 67 at n. 2). Because the two actions, Nos. 05–2684 and 05–2709, were duplicative, this court dismissed the higher numbered action, Civil Action No. 05–02709 [on August 17, 2005 by Order, Doc. No. 13 in No. 05–2709].

Plaintiffs filed their Motion to Remand (in No. 05–2684) on July 25, 2005. No motion to remand was filed in No. 05–2709.

On November 22, 2005, this court had stayed the resolution of Plaintiffs' Motion to Remand pending transfer to the Eastern District of Pennsylvania and

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3488207 (E.D.La.)
(Cite as: 2010 WL 3488207 (E.D.La.))

possible consolidation with MDL No. 875. (*See* Order, Doc. No. 67, entered on November 22, 2005). The case was then transferred to the MDL court, where Plaintiffs filed a First Amended Petition. Ultimately, the MDL panel sent the case back to this court. (Docs. Nos. 70 & 129). The court then held several conferences to discuss joinder of parties and after issues were joined, the court ultimately set a Trial date, with various attendant cut-off dates. In this court, Plaintiffs have voluntarily dismissed various Defendants and the court has granted unopposed Motions for Summary Judgment filed by various other Defendants. Defendant Leslie Controls recently filed for bankruptcy protection. A limited number of Defendants remain, and they include Crane, General Electric, Foster Wheeler.

On July 14, 2010, the following motions had been set for hearing: (1) Crane's Motion for Summary Judgment (Doc. No. 350); (2) General Electric's Motion for Summary Judgment (Doc. No. 357); (3) Plaintiffs' Motion for Leave to File Amended Pleading (Doc. No. 359); (4) Plaintiffs' Motion to Strike the Testimony of James Crapo, MD (Doc. No. 364); (5) Crane's Motion to Exclude the "Each and Every Exposure" opinion (Doc. No. 367); (6) General Electric's and Foster Wheeler's Motion to Extend Deadlines (Doc. No. 374); and (7) Foster Wheeler's Motion to Dismiss or, in the alternative, Motion for Summary Judgment (Doc. No. 375). In reviewing these motions, the court *sua sponte* questioned its subject matter jurisdiction, and instructed counsel for Plaintiffs to advise the court if the MDL court (i.e., the United States District Court for the Eastern District of Pennsylvania, *In re:*

*Asbestos Products Liability Litigation,* MDL No. 875) ruled on Plaintiffs' Motion for Remand, and in the Alternative, Motion for Severance and Remand (Doc. No. 35).

Counsel for Plaintiffs advised the court (on July 14, 2010) that the MDL court did *not* rule on Plaintiffs' Motion for Remand, and in the Alternative, Motion for Severance and Remand (Doc. No. 35). (*See* Plaintiff's letter dated July 14, 2010, Doc. No. 436). The court then, *sua sponte,* set Plaintiffs' Motion for Remand (Doc. No. 35) for hearing on Wednesday, August 25, 2010, and the court continued without date the July 14, 2010, hearing date of the motions listed in the preceding paragraph. Finally, the court continued without date the Pre–Trial Conference (which had been set on Wednesday, August 4, 2010 at 2:00 p.m.) and the Trial (which had been set to begin on Monday, September 13, 2010).

## I. Background

Plaintiffs initially filed suit in Civil District Court for the Parish of Orleans, State of Louisiana, against numerous Defendants alleging that Plaintiff Terry Cardaro contracted lung cancer due to exposure to asbestos. Plaintiffs specifically allege that:

In connection with Terry Cardaro's work as a mechanic/welder at various facilities owned and operated by Louisiana Power & Light Company (n/k/a Entergy Louisiana, Inc.) in or about 1977 through 1982, and as a Welder Tacker for Equitable Equipment Company in 1969. Plaintiff suffered exposure to asbestos and asbestos-containing products designed, manufactured, sold and/or supplied and/or maintained by defendants.

(Original Petition at ¶ 4).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 3

Not Reported in F.Supp.2d, 2010 WL 3488207 (E.D.La.)
(Cite as: 2010 WL 3488207 (E.D.La.))

Purportedly based on Plaintiff Terry Cardaro's land-based employment, Plaintiffs sued a group of "Manufacturer Defendants," Entergy Louisiana, Inc. (formerly Louisiana Power & Light Company), and Equitable Equipment Company (formerly Equitable Shipyards, LLC). (*Id.* at ¶¶ 15, 40, 53).

Plaintiffs also sued another group of defendants alleged to be "Naval Equipment Manufacturers" (*id.* at ¶ 20), who allegedly manufactured, produced, designed, or otherwise put into the stream of commerce asbestos-containing products which caused injuries to Plaintiff. (*Id.* at ¶ 23). But Plaintiffs do not allege that Plaintiff Terry Cardaro served in the Navy or was exposed to asbestos products while serving and/or working in the Navy or on Naval vessels, and they do not make any allegations about specific naval vessels or specific products and equipment manufactured by any of the alleged "Naval Equipment Manufacturers." [FN3] In Plaintiffs' original Petition filed in state court, the group of "Naval Equipment Manufacturers" includes, *inter alia,* Crane and General Electric. (*Id.*).[FN4] Foster Wheeler was not added as a "Naval Equipment Manufacturer" Defendant until Plaintiffs filed their Amended Petition while the case was pending in the MDL court; at that time, Plaintiffs' Motion to Remand, which had been filed before the case was transferred to the MDL court, had not been ruled upon.

> FN3. On June 22, 2010, Plaintiffs filed a Motion for Leave to File Second Amended Complaint. In their proposed Second Amended Complaint, Plaintiffs seek to add exposure facts related to Terry Cardaro's alleged service in the Navy. (*See* Plaintiffs' Motion to File Second Amended Complaint, Doc. No. 359). The court has stayed disposition of Plaintiffs' Motion to File Second Amended Complaint in light of Plaintiffs' Motion to Remand. (*See* footnote 2, *supra* ).

> FN4. In their proposed Second Amended Complaint (which is subject of Plaintiffs'

stayed Motion for Leave to File to file same), Plaintiffs also seek to add allegations that Terry Cardaro was exposed to General Electric-manufactured asbestos containing products at Louisiana Power and Light. Those claims were not included in Plaintiffs' original Petition (filed in state court) or in Plaintiffs' First Amended petition (filed in the MDL court).

*2 According to Plaintiffs' allegations set forth in their original Petition, the Naval Equipment Manufacturers are "sued only for their **failure to warn** of the hazards of asbestos exposure, and are not sued on any other theory." (*Id.* at ¶ 20, emphasis added). Plaintiffs further allege that: "This failure to warn renders the Naval Equipment Manufacturers liable ... both in negligence, and in strict products liability for a marketing defect. Any and all theories alleged against any and all Defendants other than the above-named Naval Equipment Manufacturers are expressly and not alleged against the Naval Equipment Manufacturers." (*Id.*).

Crane removed Plaintiffs' state court Petition to this court invoking federal jurisdiction pursuant to 28 U.S.C. § 1442(a)(1), commonly referred to as the Federal Officer Removal Statute.[FN5] While Plaintiffs make no allegations in their Original Petition that Terry Cardaro served in the Navy or was exposed to asbestos during any naval service, Crane states in its Removal that Terry Cardaro "allegedly joined the U.S. Navy in 1969 and served two four-year terms until 1977," and that during that period of time, he allegedly worked on numerous federal vessels as a welder, mechanic and/or tacker. (*See* Notice of Removal, § 3(B) & (C)).

> FN5. Crane did not remove the case on any other grounds.

Crane further submits in its Removal that:

This action involves a "person," Crane, acting

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

Not Reported in F.Supp.2d, 2010 WL 3488207 (E.D.La.)
(Cite as: 2010 WL 3488207 (E.D.La.))

under the authority [of] an officer of the United States within the meaning of 28 U.S.C. § 1442(a)(1) ...

Assuming *arguendo* that Crane failed to warn plaintiff of the hazards of asbestos exposure that plaintiff came into contact with during his work history on U.S. Navy ships and naval shipyards, and as a result, is responsible for his injuries, which is denied, that Crane ... has a federal defense to this action, i.e. government contractor immunity from liability arising from exposure to asbestos-related products aboard U.S. Navy vessels. A causal nexus exists between the injuries alleged to have been sustained by plaintiff and the responsibilities imposed on Crane under the strict supervision of officers of the United States government and in compliance with federal law.

(*Id.* at § 4, citations omitted).

In its removal papers, Crane did not identify any specific product or equipment manufactured by Crane and supplied to the Navy. Crane also did not submit any supporting Affidavits with its initial removal papers. However, as discussed below, on August 10, 2010, when Crane filed its Reply Brief to Plaintiffs' Motion to Remand, Crane attached three affidavits in support of its removal.

In their Motion to Remand, Plaintiffs argue that the case should be remanded to state court because the court lacks subject matter jurisdiction. Plaintiffs reiterate that "[i]t is important to understand at the outset that the only claims being pursued against Crane are failure-to-warn claims." (Plaintiff's Motion to Remand, Doc. No. 35 at p. 2; Plaintiffs' Supp. Memo. in support of Remand, Doc. No. 458 at p. 2).

*3 In its Reply to Plaintiffs' Motion to Remand, Crane states at the outset of its brief that "because many Defendants have been dismissed and based on other circumstances, Crane Co. **does not oppose** plaintiff's Motion to Remand." (Crane's Reply

Brief, Doc. No. 467 at p. 1, emphasis added). At the end of its brief, Crane reiterates that "in light of the fact that plaintiffs are pursuing only a failure-to-warn claim against Crane Co., Crane Co. **does not oppose** plaintiff's Motion to Remand." (*Id.* at p. 4, emphasis added).

In spite of its no opposition position, Crane nevertheless also submits in its Reply Brief that its removal of the failure to warn claim against Crane on federal officer grounds is appropriate, and Crane submits for the first time three Affidavits in support of its removal. (*See* Affidavits of Anthony D. Pantaleoni, David P. Sargent, and Dr. Samuel Forman, attached as Exs. 1–3 to Crane's Reply Brief, Doc. No. 467). Crane also argues for the first time in its Reply Brief that this court has federal enclave jurisdiction. (Reply Brief, Doc. No. 467 at p. 4).

In its Opposition to Plaintiffs' Motion to Remand, Foster Wheeler (who was not added as a Defendant until Plaintiff's filed their First Amended Petition in the MDL court) argues that Plaintiffs allege "uniquely federal claims" against Foster Wheeler and that Plaintiffs First Amended Petition "is now the jurisdictionally relevant complaint in this litigation." (Foster Wheeler's Opp., Doc. No. 468 at p. 6 of 24). Essentially, Foster Wheeler argues that Plaintiff's claims asserted against it (in Plaintiffs' First Amended Petition) are subject to Federal Enclave Jurisdiction, Federal Officer Jurisdiction, and admiralty jurisdiction. Foster Wheeler also submits that if this court finds that it lacks subject matter jurisdiction, the appropriate remedy would be dismissal, not remand, because the operative complaint against Foster Wheeler was filed in federal court. (*Id.* at page 7 of 24, at n. 1).

In its opposition to Plaintiffs' Motion to Remand, General Electric (who had originally joined in Crane's removal) argues that it (like Crane) is entitled to Federal Officer Jurisdiction. However, General Electric admits that Plaintiffs have not specified the factual circumstances of Terry Cardaro's alleged exposure to GE

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

Not Reported in F.Supp.2d, 2010 WL 3488207 (E.D.La.)
(Cite as: 2010 WL 3488207 (E.D.La.))

manufactured asbestos containing military products (Opp., Doc. No. 469 at p. 5), and General Electric submits no affidavits in support of federal officer jurisdiction. General Electric also argues that the court has federal enclave jurisdiction and admiralty jurisdiction.

As the court next discusses, the court finds that Crane's removal under the Federal Officer Removal was improper. Further, Crane did not remove this matter on any other grounds, and its argument (raised for the first time in its Reply Brief filed on August 10, 2010) that the court has federal enclave jurisdiction is unavailing. Finally, the court rejects arguments made by Foster Wheeler and General Electric that removal, at this juncture, is proper.

### II. Legal Analysis
### A. No Federal Officer Jurisdiction

*4 Pursuant to the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1),

(a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is presiding:

(1) The United States or any agency thereof or any officer (or any acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1).

Removal pursuant to § 1442(a)(1) is meant to "ensure a federal forum in any case where a federal officer is entitled to raise a defense arising out of his official duties." *Winters v. Diamond Shamrock Chemical Co.,* 149 F.3d 387, 398 (5th Cir.1998). However, the removing defendants have the burden

of establishing the existence of federal jurisdiction. *Id.* at 397.

In considering whether removal was proper under 28 U.S.C. § 1442(a)(1), the court must determine whether Crane, the removing defendant, has established the following factors:

(1) it is a "person" within the meaning of the statute;

(2) it acted under the direction of a federal officer and that it has demonstrated a causal nexus between Plaintiff's failure-to-warn claims and the acts it actions performed under the color of a federal officer; and

(3) it can raise a colorable federal defense to plaintiff's claims.

*Mesa v. California,* 489 U.S. 121, 124–25, 134–35, 109 S.Ct. 959, 962–63, 967–68, 103 L.Ed.2d 99 (1989); *Winters,* 149 F.3d at 398–400.

In this case, Plaintiffs do not dispute that Crane meets the **first prong** of the jurisdictional test, i.e., Crane is a "person" for purposes of removal under § 1442. At issue are the other prongs of the jurisdictional test, i.e., whether Crane acted under the direction of a federal officer and can establish a causal nexus between its actions under asserted federal authority and the Plaintiffs' claims for failure to warn (prong 2), and the existence of a colorable federal defense (prong 3).

***Second prong: Acting under the direction of a federal officer and causal nexus between plaintiffs' claims and Crane's actions performed under the color of a federal office? "No"***

In its Reply Brief, Crane argues that numerous courts have found removal under federal officer grounds was proper in the failure-to-warn context when evidence, such as Crane's Affidavits submitted with its Reply, were considered. [FN6] In one affidavit, Anthony D. Pantaleoni, the Vice–President of Environment, Health and Safety for Crane, attest that Crane supplied equipment,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

Not Reported in F.Supp.2d, 2010 WL 3488207 (E.D.La.)
**(Cite as: 2010 WL 3488207 (E.D.La.))**

including valves, for Navy ships under contracts between Crane and the Navy, and that all equipment supplied by Crane was built in accordance with Navy specifications. (*See* Crane's Reply Brief, Doc. No. 467, Exhibit 1, Pantaleoni Affidavit at ¶¶ 4 & 6).

> FN6. In some cases where courts have found that removal was proper, Plaintiffs and/or removing Defendants confirmed manufacture of specific products installed on naval vessel on which Plaintiff worked. *See e.g., Nesbiet v. General Electric Co.,* 399 F.Supp.2d 205 (S.D.N.Y.2005) (asbestos used as insulation in marine steam turbines).; *Beckwith v. General Electric Co.,* 2010 WL 1287095 (D.Conn.2010)(centrifugal pumps manufactured by Buffalo Pumps and marine steam turbines manufactured by GE). Here, in their original petition that served as the basis for removal, Plaintiffs made no made specific allegations about a specific Crane product made for the Navy or that Plaintiff Terry Cardaro served/ worked for the Navy. Further, in its removal papers, Crane is vague about any products it manufactured for the Navy, and Crane has moved for summary judgment arguing that "[d]uring discovery and depositions in this matter, Plaintiffs did not identify Crane Co. as the manufacturer or supplier of any asbestos-containing product to which Mr. Cardaro was exposed." (Doc. No. 350 at p. 1).

**\*5** In another of Crane's affidavits, David P. Sargent, Jr., a retired Rear Admiral of the United States Navy, attests in part that:

> 46. The Navy had precise specifications as the nature of any markings, communications or directions affixed to or made a part of any equipment supplied by manufacturers such as Crane Co. for ultimate use aboard Navy ships. Such Manufacturers would not have been

permitted, under the specifications, associated regulations and procedures, nor under the actual practice as it evolved in the field to vary or to deviate in any respect from the Navy specifications in supplying equipment, including affixing any type of **warning** or caution statement to equipment intended for installation in a Navy ship, **beyond those specifically required by the Navy without prior discussion and expressed approval by the Navy.**

(*See* Crane's Reply Brief, Doc. No. 467, Exhibit 2, Sargent Affidavit at ¶ 46, emphasis added; *see also* ¶¶ 48 & 50).

In Crane's third Affidavit, Samuel A. Forman, M.D., a medical doctor in preventive and occupational medicine, attests to the state of knowledge and awareness regarding the hazards of asbestos, and he states in part that:

> In my research, I have not located a single instance in which the Navy, at any time relevant to this case, instructed or permitted a supplier of equipment, such as valves, to a vessel or facility to provide any asbestos-related warning with its equipment.

(Doc. No. 467, Exhibit 3, Forman Affidavit at ¶ 23).

However, in their original state court Petition, Plaintiffs do not allege, and Crane does not submit (in its removal papers), that Terry Cardaro worked with any specific Crane product/valve while on board any Naval vessel.[FN7] And even if Terry Cardaro worked with Crane products/valves on Naval vessels, the court finds that the fact that warnings on Naval equipment required prior approval by the Navy (as per the Sargent Affidavit) does not mean that Crane was either specifically mandated or prevented from giving adequate warnings about asbestos that was contained in products that it manufactured for the Navy. Further, although Dr. Forman attests that he has not located any instance in which the Navy instructed or

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3488207 (E.D.La.)
**(Cite as: 2010 WL 3488207 (E.D.La.))**

permitted a supplier of equipment to provide any asbestos-related warning with its equipment, there is no evidence that the Navy prevented Crane from complying with state-law duties to warn of the danger of asbestos contained in any product that Crane supplied to the Navy. *Cf. Winters v. Shamrock Chemical Co.,* 149 F.3d 387, 401 (5th Cir.1998) (affirming denial of a motion to remand and stating that contractors hired to produce Agent Orange failed to put warnings on the product only because they "were specifically prohibited from placing any warnings on the finished product itself except as allowed by the contract").

> FN7. As previously noted in footnote 6, Crane argues in its Motion for Summary Judgment (the hearing of which is presently stayed) that "[d]uring discovery and depositions in this matter, Plaintiffs did not identify Crane Co. as the manufacturer or supplier of any asbestos-containing product to which Mr. Cardaro was exposed." (Doc. No. 350 at p. 1).

Plaintiffs have also submitted evidence that the Navy expected manufacturers to supply warnings concerning hazardous substances in military equipment in accordance with state law. A memorandum dated September 1956 from the Office of the Secretary of the Navy regarding labeling of hazardous substances specifically states that warnings accompanying products manufactured for the Navy by contractors are "to be affixed by the manufacturer." (*See* Plaintiff's Supplemental Memo., Doc. No. 458, Ex. A). Further, the memorandum states that the content of such manufacturer warnings is to be "governed by State an Federal laws and regulations depending on the nature of the material and whether the shipment is interstate or intrastate." (*Id.*).[FN8]

> FN8. *See Hilbert v. Aeroquip,* 486 F.Supp.2d 135, 141 (D.Mass.2007)(court granted motion to remand and discussed similar Navy manual wherein the Navy recognized that additional warnings as

required by state and federal laws may be added to those required by its own regulations); *Glein v. Boeing Co.,* 2010 WL 2608284 (S.D.Ill.2010)(court granted motion to remand and discussed same Naval memo).

*6 Thus, the court cannot find a causal nexus between acts taken by Crane at the direction of the Navy and the failure to warn as alleged by Plaintiffs. For purposes of federal officer removal, Crane has not shown that the Navy required it to refrain from issuing warnings about the dangers of asbestos in any specific product it manufactured for the Navy and to which Plaintiff Terry Cardaro was exposed, or that any control the Navy may have had over warnings directly interfered with Crane's ability to fulfill its state-law obligation to warn of hazards associated with asbestos.[FN9]

> FN9. As previously noted, Buffalo Pumps removed the underlying state matter in a separate removal and was given Docket No. 05–2709 in this court. (*See* fn. 2, *supra*). The court dismissed No. 05–2709 as duplicative of No. 05–2684. (*Id.*). While Plaintiffs did not file a motion to remand No. 05–2709 (which remains dismissed), the court finds that Buffalo Pumps' removal was also improperly removed under the Federal Officer Removal Statute and does not confer subject matter jurisdiction on this court.

> Buffalo Pumps attached supporting Affidavits to its Notice of Removal. One of these Affidavits is that of Roger B. Horne, Jr., who attests that he is a retired Rear Admiral of the United States Navy, serving between 1956 and 1991. According to Horne:

> A vendor such as Buffalo Pumps would not have been permitted (under either specifications or, as a matter of Navy practice) to attach any type of warning

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3488207 (E.D.La.)
(Cite as: 2010 WL 3488207 (E.D.La.))

Page 8

or cautionary statement not required or approved by the Navy, including statements related to asbestos, without prior discussion, approval and acceptance by the Navy.

(*See* Horne Affidavit at ¶¶ 12–13, attached to Buffalo Pumps' Removal in No. 05–2709).

Such language is very similar to the language cited above from retried Rear Admiral Sargent's Affidavit submitted by Crane when it filed its Reply to Plaintiffs' Motion to Remand. However, as the court found above, the fact that warnings on Naval equipment required prior approval by the Navy does not mean that an entity such as Buffalo Pumps was prevented from giving adequate warnings about asbestos that was contained in products that it manufactured for the Navy. Further, as discussed in the text above, Plaintiffs have submitted a Naval memorandum which states that warnings accompanying products manufactured for the Navy by contractors are "to be affixed by the manufacturer," and that the content of such manufacturer warnings is to be "governed by State an Federal laws and regulations depending on the nature of the material and whether the shipment is interstate or intrastate." ( *See* text p. 14, citing Ex. A to Plaintiffs' Supplemental Memo. in support of Motion to Remand, Doc. No. 458).

### *Third prong: Colorable Federal Defense? "No"*

To the extent that Crane is asserting a "colorable federal defense," it is relying on the federal or military contractor defense as prescribed by the Supreme Court in *Boyle v. United Techs. Corp.,* 487 U.S. 500, 512, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). Under certain conditions, this defense immunizes contractors who supply military

equipment to the Government from the duties imposed by state tort law. Such displacement of ordinary tort liability "occur [s] only where ... a 'significant conflict' exists between an identifiable 'federal policy or interest and the [operation] of state law....' " *Boyle* at 507, 108 S.Ct. at 2516 (citation omitted).

*Boyle* provides that government contractors are shielded from liability in state court for defects in products or equipment supplied to the United States only when:

(1) the United States approved reasonably precise specifications;

(2) the equipment conformed to those specifications; and

(3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not the United States.

*Boyle,* 487 U.S. at 512, 108 S.Ct. at 2518.

At the outset, the court finds that asbestos insulation in and of itself does not represent military equipment entitling its manufacturers to the protections of the military contractor defense. *In re Hawaii Federal Asbestos Cases,* 960 F.2d 806, 812 (9th Cir.1992). Further, even if products containing asbestos insulation are considered military equipment, the court still finds that here Crane has no colorable federal defense.[FN10] Courts often merge the acting under/causal relationship analysis discussed above with a claim of common law government contractor defense as set forth in *Boyle.* Thus, for the same reasons set forth in the preceding section, the court cannot find that the Navy approved reasonably precise specifications that either mandated or prevented Crane from complying with its state-law duty to warn for purposes of the first prong of the *Boyle* standard.[FN11]

FN10. The court recognizes that *Mesa* only requires a "colorable" federal defense, but

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3488207 (E.D.La.)
**(Cite as: 2010 WL 3488207 (E.D.La.))**

Crane has not met even that minimum standard.

FN11. In *McCormick v. C.E. Thurston & Sons, Inc.*, 977 F.Supp. 400 (E.D.Va.1997), a former navy officer was allegedly exposed to asbestos while serving aboard the USS NIMITZ that was docked at the Norfolk Naval Base for at least part of his tour. Suit was filed in state court against the distributor of asbestos products aboard the NIMITZ under a failure to warn claims. The defendant removed the case to federal court which subsequently granted the plaintiffs' motion to remand. In addition to finding that federal enclave jurisdiction was doubtful and could not support removal, the court also found that the Defendant had failed to demonstrate a colorable federal defense under *Boyle. Id.* at 402–03. The court pointed out that:

> in the thousands of asbestos cases that have preceded, the United States District Court for the Eastern District of Virginia has determined that the government contractor defense is not available in "failure to warn" cases. Judge Miller set forth his ruling that the *Boyle* case did not apply in failure to warn cases back in October of 1988. *See* Order dated October 19, 1988 from *Worley v. Celotex Corp.*, C.A. No. 88–243–N. This position was subsequently adopted by the entire Court and incorporated into the Summary of Prior Rulings and Preservation of Objections Pertaining to Motions for Which Oral Argument is Waived.

> *Id.* at 403.

In the absence of evidence of a significant conflict between a federal policy or interest and the operation of state law, such as is required to implicate the government contractor defense, the court concludes that Crane has failed to proffer a colorable federal defense so as to permit removal pursuant to 28 U.S.C. § 1442(a)(1). *Accord Weese v. Union Carbide Corp.*, 2007 WL 2908014 (S.D.Ill.2007) (remanding case because no colorable federal defense that would permit federal officer removal).

**B. Can Crane assert Federal Enclave Jurisdiction? "No"**

*7 In its Reply Brief, Crane submits that "Mr. Cardaro was allegedly exposed to asbestos at the Norfolk Naval Station at a time in which the Norfolk Naval Station was a federal enclave and accordingly federal jurisdiction is proper under Article I, Section 8, Clause 17 of the U.S. Constitution and 28 U.S.C. § 1331(a)." (Doc. No. 467 at p. 4). However, Crane did not remove this matter on any other grounds except federal officer removal, and it cannot now base its removal jurisdiction on federal enclave jurisdiction. Further, there is nothing in Plaintiffs' originally filed state court petition that would serve as a basis for Crane removing this matter based on federal enclave jurisdiction.

**C. Foster Wheeler has no standing at this juncture to contest removal.**

Foster Wheeler was not added as a Defendant until the Plaintiffs filed their First Amended Petition in the MDL court *after* the case was improvidently removed and *before* a ruling was made on Plaintiffs' timely filed Motion to Remand. Because the court is granting Plaintiffs' Motion to Remand, Plaintiffs' First Amended Petition is improperly before this court.FN12 Thus, the court does not reach Foster Wheeler's arguments that the court may exercise Federal Officer Jurisdiction, Federal Enclave Jurisdiction or Admiralty Jurisdiction.FN13

FN12. Foster Wheeler argues that although the court's jurisdiction is normally analyzed on the basis of the pleadings filed at the time of removal (here, the original state court Petition), Foster Wheeler

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3488207 (E.D.La.)
**(Cite as: 2010 WL 3488207 (E.D.La.))**

submits that because Plaintiffs filed an Amended Petition in the MDL court (after removal), the court must ask whether the amended complaint gives rise to a viable claim of federal subject matter jurisdiction. However, in the cases cited by Foster Wheeler in support of this argument, the plaintiff amended his complaint *after* his motion for remand had been denied (*see e.g., Akin v. Ashland Chemical Co.,* 156 F.3d 1030 (10th Cir.1998), or plaintiff had not contested removal (*see e.g., Barbara v. N.Y. Stock Exch., Inc.,* 99 F.3d 49 (2nd Cir.1996), or plaintiff had amended his complaint *before* filing a motion to remand (*see e.g., Moffitt v. Residential Fundig Co.,* 604 F.3d 156, 159 (4th Cir.2010). Here, Plaintiffs filed their amended petition after filing a motion to remand, but before a ruling was made on this motion.

FN13. The court notes that in support of its argument that the court may exercise Federal Officer Jurisdiction, Foster Wheeler has submitted with its Opposition to Plaintiffs' Motion to Remand, the Affidavits of Retires Admiral Benjamin Lehman and Thomas Schroppe, a former engineer with Foster Wheeler. However, both of these affidavits appear to be prepared for another case in which Foster Wheeler was the removing defendant.

***D. General Electric's opposition to remand has no merit.***

Again, for the reasons set forth in the preceding section, the court's subject matter jurisdiction depends on the Plaintiff's original state court petition (improperly removed to this court), and *not* on Plaintiff's First Amended Petition (filed in the MDL court after removal and before a ruling on Plaintiffs' Motion to Remand). Further, while General Electric now argues that it is entitled to Federal Officer Jurisdiction (as did Crane in its removal), General Electric offers no affidavits in

support of federal officer jurisdiction, and General Electric admits that "Plaintiffs have not specified the factual circumstances of Terry Cardaro's alleged exposure to GE manufactured asbestos containing military products." (Doc. No. 469 at p. 5). [FN14] Thus, the court finds no federal officer jurisdiction as to General Electric. Finally, because Crane removed this case solely on the basis of Federal Officer Jurisdiction, the court does not consider General Electric's arguments that the court has Federal Enclave Jurisdiction or Admiralty Jurisdiction.

FN14. Again, in their original Petition, Plaintiffs make no allegation that Plaintiff Terry Cardaro served in the Navy or was exposed to asbestos while in Naval service. Further, the court notes that in its Motion for Summary Judgment (Doc. No. 357), General Electric argues that there is no evidence that Terry Cardaro was exposed to asbestos associated with products manufactured by General Electric for the Navy. Plaintiffs did not file an opposition to this argument, but instead seek to add additional claims against General Electric as a land based manufacturer through their proposed Second Amended "Petition", which is the subject of Plaintiffs' Motion for Leave to File Second Amended Pleading (Doc. No. 359). Both General Electric's Motion for Summary Judgment and Plaintiff's Motion for Leave to File Second Amended Pleading have been stayed. (*See* fn. 2, *supra* ).

### III. Conclusion

The court concludes that this matter was improperly removed pursuant to § 1442(a)(1) and remand is required for lack of subject matter jurisdiction.

Accordingly,

**IT IS ORDERED** that Plaintiffs' " **Motion to Remand** " be and is hereby **GRANTED** for lack of

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3488207 (E.D.La.)
**(Cite as: 2010 WL 3488207 (E.D.La.))**

subject matter jurisdiction, and the case is **REMANDED** to the Civil District Court for the Parish of Orleans, State of Louisiana.

**IT IS FURTHER ORDERED** that all prior rulings made by this court, including but not limited to the Magistrate Judge's Order (Doc. No. 438) granting the Plaintiffs' Motion to Compel Against General Electric Company and for Costs, be and are hereby **VACATED** in toto because the court lacked subject matter jurisdiction when those rulings were rendered;

**\*8 IT IS FURTHER ORDERED** that General Electric Company's Rule 72 Objection (Doc. No. 460) to the Magistrate Judge's Order (Doc. No. 438) be and is hereby **DISMISSED AS MOOT;**

**IT IS FURTHER ORDERED** that all prior dismissals of defendants, through summary judgment rulings or voluntary dismissals by Plaintiffs, be and are hereby **VACATED** because the court lacked subject matter jurisdiction when those rulings or dismissals were entered.

E.D.La.,2010.
Cardaro v. Aerojet General Corp.
Not Reported in F.Supp.2d, 2010 WL 3488207 (E.D.La.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Exhibit H

Westlaw.

Not Reported in F.Supp.2d, 2010 WL 234906 (N.D.Cal.)
**(Cite as: 2010 WL 234906 (N.D.Cal.))**

▷
Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
Robert LINDENMAYER and Beverly
Lindenmayer, Plaintiffs,
v.
ALLIED PACKING & SUPPLY, INC., et al.,
Defendants.

No. C09–05800 TEH.
Jan. 14, 2010.

Christopher Daniel Wasson, Gordon D. Greenwood
, James Lyndon Oberman, Kazan McClain Lyons
Greenwood & Harley, Oakland, CA, for Plaintiffs.

Mitchell Bruce Greenberg, Stephanie L. Walker,
Abbey Weitzenberg Warren & Emery, Santa Rosa,
CA, Kevin Douglas Jamison, Pond North LLP, Los
Angeles, CA, Edward R. Hugo, James Carl Parker,
Karleen Frances Murphy, Shaghig Dawn Agopian,
Thomas J. Moses, Derek S. Johnson, Sedgwick
Detert Moran & Arnold LLP, Susanne Gheseri
Arani, Carroll Burdick & McDonough LLP, San
Francisco, CA, for Defendants.

*ORDER GRANTING MOTION TO REMAND*
THELTON E. HENDERSON, District Judge.

*1 This matter came before the Court on
January 5, 2010, on the motion to remand filed by
Plaintiffs Robert Lindenmayer ("Mr.Lindenmayer")
and his wife Beverly Lindenmayer (collectively,
"Plaintiffs" or "the Lindenmayers"). For the
reasons set forth below, Plaintiffs' motion is
GRANTED.

**BACKGROUND**
This is a tort action against Foster Wheeler
LLC and dozens of other defendants seeking
damages for injuries based on Mr. Lindenmayer's
exposure to asbestos. Foster Wheeler removed this
matter to federal court from Alameda County

Superior Court on December 10, 2009. Plaintiffs
moved to remand on the following day, and
simultaneously moved to shorten time for the
hearing on that motion, citing Mr. Lindenmayer's
terminal illness.FN1 The Court heard the motion on
shortened time, and now decides whether to remand
this action to state court.

> FN1. Mr. Lindenmayer was diagnosed
> with mesothelioma, and his doctor attested
> that there is "substantial medical doubt that
> he will survive more than six (6) months
> beyond" December 11, 2009. Decl. of
> Physician David M. Jablons, M.D. (Dkt.
> No. 13, Exh. 14), ¶ 8.

Plaintiffs allege that Mr. Lindenmayer was
exposed to asbestos while working as a machinist
mate in the United States Navy aboard the USS
America from 1964 to 1967. Plaintiffs bring
multiple claims alleging defective design, failure to
warn and other theories against Foster Williams,
which confirms that it manufactured marine steam
generators, including boilers and economizers, for
that vessel. Because it acted under an officer or
agency of the United States in manufacturing and
selling that equipment, Foster Wheeler argues that
federal jurisdiction is proper under the federal
officer removal statute, 28 U.S.C. § 1442(a)(1).
Plaintiffs dispute federal jurisdiction and seek
remand on that basis.

**LEGAL STANDARD**
Removal under federal-question jurisdiction is
ordinarily permissible only where the basis for
federal jurisdiction appears on the face of the
complaint. *Jefferson County v. Acker,* 527 U.S.
423, 431, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999).
The federal officer removal statute, 28 U.S.C. §
1442(a)(1), constitutes an exception to that rule.
"Under the federal officer removal statute, suits
against federal officers may be removed despite the
nonfederal cast of the complaint; the federal
question element is met if the defense depends on

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 234906 (N.D.Cal.)
**(Cite as: 2010 WL 234906 (N.D.Cal.))**

federal law." *Jefferson County,* 527 U.S. at 431. The statute allows for the removal to federal district court of any action against the "United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office [.]" 28 U.S.C. § 1442(a)(1). Allowing removal ensures that, "where federal officers can raise a colorable defense arising out of their duty to enforce federal law," they "have such defenses litigated in the federal courts." *Willingham v. Morgan,* 395 U.S. 402, 406–07, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969). To satisfy section 1442(a) (1), Foster Wheeler must (1) demonstrate that it acted under the direction of a federal officer, (2) raise a colorable federal defense to plaintiffs' claims, and (3) establish a causal nexus between plaintiffs' claims and acts it performed under color of federal office. *Fung v. Abex Corp.,* 816 F.Supp. 569, 571–72 (N.D.Cal.1992) (citing *Mesa v. California,* 489 U.S. 121, 124–25, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989)). Foster Wheeler must also demonstrate that it is a "person" under the statute. *Id.*

**\*2** Although other removal statutes are "strictly construe[d] ... against removal jurisdiction," *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992), "the Supreme Court has mandated a generous interpretation of the federal officer removal statute," *Durham v. Lockheed Martin Corp.,* 445 F.3d 1247, 1252 (9th Cir.2006). "[T]he policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).' " *Ariz. v. Manypenny,* 451 U.S. 232, 242, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981) (quoting *Willingham,* 395 U .S. at 407). To justify removal, a defendant need not assert a "clearly sustainable defense," nor does he need to "win his case before he can have it removed." *Willingham,* 395 U.S. at 407.

To fulfill the second prong—the colorable federal defense—Foster Wheeler asserts the government contractor defense recognized by the Supreme Court in *Boyle v. United Technologies*

*Corp.,* 487 U.S. 500, 512, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). That defense, which "immunizes contractors who supply military equipment to the Government from the duties imposed by state tort law," *In re Hawaii Fed. Asbestos Cases,* 960 F.2d 806, 810 (9th Cir.1992), is available to defendants who satisfy three requirements:

> Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Boyle,* 487 U.S. at 512. The first two elements "are intended to insure that it is indeed a discretionary decision on the part of the government that is being immunized," and the third requires the contractor to have "fully conveyed all information necessary to allow the government to make a fully informed decision." *Butler v. Ingalls Shipbuilding, Inc.,* 89 F.3d 582, 584 (9th Cir.1996). "[S]tripped to its essentials, the military contractor's defense under *Boyle* is to claim, 'The Government made me do it.' " *In re Hawaii Fed. Asbestos Cases,* 960 F.2d at 813. The defense applies "only when the Government, making a discretionary, safety-related military procurement decision contrary to the requirements of state law, incorporates this decision into a military contractor's contractual obligations, thereby limiting the contractor's ability to accommodate safety in a different fashion." *Id.* The conflict between state law and "an identifiable 'federal policy or interest' " must be " 'significant' " before ordinary tort law liability will be displaced. *Id.* at 810 (quoting *Boyle,* 487 U.S. at 507).

Although the *Boyle* test expressly applies to product liability claims premised on design defects, the Ninth Circuit has addressed its applicability in failure to warn claims:

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 234906 (N.D.Cal.)
(Cite as: 2010 WL 234906 (N.D.Cal.))

Whereas the government contractor's defense may be used to trump a design defect claim by proving that the government, not the contractor, is responsible for the defective design, that defense is inapplicable to a failure to warn claim in the absence of evidence that in making its decision whether to provide a warning ..., [the defendant] was "acting in compliance with 'reasonably precise specifications' imposed on [it] by the United States."

*3 *Butler,* 89 F.3d at 586 (quoting *In re Hawaii Fed. Asbestos Cases,* 960 F.2d at 813). A defendant can therefore apply the *Boyle* test to failure to warn claims where "the government affirmatively instructed it regarding the provision of warnings." *Overly v. Raybestos–Manhattan,* No. C96–2853 SI, 1996 WL 532150, at *4 (N.D.Cal. Sept.9, 1996). The key inquiry is whether "the specifications of [the defendant's] contract with the Navy conflicted with [the defendant's] duty to warn under state law." *Butler,* 89 F.3d at 586.

**DISCUSSION**

Plaintiffs, focusing on the second prong of the section 1442(a) (1) test, contend that Foster Wheeler's assertion of the government contractor defense does not rise to the level of a "colorable" federal defense under either the design-defect or the failure-to-warn theories. According to Plaintiffs, the Navy did not require the use of asbestos in equipment manufactured by Foster Wheeler, whose evidence only demonstrates that the Navy set performance—rather than *design* —specifications. As to the duty to warn theory, Plaintiffs claim that Foster Wheeler's witnesses only speculate that the Navy would have barred the company from issuing warnings, but offer no evidence that any attempt to issue such warnings was ever made. Foster Wheeler responds that the presentation of a colorable defense is a low burden that it has met.

Many district courts have assessed remand in similar contexts, and their decisions have come down on both sides of the question.[FN2] Those denying remand emphasize that a "defendant must only raise a 'colorable federal defense,' " and not one that is "clearly sustainable." *Curry v. Am. Standard, Inc.,* No. 08–cv–10228 (GBD), 2009 WL 308029, at *2 (S.D.N.Y. Feb. 6, 2009); *see also Kirks v. Gen. Electric Co.,* No. 08–856–SLR, 2009 WL 2970391 (D.Del. Sept.17, 2009) (concluding that defendant raised a colorable federal defense after noting that "the provisions of the federal officer removal statute are to be construed broadly"). Others have allowed remand based on defendants' failure to show "that their contractual obligations to the government specifically prohibited them from placing warnings on their products." *Nguyen v. Allied Signal, Inc.,* No. C98–03616 SI, 1998 WL 690854, at *4 (N.D.Cal. Sept.29, 1998); *see also Prewett v. Goulds Pumps (IPG),* No. C09–0838 RSM, 2009 WL 2959877 (W.D.Wash. Sept.9, 2009) (concluding "government contractor defense is not 'colorable' " where defendant failed to show "the Navy actually exercised its discretion in approving proposed warnings that conflicted with state law").

> FN2. Because remand orders are "not reviewable on appeal or otherwise," 28 U.S.C. § 1447(d), the Ninth Circuit and other courts of appeal have had little opportunity to provide guidance on this issue.

Whether or not Foster Wheeler presents a colorable federal defense hinges on its evidence. In support of its government contractor defense, Foster Wheeler submitted three statements: an affidavit by J. Thomas Schroppe, a retired Foster Wheeler executive personally involved with the Navy's procurement contracts with Foster Wheeler; an affidavit by Ben J. Lehman, a retired Navy admiral who had supervised ship overhauls and alterations and was familiar with the Navy's boiler specifications; and a declaration by Lawrence Stilwell Betts, a medical doctor and retired Navy captain who testified to the Navy's knowledge of risks associated with asbestos exposure.

*4 Lehman attests that "only boilers especially

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 234906 (N.D.Cal.)
(Cite as: 2010 WL 234906 (N.D.Cal.))

designed and built for the propulsion of U.S. Navy combat vessels, including Foster Wheeler boilers, could be installed" on Navy ships. Lehman Aff. ¶ 3. Such boilers "were designed and manufactured in accordance with detailed specifications written, approved, and issued by the U.S. Navy," which "retained the 'final say' over the design of any piece of equipment." *Id.* ¶¶ 3, 5. The Navy "made the ultimate decisions, whether engineering or contractual," and drafted, approved, and maintained the military specifications—or "Mil Specs"—for boilers, which "included the nature of any communication affixed to" such equipment. *Id.* ¶¶ 5, 6, 8. As for warnings, the Navy "would not have allowed its equipment suppliers ... to affix any warning related to any asbestos hazards on their equipment." *Id.* ¶ 14. The hazards subject to precautionary labeling were determined only by the Navy, which "would never permit a supplier to suggest, advise, or require any actions that would be disruptive to the normal operation of the ship in its primary function of defending our Country." *Id.* ¶¶ 11–12. "In short," Lehman attests, "the U.S. Navy dictated every aspect of the design, manufacture, installation, overhaul, written documentation and warnings associated with its ships and did not permit deviation from any of its contractors." *Id.* ¶ 11. The Navy would not accept equipment that failed to comply with its specifications. *Id.* ¶ 4.

According to Schroppe, "the ship design for any given class of ship would be contained in a Ship Specification ('Ship Spec')," which dictated "all boiler operating criteria, performance requirements, and maximum physical dimensions of the boiler(s)." Schroppe Aff. ¶ 5. Foster Wheeler's equipment had to comply with both the Ship Spec and the Mil Specs, "which cover all specific components of the boiler, including accessories, subcomponents, and materials required to fabricate the boilers and its components." *Id.* ¶ 6. Boiler specifications "dictated very specific material requirements"—identifying, with respect to insulation, "the material" and the "arrangement

of various bricks and insulating materials on various boiler walls." *Id.* ¶ 13. Schroppe, like Lehman, attested that Foster Wheeler "would not be permitted ... to affix any type of warning or caution statement to a piece of equipment intended for installation onto a Navy vessel, beyond those required by the Navy." *Id.* ¶ 22.

Betts, finally, delves into the Navy's knowledge of hazards associated with asbestos. He declares that the U.S. government, by "the 1940s—1950s and thereafter," had "already recognized that the prolonged inhalation of sufficient concentration of asbestos fibers could result in pulmonary disease," and that the government's information "far exceeded" that which "possibly could have been provided by a boiler manufacturer such as Foster Wheeler." Betts Decl. ¶¶ 5–6. He documents the Navy's "sound, premier state-of-the-art occupational health program to control the recognized, potential health hazard" associated with asbestos exposure. *Id.* ¶ 32. Given that the Navy itself "had determined what an 'acceptable asbestos exposure' was," he declares that the Navy "would not, and could not, allow" each equipment manufacturer to "make an additional determination of what constituted an acceptable exposure." *Id.* Foster Wheeler, "at best," could only "have told personnel to follow the Navy's own mandates for handling asbestos," information he characterized as "redundant." *Id.* ¶ 34f.

**\*5** Foster Wheeler and the Lindenmayers each urge the Court to follow the decisions of other courts that have ruled in their favor based on substantially identical records. Foster Wheeler points to *Wright v. A.W. Chesterton Co.,* in which Judge Jenkins denied plaintiffs' motion to remand after Foster Wheeler removed a similar asbestos action to this district. Judge Jenkins found that "the Schroppe and Lehman declarations ... satisfie[d] the first and second prongs of the *Boyle* test," as they established that "the United States Navy required, and approved, reasonably precise specifications and Foster Wheeler's equipment conformed to these

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 234906 (N.D.Cal.)
**(Cite as: 2010 WL 234906 (N.D.Cal.))**

specifications." *Wright v. A.W. Chesterton Co.,* No. C07–05403 MJJ, 2008 WL 512728, at *6 (N.D.Cal. Feb.25, 2008). In so ruling, Judge Jenkins emphasized that Foster Wheeler's burden was a low one: "The Court is mindful that Defendants need only present a colorable federal defense to Plaintiff's claims and need not prove that the defense will be meritorious." *Id.* at *7.

Plaintiffs direct the Court to *Holdren v. Buffalo Pumps, Inc.,* an asbestos case remanded from the District of Massachusetts for lack of subject-matter jurisdiction. Foster Wheeler, one of five defendants that removed the case, submitted affidavits from the same three witnesses before this Court. Judge Gertner characterized her ruling as resting "ultimately on what is missing from the record":

> The defendants have submitted no evidence that the Navy expressly prohibited asbestos warnings by manufacturers; no evidence that they ever attempted to warn about asbestos on products destined for the Navy; no evidence that the Navy ever rejected any other manufacturer's proposed asbestos warning; and no evidence that defendants warned of asbestos on other, non-military equipment they produced during the same period, by contrast to the equipment they supplied to the Navy. Finally, they offer no persuasive evidence of an overall Navy-wide policy that would have conflicted with manufacturer asbestos warnings.

> All told, the manufacturers do not claim that the Navy ever offered them any guidance on asbestos warnings, nor that they themselves ever contemplated warning about the dangers of asbestos. Their defense, instead, rests entirely on an untested hypothetical: If they had made such a proposal, the Navy *would have* refused that recommendation. This account rings of post-hoc justification.

*Holdren v. Buffalo Pumps, Inc.,* 614 F.Supp.2d 129, 137 (D.Mass.2009) (emphasis in original). While acknowledging her obligation not to assume "an unduly narrow view of federal officer removal," Judge Gertner emphasized that "the court must still satisfy itself that the defense has enough substance to trigger the right to a federal forum." *Id.* at 141. "Relaxing this standard too far, particularly in the context of a private contractor, could well err in the opposite direction—by providing a federal forum to a party whose acts were outside its federal directives." *Id.*

**\*6** Noting that the "crux of the federal contractor defense is a 'significant conflict' between a federal interest and the defendant's state-law duties," the *Holdren* court observed a key distinction between design-defect and failure-to-warn claims. *Id.* at 142–43. A design-defect case presents a more "obvious conflict" with state law, in that the government's design specifications "themselves reflect a federal interest; where it is aware of potential risks in the design, the government has necessarily balanced safety and performance." *Id.* at 143. For a failure-to-warn case, "the type of conflict required by the defense may be considerably more difficult to show," because a manufacturer can typically comply "with its state-law duties to warn" without departing from "the government's design specifications and the judgments they reflect." *Id.*

With those distinctions in mind, the Court turns first to the design-defect claims against Foster Wheeler. Plaintiffs characterize the evidence as showing that the Navy had set only performance standards, not design specifications, for Foster Wheeler's equipment. The Supreme Court offered such a hypothetical in *Boyle:* if the United States, in contracting to purchase an air conditioner, had specified "the cooling capacity but not the precise manner of construction," there could be no conflict with a state law duty to include a certain safety feature. *Boyle,* 487 U .S. at 509. Contrary to Plaintiffs' assessment, however, Foster Wheeler's evidence shows that the Navy had approved "reasonably precise" *design* specifications, which dictated, among other things, what insulating

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 234906 (N.D.Cal.)
(Cite as: 2010 WL 234906 (N.D.Cal.))

material to be used. The first prong of *Boyle* is therefore met. Foster Wheeler has also demonstrated that it conformed to those specifications, based on testimony showing the Navy did not accept nonconforming equipment, and that the Navy's knowledge of the risks associated with asbestos exceeded its own. Foster Wheeler satisfies the three-factor *Boyle* test, and therefore presents a "colorable" federal defense to the design-defect claims, as required for removal jurisdiction under section 1442(a)(1).

Foster Wheeler's evidence fails to raise a colorable defense on the failure-to-warn theory, however. Foster Wheeler must show that it was complying with "reasonably precise specifications" imposed by the United States in deciding whether to provide a warning. *Butler,* 89 F.3d at 586. Its evidence does not approach that requirement. In the absence of any effort to warn about asbestos, Foster Wheeler cannot rely on the hypothetical assertion that such an effort would have been futile. Foster Wheeler offers no evidence suggesting that its failure to warn should be attributed to the Navy, and identifies no conflicts between its duties under state law and its compliance with Navy specifications. The federal government cannot have exercised its discretion to preclude Foster Wheeler from issuing asbestos warnings if the provision of asbestos warnings was never contemplated or proposed in the first place. Foster Wheeler's defense to the failure-to-warn claims is therefore not "colorable" and not, by itself, a sufficient basis for removal.

*7 Plaintiffs represented that, should the Court find that Foster Wheeler raised a colorable federal defense to the design-defect claims but not to the failure-to-warn claims, they would waive the design-defect claims against Foster Wheeler so that the case can be remanded to state court. The Court concludes that this is the appropriate course of action.[FN3] There is no reason to confer federal jurisdiction over an entire action on the basis of a federal defense to claims that Plaintiffs choose not

to pursue.

> FN3. Since Plaintiffs offered to waive the design-defect claims based on the Court's conclusion that Foster Wheeler had asserted a colorable federal defense, the Court does not need to analyze whether Foster Wheeler also met the other two requirements for removal under section 1442(a)(1) (acting under a federal officer and causal nexus). *Fung v. Abex Corp.,* 816 F.Supp. 569, 571–72 (N.D.Cal.1992).

Plaintiffs' motion to remand is therefore GRANTED. This matter shall be remanded to Alameda County Superior Court, where Plaintiffs shall waive any claims against Foster Wheeler based on a design-defect theory of liability.

**IT IS SO ORDERED.**

N.D.Cal.,2010.
Lindenmayer v. Allied Packing & Supply, Inc.
Not Reported in F.Supp.2d, 2010 WL 234906 (N.D.Cal.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Exhibit I

Westlaw.

Page 1

Not Reported in F.Supp.2d, 2009 WL 2959877 (W.D.Wash.)
(Cite as: 2009 WL 2959877 (W.D.Wash.))

▷
Only the Westlaw citation is currently available.

United States District Court, W.D. Washington,
at Seattle.
Duane PREWETT and Eileen Prewett, husband and
wife, Plaintiffs,
v.
GOULDS PUMPS (IPG), et al., Defendants.

No. C09–0838 RSM.
Sept. 9, 2009.

Jackson Schmidt, Steven T. Johnson, Pepple Johnson Cantu & Schmidt, PLLC, Seattle, WA, for Plaintiffs.

Christine E. Dinsdale, David J. Fisher, Soha & Lang PS, James Edward Horne, Gordon Thomas Honeywell Malanca Peterson & Daheim, Timothy Kost Thorson, Carney Badley Spellman, Christopher S. Marks, Eliot M. Harris, Williams Kastner & Gibbs, Kevin J. Craig, Mark B. Tuvim, Gordon & Rees LLP, Matthew Turetsky, Schwabe Williamson & Wyatt, R. Dirk Bernhardt, Murray Dunham & Murray, Carl Edward Forsberg, Melissa K. Habeck, Forsberg & Umlauf, John D. Wilson, Jr. , John Michael Silk, Richard G. Gawlowski, Wilson Smith Cochran & Dickerson, Katherine M. Steele, Stafford Frey Cooper, G. William Shaw, Michael K. Ryan, K&L Gates LLP, Christopher W. Tompkins, Betts Patterson & Mines, Seattle, WA, for Defendants.

ORDER GRANTING PLAINTIFFS' MOTION TO REMAND
RICARDO S. MARTINEZ, District Judge.

### I. INTRODUCTION

*1 This matter comes before the Court on "Plaintiffs' Motion for Summary Judgment and Remand." (Dkt.# 23). Plaintiffs brought product liability claims in state court arising from their exposure to asbestos related to equipment produced by Defendants. They assert both a claim for design defects and for failure to warn. Defendant Foster Wheeler removed this case to federal court through the federal officer removal statute. 28 U.S.C. § 1442(a)(1). Plaintiff argues that this case should be remanded to state court because Foster Wheeler has failed to provide evidence that it meets the requirements of the statute.

For the reasons set forth below, the Court construes "Plaintiffs' Motion for Summary Judgment and Remand" as a motion to remand and grants the motion, remanding the case to King County Superior Court for further proceedings.

### II. DISCUSSION

#### A. Background

Plaintiff Duane Prewett worked as a boiler maker who installed, maintained, and repaired equipment at numerous work sites from 1964 to 1990. During that employment he was exposed to asbestos contained in a variety of products and equipment. More specifically, Plaintiff was exposed to asbestos contained in equipment manufactured by Defendant Foster Wheeler when he worked at Lockheed Shipyard in Seattle, Washington from 1964–1967 and Todd Shipyard in Seattle, Washington in 1967. In 2008, Plaintiff was diagnosed with lung cancer and pancreatic cancer allegedly caused by his exposure. He filed suit in King County Superior Court against multiple defendants including Foster Wheeler.

Plaintiff's exposure to asbestos in Foster Wheeler's equipment occurred at least in part while he worked as a boiler maker aboard the USS Coronado and the USS Nashville, Navy ships. Foster Wheeler admits that it manufactured the steam generators, including boilers and economizers, aboard those ships, but asserts that the design of that equipment was controlled by the Navy and subject to Navy specifications at all times. Because Foster Wheeler manufactured the equipment in question as a private contractor for the Navy, Foster Wheeler removed the case to

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2959877 (W.D.Wash.)
(Cite as: 2009 WL 2959877 (W.D.Wash.))

federal court based on the federal officer removal statute, which allows for removal when a person acting under a federal officer or agency is sued in state court for actions taken pursuant to a federal duty. *See* 28 U.S.C. § 1442(a)(1); *Mesa v. California,* 489 U.S. 121, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989).

The question before the court is whether removal under 1442(a)(1) was proper in this case.

**B. How to Construe "Plaintiffs' Motion for Summary Judgment and Remand"**

Plaintiffs have moved simultaneously for summary judgment and to remand. They contend that the issues are intertwined because § 1442(a)(1), as interpreted by the Supreme Court, requires that the defendant have a colorable federal defense, *see Mesa,* 489 U.S. 121, 109 S.Ct. 959, 103 L.Ed.2d 99, in this case the government contractor defense. *See Boyle v. United Technologies Corp.,* 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). Plaintiffs' argument at base is that Foster Wheeler has provided no evidence supporting its government contractor defense, and therefore this court should grant summary judgment for Plaintiffs as to that affirmative defense and remand the case to state court because without the defense there is no basis for removal under § 1442(a)(1).

*2 Summary judgment is inappropriate at this stage for two reasons. First, it is axiomatic that a federal court should determine whether it has subject matter jurisdiction before deciding the merits of a case. If this court lacks jurisdiction, it cannot rule on a motion for summary judgment. Secondly, if there is federal subject matter jurisdiction in this case, summary judgment would be improper at this stage because the United States Judicial Panel on Multidistrict Litigation is considering transferring the case to the Eastern District of Pennsylvania, where it will join thousands of other asbestos cases.

Thus, the proper procedure is to first decide whether federal subject matter jurisdiction exists. If it does not, the case should be remanded to state court. If it does, the case should be transferred to the Eastern District of Pennsylvania if the Panel so decides.

**C. § 1442 and the Standard for Removal**

§ 1442, known as the federal officer removal statute, states that a civil action commenced in state court is removable when "any officer (or any person acting under that officer) of the United States or of any agency thereof, [is] sued ... for any act under color of such office." 28 U.S.C. § 1442(a)(1). To remove under this statute, the removing party must (1) demonstrate that it acted under the direction of a federal officer, (2) raise a colorable federal defense, and (3) demonstrate a causal nexus between plaintiffs' claims and the acts it performed under color of federal office. *Mesa,* 489 U.S. 121, 133–34, 109 S.Ct. 959, 103 L.Ed.2d 99; *Fung v. Abex Corp.,* 816 F.Supp. 569, 571–72 (N.D.Cal.1992).

The history of the federal officer removal statute goes back to 1815 when a customs statute included a removal provision in order to provide a federal forum for federal customs officers enforcing a trade embargo with England during the war of 1812. As the trade embargo was extremely unpopular with New England States, the federal officers needed protection from hostile state courts. *Willingham v. Morgan,* 395 U.S. 402, 405, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969). Similar enactments were made to protect federal officers in the 1830s when South Carolina threatened to nullify federal tariff laws by prosecuting the federal agents who collected the tariffs. *Id.* More removal statutes were passed around the time of the civil war and eventually the current provision was passed in 1948 extending the statute to cover all federal officers. *Id.*

The purpose of the federal officer removal statute is to "provide a federal forum for cases where federal officials must raise defenses arising out of their official duties" and "have the validity of the defense of official immunity tried in a federal

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2959877 (W.D.Wash.)
(Cite as: 2009 WL 2959877 (W.D.Wash.))

court." *Id.* at 405, 407. Fundamentally, the statute is based on the notion that the federal government cannot function if its officers can be sued in a (potentially hostile) state court for actions taken pursuant to a federal duty and within the scope of federal authority. *Id.* at 406; *see Tennessee v. Davis,* 100 U.S. 257, 263, 25 L.Ed. 648 (1880) (noting that if a federal officer can be arrested and brought to trial in state court for actions taken within the scope of federal authority, "the general government may at any time be arrested at the will of one of its members").

*3 In light of the statute's long history and crucial purpose, the Supreme Court has repeatedly echoed that "[t]he federal officer removal statute is not 'narrow' or 'limited.' " *Willingham,* 395 U.S. at 406. It has mandated that the statute be "liberally construed to give full effect to the purposes for which [it was] enacted." *Durham v. Lockheed Martin Corp.,* 445 F.3d 1247, 1252 (9th Cir.2006) (quoting *Colorado v. Symes,* 286 U.S. 510, 517, 52 S.Ct. 635, 76 L.Ed. 1253 (1932)). Thus the requirements for removal, including the requirement that the removing party raise a "colorable defense" must not be given a "narrow, grudging interpretation." *Jefferson County v. Acker,* 527 U.S. 423, 431, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999) (quoting *Willingham,* 395 U.S. at 407); *Arizona v. Manypenny,* 451 U.S. 232, 242, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981). The Ninth Circuit has reiterated these principles in the context of a private contractor asbestos case. *Durham,* 445 F.3d at 1252.

Nevertheless, removal is not automatic. At core, "[f]ederal jurisdiction rests on a federal interest in the matter." *Willingham,* 395 U.S. at 406 (internal quotations omitted). It is important to realize that in the cases in which the Supreme Court has encouraged a broad reading of the statute and cautioned against a "narrow, grudging interpretation," there was no question that an important federal interest was at stake since all those cases involved federal officers. *Acker,* 527

U.S. 423, 119 S.Ct. 2069, 144 L.Ed.2d 408 (federal judges); *Manypenny,* 451 U.S. 232, 101 S.Ct. 1657, 68 L.Ed.2d 58 (federal immigration officer); *Willingham,* 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (warden of a federal prison); *Colorado v. Symes,* 286 U.S. 510, 52 S.Ct. 635, 76 L.Ed. 1253 (federal prohibition agent). The situation of a private contractor asserting a government contractor defense is different because the federal interest is not as obvious. *See Holdren v. Buffalo Pumps, Inc.,* 614 F.Supp.2d 129, 140–41 (D.Mass.2009). For there to be a federal interest in a private contractor, product liability case, the government must have been sufficiently involved in the design of the defective feature or defective warnings so it can be said that the contractor is acting "under the color" of his duties as an agent of a federal officer. This is not to say that the removal standard is any greater for private agents of federal officers than it is for true federal officers—it is not. *See Durham,* 445 F.3d at 1253 ("If the federal government can't guarantee its agents access to a federal forum if they are sued or prosecuted, it may have difficulty finding anyone willing to act on its behalf)." But where a private company violates state law at its own discretion rather than at the government's discretion and in accordance with federal duties, it cannot be said that there is a sufficient federal interest to justify a federal forum even using the broadest of interpretations.

**D. Design Defect Claims**

**1. Colorable Defense**

First the court turns to Plaintiffs' design defect claims. Foster Wheeler asserts the government contractor defense as its "colorable defense." The government contractor defense, articulated in *Boyle v. United Technologies Corp.,* immunizes government contractors from liability for state torts where the contractor's contractual duties to the government conflict with its ability to abide by state law. The contractor must show (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2959877 (W.D.Wash.)
**(Cite as: 2009 WL 2959877 (W.D.Wash.))**

specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. *Boyle,* 487 U.S. at 512.

**\*4** The central policy behind the government contractor defense is one of preemption. *Id.* at 504–08. State law is displaced where "a significant conflict exists between an identifiable federal policy or interest and the operation of state law." *Id.* at 507 (internal quotations omitted). Where the United States chooses a design for military equipment, it exercises a discretionary function, balancing "many technical, military, and even social considerations, including specifically the trade-off between greater safety and greater combat effectiveness." *Id.* at 511. When a conflict arises between a private contractor's duties under state law and its adherence to government specifications determined through the exercise of its discretionary function, it will not do to allow "second-guessing" through tort suits against the contractor. *Id.*

The first two *Boyle* requirements, that the government approve reasonably precise specifications and that the equipment conform to those specifications, are designed to assure that the defense is only available when the United States is exercising its discretionary function. As the Supreme Court put it, "they assure that the design feature in question was considered by a Government officer, and not merely by the contractor itself." *Id.* at 512. Only where the United States exercises a discretionary function can there be a conflict between a federal interest, the Navy's interest in having the design it wants, and state law. The Ninth Circuit cogently summarized the government contractor defense:

[S]tripped to its essentials, the military contractor's defense under *Boyle* is to claim 'The Government made me do it.' *Boyle* displaces state law only when the Government, making a discretionary, safety-related military procurement decision contrary to the requirements of state law, incorporates this decision into a military

contractor's contractual obligations, thereby limiting the contractor's ability to accommodate safety in a different fashion.

*In re Hawaii Fed. Asbestos Cases,* 960 F.3d 806, 813 (9th Cir.1992) (quoting *In re Joint E. and S. Dist. N.Y. Asbestos Litigation,* 897 F.2d 626, 632 (2nd Cir.1990)).

Here, Plaintiff first argues that the government contractor defense is inapplicable because Foster Wheeler sold asbestos-containing equipment for commercial vessels that was similar to the equipment it manufactured for the Navy. Where the government merely buys "stock" products, or products that are identical in both the military and non-military context, the government is not making a discretionary decision and thus the government contractor defense is inapplicable. *Boyle,* 487 U.S. at 509; *Hawaii,* 960 F.2d at 811. However, in this case at the remand stage, evidence that Foster Wheeler may have sold some boiler equipment commercially is not enough to show that the Navy was merely buying "stock" boilers and exercising no discretion. *Cf. Hawaii,* 960 F.2d at 812 (defendant could not use military contractor defense where it primarily manufactured asbestos insulation for private industry and sold "very, very, little" to the Navy who merely bought the identical product sold to private parties).

**\*5** Plaintiff next argues that to prove "the Government made me do it" in an asbestos case, a contractor must show that the government specifically required the contractor to use asbestos in its products. As authority, Plaintiff cites to *Hawaii* which states that "[i]f the defendants could demonstrate ... that the Government's specifications required asbestos in their products, and not just a certain level of performance, the military contractor defense might be available." *Hawaii,* 960 F.3d at 813. Certainly one way to show "reasonably precise specifications" is to prove that the United States required the defect, in this case asbestos, but it is not the only way. The key is that the government must make a discretionary decision to incorporate a

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

Not Reported in F.Supp.2d, 2009 WL 2959877 (W.D.Wash.)
**(Cite as: 2009 WL 2959877 (W.D.Wash.))**

specific design that is in conflict with state law. *Id.* Therefore, proof that the government was involved in the decision to use asbestos or proof that the government and the contractor engaged in a "continuous back and forth" review process regarding the defective feature will also suffice. *Oliver v. Oshkosh Truck Corp.,* 96 F.3d 992, 998 (7th Cir.1996); *Tate v. Boeing Helicopters,* 55 F.3d 1150, 1154 (6th Cir.1995); *see also Kerstetter v. Pac. Scientific Co.,* 210 F.3d 431, 438 (5th Cir.2000) ("reasonably precise" standard is satisfied as long as the specifications address, in reasonable detail, the product design feature, alleged to be defective). On the other hand, mere approval or "rubber stamping" of a defective design is not enough. *Butler v. Ingalls Shipbuilding, Inc.,* 89 F.3d 582, 585 (9th Cir.1996). "When the government merely accepts, without any substantive review or evaluation, decisions made by a government contractor, then the contractor, not the government, is exercising discretion." *Id.* (quoting *Trevino v. General Dynamics Corp.,* 865 F.2d 1474 (5th Cir.), *cert. denied,* 493 U.S. 935, 110 S.Ct. 327, 107 L.Ed.2d 317 (1989). Additionally, mere performance standards, as opposed to design specifications, do not constitute "reasonably precise specifications." *Hawaii,* 960 F.2d at 813 (specifications must require more than "just a certain level of performance"). Compliance with performance standards is not necessarily incompatible with state law, thus there is no conflict between state products liability and a contractor's duties under its government contract and no displacement of state law.

If, for example, the United States contracts for the purchase and installation of an air conditioning-unit, specifying the cooling capacity but not the precise manner of construction, a state law imposing upon the manufacturer of such units a duty of care to include a certain safety feature would not be a duty identical to anything promised the Government, but neither would it be contrary. The contractor could comply with both its contractual obligations and the state-

prescribed duty of care. No one suggests that state law would generally be pre-empted in this context.

*6 *Boyle* 487 U.S. at 509.

In its attempt to prove that the government approved reasonably precise specifications, Foster Wheeler submits the affidavit of Mr. Schroppe, a former president of Foster Wheeler Boiler Corporation who holds a degree in Marine Engineering and worked for Foster Wheeler for 37 years. He states that Foster Wheeler prepared design drawings for its equipment conforming to specifications set forth in "Ship Specs" and "Mil Specs," and the Navy approved these designs. However, there is no indication in the affidavit, nor has Foster Wheeler provided any documents asserting that these specifications required the use of asbestos. Nor is there evidence that the Navy substantively considered the use of asbestos and made a discretionary decision to approve it, putting contractual requirements in conflict with state law. Instead, Mr. Schroppe's affidavit merely states that Foster Wheeler was required to design its boilers and components in accordance with rigid performance requirements and that the equipment was subject to rigorous testing to ensure it met those requirements. Because Foster Wheeler has provided no evidence that compliance with the Navy's performance standards would necessarily conflict with its duty to make safe products, *Boyle'*s requirements are not met. As with the air-conditioner referenced in *Boyle,* state law is not preempted.

Foster Wheeler also submits the affidavit of Admiral Lehman, who has an extensive engineering background and experience. He states that he served as a Ship Superintendent and Dry Docking Officer at the Brooklyn Navy Yard from 1942 to 1944 and as Ship Superintendent at the San Francisco Naval Shipyard from 1950 to 1952. According to the Admiral, based on his service in the Navy and "close contact" with the Navy during his periods of private employment, he is familiar

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2959877 (W.D.Wash.)
**(Cite as: 2009 WL 2959877 (W.D.Wash.))**

with U.S. Navy specifications. He states that "[t]he U.S. Navy had complete control over every aspect of every piece of equipment. Military specifications governed every significant characteristic of the equipment used on U.S. Navy ships, including the instructions and warnings." In addition, "The Navy retained the 'final say' over the design of any piece of equipment, and made the ultimate decisions, whether engineering or contractual." These statements are too vague to amount to a showing of reasonably precise specifications. That the Navy had the "final say" over its equipment does not indicate anything beyond mere rubber stamping. In the absence of any documents showing that the Navy specified the *design* not merely the *performance* of the defective feature, or any specific testimony to that effect by people with specific knowledge, Foster Wheeler cannot say that the "government made me do it."

At the removal stage, the federal defense need only be "colorable." *Mesa,* 489 U.S. 121, 109 S.Ct. 959, 103 L.Ed.2d 99. The defendant is not required to "win his case before he can have it removed." *Acker,* 527 U.S. at 431 (quoting *Willingham,* 395 U.S. at 407). But a defendant must put forward some evidence that the government had reasonably precise specifications creating a conflict between state law duties and contractual obligations. Evidence showing performance requirements, design requirements as to features other than the asbestos insulation, or general Navy control is not helpful where there is no evidence demonstrating a difficulty complying with Navy specifications and state products liability law at the same time. "Reasonably precise" is not based on the "sheer number of specifications," but whether the specifications demonstrate a discretionary decision conflicting with state law. *Holdren,* 614 F.Supp.2d at 142–43. Since no evidence demonstrating a conflict was put forth in this case, Foster Wheeler's government contractor defense is not "colorable."

**2. Causal Nexus**
*7 For removal there must also be a causal

nexus between the plaintiff's claims and the acts the defendant performed under color of office. *Fung,* 816 F.Supp. 569 at 571–72 (citing *Mesa,* 489 U.S. at 124–25). In a government contractor case, however, this requirement is essentially the same as the colorable defense requirement. The defendant must show that the Government made a discretionary decision regarding product design that conflicted with state law, therefore *causing* the defendant to violate state law. For the same reasons that there is no colorable federal defense, there is also no causal nexus in this case.

**E. Failure to Warn Claims**
To assert the government contractor defense to a failure to warn claim, the defendant must show (1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; and (3) the contractor warned the government about the dangers in the equipment's use that were known to the contractor but not to the government. *Oshkosh,* 96 F.3d at 1003–1004. These elements are simply the *Boyle* elements made applicable to warnings. As with design defect claims, the underlying crux of the defense is that the government must make a discretionary decision as to product warnings that significantly interferes with the contractor's ability to abide by state law, thus creating a conflict between a federal interest and a state law duty. *See Boyle,* 487 U.S. at 511–12. To meet this standard, a contractor can show that the government prohibited warnings in general, that it prohibited warnings as to the specific feature in question, that it dictated specific warnings, that there was a "back and forth" discussion between the contractor and the government with respect to the warnings, or make some other showing that the government made a discretionary decision that preempted state law. *Oshkosh,* 96 F.3d at 1003–1004 (noting that the government need not dictate or prohibit warnings to satisfy *Boyle,* but the government's involvement must go beyond "rubber stamping"); *Tate,* 55 F.3d at 1157 ("Government discretion is required, not dictation or prohibition

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 7

Not Reported in F.Supp.2d, 2009 WL 2959877 (W.D.Wash.)
**(Cite as: 2009 WL 2959877 (W.D.Wash.))**

of warnings."); *See N.Y. Asbestos Litigation,* 897 F.2d at 630 ("The contractor must show that whatever warnings accompanied a product resulted from a determination of a government official.").

Foster Wheeler has provided no evidence that it ever attempted to warn, or that the Navy prohibited warnings. Instead, the affidavits merely show that the Navy "would not have allowed its equipment suppliers, such as Foster Wheeler, to affix any warning related to any asbestos hazards on their equipment." (Lehman Affidavit P 14). Statements to this effect are merely hypothetical in the absence of evidence that Foster Wheeler attempted to warn. The question is not what the Navy *would have* done if a contractor suggested warnings, but whether the Navy actually exercised its discretion in approving proposed warnings that conflicted with state law. *Tate,* 55 F.3d at 1157; *Hawaii* 960 F.2d at 812. Because Foster Wheeler did not suggest warnings to the government, it is impossible that "the design feature in question," in this case the warnings, "was considered by a government officer, and not merely by the contractor itself." *Boyle,* 487 U.S. at 512. Thus, Foster Wheeler's government contractor defense is not "colorable." Similarly, there is no "causal nexus" because Foster Wheeler was not acting under color of any federal duty when it failed to provide warnings. In short, the government was not sufficiently involved in the decision not to warn to have a "federal interest in the matter" needed to justify a federal forum. *Willingham,* 395 U.S. at 406.

### III. CONCLUSION
*8 Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Plaintiff's Motion to Remand (Dkt.# 23) is GRANTED.

(2) This case is remanded to King County Superior Court for further proceedings.

(3) The Clerk is directed to forward a copy of this Order to all counsel of record.

W.D.Wash.,2009.
Prewett v. Goulds Pumps (IPG)
Not Reported in F.Supp.2d, 2009 WL 2959877 (W.D.Wash.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Exhibit J

Westlaw.

Page 1

Not Reported in F.Supp.2d, 2005 WL 2850334 (W.D.Wash.)
**(Cite as: 2005 WL 2850334 (W.D.Wash.))**

▷
Only the Westlaw citation is currently available.

United States District Court,
W.D. Washington.
Marian WESTMILLER, for herself and as Personal
Representative for the Estate of Lloyd Westmiller,
Deceased. Plaintiff,
v.
IMO INDUSTRIES, INC., et al., Defendants.

No. C05-945RSM.
Oct. 20, 2005.

Janet L. Rice, Kristin M. Houser, Schroeter
Goldmark & Bender, Seattle, WA, for Plaintiff.

James Edward Horne, Robert H. Fulton, II,
Kingman Peabody Pierson & Fitzharris, Christine
E. Dinsdale, Michael Ryan O'Clair, Soha & Lang
PS, Kevin C. Baumgardner, Mark B. Tuvim, Corr
Cronin Michelson Baumgardner & Preece, Ronald
C. Gardner, Gardner Bond Trabolsi McDonald &
Clement, Seattle, WA, for Defendants.

ORDER ON MOTION FOR REMAND
MARTINEZ, J.
*1 This matter has come before the Court for
consideration of plaintiff's motion to remand,
together with a motion to strike. Oral argument was
held on October 17, 2005, and the parties'
arguments, together with the submitted exhibits and
declarations, have been fully considered. For the
reasons set forth below, the Court grants the motion
to remand, grants the motion to strike, and remands
the case to King County Superior Court for all
further proceedings.

DISCUSSION
Plaintiff Marian Westmiller filed this action in
King County Superior Court on behalf of herself
and as personal representative of the estate of her
husband. Lloyd Westmiller, who died of lung
cancer related to asbestos exposure. Mr. Westmiller

worked as a pipefitter at Puget Sound Naval
Shipyard in the 1950's. The case was removed to
this Court by one defendant, Viad Corporation
("Viad"), FN1 under the federal officer removal
statute, 28 U.S.C. § 1442(a). The statute provides
for removal by "[t]he United States or any agency
thereof or an officer (or any person acting under
that officer) of the United States or of any agency
thereof, sued in an official or individual capacity
for any act under color of such office." § 1442(a)(1)
. This statute, unlike the general removal statute,
does not require joinder of all defendants. *Ely
Valley Mines v. Hartford Acc. & Indemnity Co.,*
644 F.2d 1310, 1315 (9th Cir.1981).

> FN1. Viad is the successor-in-interest to
> Griscom-Russell. who actually
> manufactured the distillers (desalinization
> units) used on the Navy vessels; these
> distillers were insulated with asbestos
> when installed on the ships.

Plaintiff has moved for remand to state court,
and also to strike the affidavit of defendant's expert.
Dr. Charles Cushing. The motions shall be
addressed separately.

1. *Motion to Strike.*
Plaintiff in this action is proceeding on a
"failure to warn" theory of liability, under
Washington State law. In removing the case to this
Court, defendant Viad offered the Declaration of
Charles Cushing, a naval architect and marine
engineer, as support. After noting that Viad is
named as the successor-in-interest to Griscom-
Russell Company, now defunct, Dr. Cushing states,

The United States Navy was intimately
involved in the manufacture of any Griscom-
Russell equipment used on United States Navy
vessels, as the desalination units manufactured for
those vessels were designed and built to the precise
and exacting specifications of the United States
Navy. Griscom-Russell would not have been able to

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2850334 (W.D.Wash.)
**(Cite as: 2005 WL 2850334 (W.D.Wash.))**

deviate from those specifications. Moreover, pursuant to the Navy's specifications, Griscom-Russell would not have been able to affix, to its products, any type of warning or cautionary statement concerning alleged health hazards from the installation, use or maintenance of the products. Whether certain equipment used aboard U.S. Naval vessels should have warnings, and the content and format of any such warnings, was determined solely by the Navy. Griscom Russell could have had no discretion whatsoever to affix any warnings of its own to the products it delivered to the Navy.

Cushing Declaration, ¶ 4. Plaintiff moved to strike this paragraph, as well as a second ¶ 4 and a portion of ¶ 5. pursuant to Federal Rule of Evidence 1002, the "best evidence" rule. Plaintiff argues that. absent certain conditions set forth in ER 1004 (which have not been alleged here), Dr. Cushing's references to specifications are inadmissible under the best evidence rule and should be stricken. The Court agrees. Although defendant in response attempted to rehabilitate Dr. Cushing's testimony about the specifications by providing selected pages from his deposition, the submitted sections fail to cure the problem. Absent the actual specifications, Dr. Cushing's conclusory statements about what the specifications would have stated amount to mere speculation and are not admissible. Accordingly, plaintiff's motion to strike is GRANTED.

### 2. *Motion for Remand.*

*\*2* Unlike the general removal statute, which requires that the basis of removal appear on the face of the complaint, the federal officer removal statute allows removal on the basis of an asserted defense. Under 28 U.S.C. § 1442(a)(1), removal is proper if the defendant can (1) demonstrate that it acted under the direction of a federal officer; (2) raise a colorable federal defense to the plaintiff's claims; and (3) demonstrate a causal nexus between plaintiff's claims and the acts the defendant performed under color of federal office. *Mesa v. California,* 489 U.S. 121, 129-34, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989). The burden is on defendant

to establish that removal is proper. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566-67 (9th Cir.1992). The removal statute is strictly construed against removal. *Id.*

The parameters of the federal defense in factor (2) were set forth in *Boyle v. United Technologies Corp.,* 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). "Liability for design defects in military equipment cannot be imposed. pursuant to state law. when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Id.* at 512.

In the area of product liability, government contractor immunity requires a company to show "strong government intervention and the threat that a defendant will be sued in state court 'based upon actions taken pursuant to federal direction.'" *Fung v. Abex Corporation,* 816 F.Supp. 569, 572 (N.D.Cal.1992). Here, a defense to plaintiff's asserted failure to warn claim requires a showing by defendant that the government specifically prohibited it from placing warnings on its products. The government contractor defense is inapplicable to a failure to warn claim "in the absence of evidence that in making its decision whether to provide a warning ... [Viad] was 'acting in compliance with "reasonably precise specifications" imposed on [it] by the United States.'" *Butler v. Ingalls Shipbuilding, Inc.,* 89 F.3d 582, 586 (9 th Cir.1996); *quoting In re Hawaii Federal Asbestos Cases.* 960 F.2d 806, 813 (9th Cir.1992).

Thus, in this circuit, the government contractor defense applies to displace state tort law only "when the Government, making a discretionary, safety-related military procurement decision contrary to the requirements of state law, incorporates this decision into a military contractor's contractual obligations, thereby limiting the contractor's ability to accommodate

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 3

Not Reported in F.Supp.2d, 2005 WL 2850334 (W.D.Wash.)
**(Cite as: 2005 WL 2850334 (W.D.Wash.))**

safety in a different fashion." *In re Hawaii Federal Asbestos Cases,* 960 F.2d at 813. In other words. " '[s]tripped to its essentials, the military contractor's defense under *Boyle* is to claim. 'The Government made me do it." ' *Id.*

In responding to the motion to remand, Viad has submitted the affidavit of Admiral Lehman as a substitute for the challenged Charles Cushing declaration. Admiral Lehman's affidavit is not specific to this case; it was presented to a New York District Court in *Neshiet v. General Electric, et al.* 2005 WL 697966 (S.D.N.Y.2005). Although the New York district court found the affidavit sufficient to establish Navy control over warnings placed on asbestos-insulated steam turbines used on ships during World War II, this Court is not bound to follow that unreported decision. Mr. Westmiller worked in the shipyard during the 1950's, and Admiral Lehman's affidavit does not relate to that time period with sufficient specificity to establish a colorable defense. He states that he was Ship Superintendent in the Brooklyn Navy Yard between 1942 and 1944, and that during his tenure there, he was involved in the oversight of ship alterations. He describes the very tight controls the Navy maintained over everything *at that time.* Then, he states that "[i]n the 1940's and afterward, the Navy had complete control over every aspect of each piece of equipment.... [T]he Navy controlled the decision making with respect to instructions and warnings on every piece of equipment ... In short, the Navy dictated every aspect of the design, manufacture, installation, overhaul, written documentation and warnings associated with its ships and did not permit deviation from any of its contractors." Lehman Affidavit, ¶ 4. This statement, in the absence of any specific reference to the Admiral's experience or knowledge during the 1950's, is too vague to constitute a showing of "reasonably precise specifications" that were imposed during the relevant time period. *Butler v. Ingalls Shipbuilding, Inc.,* 89 F.3d at 586. In the absence of this demonstration that, in the words of the *Hawaii* Federal Asbestos *Cases court,* that "the

Government made me do it," Viad has not met the burden of showing a colorable defense.

**\*3** While Viad admits that it has no specific evidence of Navy control in the form of the actual military specifications, it nevertheless argues that at this stage of litigation, before discovery, it should not be forced to come forward with such evidence. While it is true that *Mesa* requires only a "colorable" federal defense, Viad has not produced any evidence that would meet even that minimum standard. To the extent that, as to the affidavit of Admiral Lehman, the New York district court in *Nesbiet* found otherwise, this Court respectfully disagrees.[FN2]

> FN2. Were this Court to look to unreported cases for guidance, it would look to the decisions of district courts in this circuit, including this Court. *See, Schilz v. A.P. Green Industries, Inc.,* 2002 WL 102608 (N.D.Cal.) (no colorable federal defense); *Westbrook v. Asbestos Defendants,* 2001 WL 902642 (N.D.Cal.) (no colorable federal defense); *Nguyen v. Allied Signal,* 1998 WL 690854 (N.D.Cal.) (no colorable federal defense); *Ireton v. Kaiser Ventures, LLC,* C03-2840RBL (finding a colorable defense but no causal nexus); *Zink v. Rapid-American Corporation, et al.,* C99-964RSL (failure to establish a colorable defense), and others cited by plaintiff (Declaration of Melissa Mather, Exhibits J.M.N. O.)

As Viad has failed to submit evidence that it was subject to reasonably precise specifications with respect to warnings during the relevant time period, it has not established a colorable federal defense. Viad has therefore failed to meet the burden of establishing that removal was proper. Accordingly, plaintiff's motion for remand is GRANTED.

This case is hereby REMANDED to the King County Superior Court, Cause No. 05-2-13717-7

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

Not Reported in F.Supp.2d, 2005 WL 2850334 (W.D.Wash.)
**(Cite as: 2005 WL 2850334 (W.D.Wash.))**

SEA. The Clerk shall close this file and send a certified copy of this Order to the Clerk of Court for the King County Superior Court.

W.D.Wash.,2005.
Westmiller v. Imo Industries, Inc.
Not Reported in F.Supp.2d, 2005 WL 2850334 (W.D.Wash.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Exhibit K

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ALAN MCMANN and DONNA MCMANN,

Plaintiffs,

v.

AIR & LIQUID SYSTEMS CORPORATION, et al.,

Defendants.

CASE NO. C13-5721 BHS

ORDER GRANTING MOTION TO REMAND

This matter comes before the Court on Plaintiffs Alan and Donna McMann's ("McManns") motion to remand (Dkt. 46). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On July 16, 2013, the McManns filed a complaint against numerous defendants, including Crane Co. ("Crane"), in Pierce County Superior Court for the State of Washington.  Dkt. 1, Exh. 1 ("Comp").

ORDER - 1

On August 21, 2013, Crane removed the matter to this Court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Dkt. 1, ¶ 6.

On September 6, 2013, the McManns filed a motion to remand. Dkt. 46. On September 23, 2013, Crane responded. Dkt. 50. On September 27, 2013, the McManns replied. Dkt. 51.

## II. FACTUAL BACKGROUND

The McManns allege that Mr. McMann developed mesothelioma by exposure to Crane's as well as other defendants' products that contained asbestos. Comp. at 2–3. In the instant motion, the McManns assert that the "*only* claims . . . maintained regarding naval asbestos products that Mr. McMann was exposed to relate to [Crane's] *failure to warn* about the hazards of asbestos." Dkt. 46 at 6 (emphasis in original).

Crane removed this matter on the basis of a federal officer defense. With regard to the failure to warn claim, Crane contends that

> Given the proof of significant Navy control over the warnings in conjunction with the Navy's significant knowledge of asbestos hazards, Crane Co. has established a colorable government contractor defense to [the McManns'] failure-to-warn and design-defect claims.

Dkt. 1, ¶ 13. Crane submitted two declarations in support of its assertion of "proof of significant Navy control." The first declaration is from Rear Admiral David Sargent, Jr. Dkt. 3. Although Mr. Sargnet provides extensive and detailed knowledge of Navy construction and procedures, he fails to identify any specific facts as to Navy specifications or warnings as to Crane's products that Mr. McMann may have been exposed to during his Navy service.

ORDER - 2

The other declaration is from Dr. Samuel Forman. Dkt. 5. Dr. Forman declares that he was selected to "become part of a team to locate, digest and organize government documents for production in asbestos litigation." *Id.* ¶ 9. Although he has extensive knowledge of such documents, he fails to cite any specific document relating to Mr. McMann's allegations.

### III. DISCUSSION

Crane bears the burden of establishing that removal is proper. *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992). A party removing under 28 U.S.C. § 1442(a)(1) must show that (1) it is a "person" within the meaning of the statute, (2) there is a "causal nexus" between its actions, taken pursuant to a federal officer's directions, and plaintiffs' claims, and (3) it can assert a colorable federal defense. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006).

In this case, the McManns argue that Crane has failed to meet its burden on the second and third elements of the federal officer removal criteria. With regard to a colorable federal defense, Crane assets the "government contractor defense" because the Navy's procurement of military equipment preempts the McManns' failure to warn claims. Under this theory, the Supreme Court set forth a three-part test wherein the contractor must establish that

> (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

ORDER - 3

*Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988). Crane fails to meet its burden on each element of this test because its evidence is entirely speculative. Crane has not submitted a reasonably precise specification as to its relevant products. Crane has not submitted any evidence of conformity. Most importantly, Crane has failed to submit any evidence that it warned the Navy about the dangers of asbestos. While the Court agrees with Crane that it is not obligated to prove its case at this stage of the proceeding, Crane must produce more than speculation and hypothetical interactions. Based on Crane's submissions, the most that can be shown is that its contract with the Navy subjected it to precise specifications and, if it had warned the Navy, the Navy would have rejected that warning. The Court finds that such a showing fails to establish a colorable federal defense.

With regard to the causal nexus element, Crane fails to meet its burden on this element as well. As one court stated, a "contract with the government is not a one-way ticket to federal court." *Early v. Northrop Grumman Corp.*, 2013 WL 3872218, *6 (C.D. Cal. 2013). Because Crane has failed to allege any actual interaction regarding any actual product that Mr. McMann would have actually been exposed to during his service aboard the USS Firedrake from 1961–1965, Crane has failed to show any nexus, let alone a causal nexus. Therefore, the Court concludes that Crane failed to show that it is entitled to removal pursuant to 28 U.S.C. § 1442(a)(1).

ORDER - 4

## IV. ORDER

Therefore, it is hereby **ORDERED** that the McManns' motion to remand (Dkt. 46) is **GRANTED**.

Dated this 22nd day of October, 2013.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 5

Exhibit L

Westlaw.

Not Reported in F.Supp.2d, 2013 WL 3872218 (C.D.Cal.)
**(Cite as: 2013 WL 3872218 (C.D.Cal.))**

**C**
Only the Westlaw citation is currently available.

United States District Court,
C.D. California.
Steven EARLY and Melanie Early, Plaintiffs,
v.
NORTHROP GRUMMAN CORP., et al.,
Defendants.

No. 2:13–cv–3130–ODW(MRWx).
July 24, 2013.

N. Denise Asher, Asher Law Office, Richard A. Huver, The Huver Law Firm, San Diego, CA, for Plaintiffs.

Avril G. Love, Tucker Ellis & West LLP, Los Angeles, CA, Daniel J. Kelly, Tucker Ellis LLP, San Francisco, CA, Michael Edward De Coster, Thomas Michael Peabody, Carroll Kelly Trotter Franzen and McKenna, Long Beach, CA, Brian Harold Clausen, Margaret A. Trueman, Bertling and Clausen LLP, Santa Barbara, CA, James C. Schaeffer, Boyce Schaeffer LLP, Oxnard, CA, Andrew W. Salmond, John E. West, Brobeck West Borges Rosa and Douville LLP, Newport Beach, CA, for Defendants.

**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND [10]**
OTIS D. WRIGHT, II, District Judge.
**I. INTRODUCTION**
*1 Plaintiffs Steven and Melanie Early originally filed their Complaint in Los Angeles County Superior Court asserting negligence and premises-liability claims against Northrop Grumman Corp., and negligence claims against numerous medical providers. The Complaint raises no question of federal law nor alleges diversity of citizenship between the Earlys and Defendants. Nonetheless, Northrop removed the case to this Court on grounds that (1) the medical providers are "fraudulently misjoined" and should therefore be excluded for the purposes of determining diversity, and (2) federal-officer removal is proper under 28 U.S.C. § 1442. (Not. of Removal ¶¶ 13–36.)

The Earlys filed a Motion to Remand contesting both arguments. (ECF No. 10.) Because the Court declines to adopt the doctrine of "fraudulent misjoinder" and finds that Northrop has failed to satisfy the elements for federal-officer jurisdiction, the Court **GRANTS** Earlys' Motion to Remand.[FN1]

> FN1. Having carefully considered the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed.R.Civ.P. 78; L.R. 7–15.

**II. BACKGROUND**
In February 2012, Steven Early worked as a civilian subcontractor for Northrop when the GEM utility truck he was driving struck a metal grate on a dirt roadway at Edwards Air Force Base. (Compl. 7; Mot. 1; Opp'n 1.) Early was ejected from the vehicle and suffered severe neck injuries. (Mot.1.) He brought suit in state court alleging that Northrop negligently maintained the dirt road and the GEM utility truck. (Id. at 7.) In addition, Early asserted negligence claims against the medical providers who treated his injuries. (Id. at 10.) Melanie Early alleged loss of consortium. (Id. at 11.)

Northrop filed a Notice of Removal based on diversity jurisdiction and federalofficer jurisdiction. Early now moves to remand the case to state court for lack of subject-matter jurisdiction.

**III. LEGAL STANDARD**
If an action before a state court could originally have been brought before a federal court, the defendants in the action may remove to a federal court in the same district. 28 U.S.C. § 1441(a). Generally, the removal statute is strictly construed against removal, and the party seeking removal

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 3872218 (C.D.Cal.)
**(Cite as: 2013 WL 3872218 (C.D.Cal.))**

bears the burden of establishing federal jurisdiction. *Durham v. Lockheed Martin Corp.,* 445 F.3d 1247, 1252 (9th Cir.2006). A party may bring a motion for remand whenever it appears a matter is not properly before a federal court. *See* 28 U.S.C. § 1447(c).

## IV. DISCUSSION

Northrop proffers two arguments in support of federal jurisdiction. First, it asks the Court to adopt the doctrine of "fraudulant misjoinder" and disregard the citizenship of the non-diverse medical providers. (Opp'n 3–5.) Second, Northrop asserts that it was acting under the direction of a federal officer and may therefore remove this case under 28 U.S.C. § 1442. (*Id.* at 6–12.) The Court addresses each argument in turn.

### A. Diversity jurisdiction is lacking

It is undisputed that diversity does not exist on the face of the Complaint, as both Plaintiffs and the medical providers are California citizens. (Not. of Removal ¶ 14.) Under § 1441(b), an action may not be removed if any of the properly joined and served defendants is a citizen of the State in which such action is brought. 28 U.S.C. § 1441(b). When a matter is removed on diversity grounds, complete diversity "must exist at the time the action is removed to federal court." *Miller v. Grgurich,* 763 F.2d 372, 373 (9th Cir.1985).

**\*2** In an effort to find diversity where none exists, Northrop argues that the medical defendants should be ignored because they were procedurally misjoined. (Opp'n 3.) While fraudulent joinder is a well-established exception to the complete-diversity rule, the doctrine of procedural or fraudulent misjoinder is a recent and unwarranted expansion of jurisdiction, one which the Court is not inclined to adopt.

Under the fraudulentjoinder doctrine, a defendant's presence in a lawsuit may be ignored for the purposes of determining diversity if the court finds that the plaintiff either fails to state a claim against that defendant or fraudulently states

jurisdictional facts. *Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067 (9th Cir.2001); *Green v. Amerada Hess Corp.,* 707 F.2d 201, 205 (5th Cir.1983). Northrop does not argue fraudulent joinder, nor does fraudulent joinder appear to be at issue. Instead, Northop argues that there is fraudulent *misjoinder.*

Fraudulent misjoinder is a considerably broader and more nebulous exception to the complete-diversity rule. First articulated by the Eleventh Circuit in *Tapscott v. MS Dealer Serv. Corp.,* fraudulent misjoinder purportedly occurs when a plaintiff asserts viable claims against both diverse and non-diverse defendants, but there is "no real connection" between the two sets of transactions such that joinder is so "egregious as to constitute fraudulent joinder." 77 F.3d 1353, 1360 (11th Cir.1996). The Eleventh Circuit did not articulate the point at which joinder becomes "egregious" other than to say that "mere misjoinder is [not] fraudulent joinder." *Id.* at 1360.

Contrary to Northrop's assertion, fraudulent misjoinder has received a tepid response outside of the Eleventh Circuit. Although the Fifth Circuit has discussed the doctrine approvingly, the Ninth Circuit and most other circuits have not adopted the doctrine. *Palmer v. Davol, Inc.,* Nos. 07–md–1842–ML, 08–cv–02499–ML, 2008 WL 5377991, at *2 (D.R.I. Dec.23, 2008) (collecting cases); *Cal. Dump Truck Owners Ass'n v. Cummins Engine Co.,* 24 F. App'x 727, 729 (9th Cir.2001). District courts in the Ninth Circuit have gone further by rejecting the doctrine outright. *See, e.g., Osborn v. Metropolitan Life Ins. Co.,* 341 F.Supp.2d 1123, 1127–28 (E.D.Cal.2004); *HVAC Sales, Inc. v. Zurich Am. Ins. Grp.,* No. C–04–03615 RMW, 2005 WL 2216950, at *5–6 (N.D.Cal. July 25, 2005).

The Court declines to adopt fraudulent misjoinder here. In short, the doctrine raises more questions than answers. Even within the Eleventh Circuit it is unclear when "mere misjoinder" becomes so "egregious" to constitute fraudulent

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 3872218 (C.D.Cal.)
**(Cite as: 2013 WL 3872218 (C.D.Cal.))**

misjoinder. *See Osborn,* 341 F.Supp.2d at 1127. And some courts don't require the joinder to be egregious at all. *Greene v. Wyeth,* 344 F.Supp.2d 674, 685 (D.Nev.2004). Likewise, courts disagree about whether state or federal law should apply in determining the propriety of joinder. *Osborn,* 341 F.Supp.2d at 1128.

**\*3** Judicial prudence also cautions against adopting an additional exception to the complete-diversity rule. It is axiomatic that removal under § 1441 should be narrowly construed and that any doubts are resolved in favor of remand. *Durham,* 445 F.3d at 1252. Fraudulent misjoinder flips this maxim on its head by making cases removable that by § 1441's plain terms should not be, effectively increasing the jurisdiction of federal courts beyond what the rules envision. Absent Congress amending the rules or a contrary interpretation by the Supreme Court or Ninth Circuit, this Court is not compelled to adopt the doctrine of fraudulent misjoinder.

Although the Court declines to adopt fraudulent misjoinder, it would not be helpful to Northrop even if it applied. Under federal law, defendants may be joined if the claims against them arise out of the same transaction, occurrence, or series of transactions or occurrences, and share any common question of law or fact. Fed.R.Civ.P. 20. The Ninth Circuit construes Rule 20 liberally to promote trial efficiency and prevent duplicative litigation. *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency,* 558 F.2d 914, 917 (9th Cir.1977). Indeed, Rule 21 allows even a court to sua sponte join an appropriate party. Fed.R.Civ.P. 21. California's joinder statute largely parallels Rule 20 but with a key departure—a plaintiff may join defendants even where the plaintiff is in doubt as to which defendant caused her injuries. Cal.Civ.Proc.Code § 379(c).

Under either federal or state law, the Court finds that the medical-provider Defendants are properly joined. Steven Early suffered serious injuries that are the subject matter of this suit.

(Compl.7.) He asserts that Northrop and the medical providers are liable for injuries he suffered during the initial accident and subsequent treatment. (*Id.* at 7, 10.) Not only do Early's injuries arise out of the same incident, but the cause (and therefore liability) of his injuries cannot be determined without the presence of both Northrop and the medical providers.

Moreover, most courts that have applied the fraudulent misjoinder doctrine hold that state joinder law should govern, for the simple reason that the plaintiff brings suit in state court and the question is whether defendants were misjoined in the first place. *Fed. Ins. Co. v. Tyco Int'l Ltd.,* 422 F.Supp.2d 357, 381 (S.D.N.Y.2006) (collecting cases). Northrop does not argue otherwise, but instead incorrectly states that California's joinder statute matches federal standards. (Opp'n 5.) Not so. California's joinder law is considerably broader, expressly authorizing joinder in situations like the one here where a plaintiff alleges injury by successive tortfeasors. *See Landau v. Salam,* 4 Cal.3d 901, 906–07, 95 Cal.Rptr. 46, 484 P.2d 1390 (1971) (upholding joinder under section 379(c) where plaintiff alleged "(1) an injury, (2) negligence by successive tortfeasors, and (3) doubt as to which is liable").

**\*4** It is hard to imagine a case that better reflects the twin purposes of joinder—trial efficiency and ensuring that the same issues aren't litigated more than once. Additionally, severing Northrop and the medical providers could result in inconsistent verdicts, such as both being separately found liable for all of Early's injuries. In sum, the Court declines to manufacture diversity jurisdiction where there is none.

**B. Northrop fails to satisfy the elements required for federal-officer removal**
As discussed above, removal under § 1441 is strictly construed with any doubts regarding the right to removal resolved in favor of remand. *Durham,* 445 F.3d at 1252. In contrast, federal-officer removal under § 1442(a)(1) should be

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 3872218 (C.D.Cal.)
(Cite as: 2013 WL 3872218 (C.D.Cal.))

"liberally construed to give full effect to the purposes for which [it was] enacted." *Id.* (quoting *Colorado v. Symes,* 286 U.S. 510, 517, 52 S.Ct. 635, 76 L.Ed. 1253 (1932)). "[W]hen federal officers and their agents are seeking a federal forum, [courts] are to interpret section 1442 broadly in favor of removal." *Id.* Furthermore, removal under § 1442 is not subject to the wellpleaded complaint rule. *Jefferson County v. Acker,* 527 U.S. 423, 431, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999). Rather, "the federal-question element is met if the defense depends on federal law." *Id.*

To satisfy § 1442 under Ninth Circuit case law, a party must demonstrate that "(a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims, and (c) it can assert a 'colorable federal defense.' " *Durham,* 445 F.3d at 1251 (citing *Acker,* 527 U.S. at 431, and *Mesa v. California,* 489 U.S. 121, 124–25, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989)).

The casual-nexus element requires more than mere compliance with a federal regulation by a private party. *Watson v. Philip Morris Cos.,* 551 U.S. 142, 152, 127 S.Ct. 2301, 168 L.Ed.2d 42 (2007). Rather, it entails "an effort to *assist,* or to help *carry out,* the duties or tasks of the federal superior." *Id.* To satisfy this requirement, the defendant must show a causal connection between the charged conduct and asserted official authority. *Acker,* 527 U.S. at 431. But a defendant must show more than that "the relevant acts occurred under the general auspices of a federal office or officer." *Freiberg v. Swinerton & Walberg Prop. Servs., Inc.,* 245 F.Supp.2d 1144, 1152 (D.Colo.2002) (quoting *Ryan v. Dow Chem. Co.,* 781 F.Supp. 934, 947 (E.D.N.Y.1992). Rather, the federal officer must have "direct and detailed" control over the defendant, and the defendant "must demonstrate that the acts for which they are being sued ... occurred *because of* what they were asked to do by the Government." *Ryan,* 781 F.Supp. at 947; *Isaacson v. Dow Chem. Co.,* 517 F.3d 129, 137

(emphasis in original). Further, the removing party must "by direct averment exclude the possibility that [the state action] was based on acts or conduct of his not justified by his federal duty." *Mesa,* 489 U.S. at 132.

**\*5** Northrop points to a general safety provision in its Commercial Test Agreement (CTA) with the Air Force in an attempt to show federal direction. (Opp'n 9.) The boilerplate provision states that Northrop must comply with applicable Air Force standards and seek clearance before making certain alterations at their facility located at Edwards Air Force Base. (Opp'n 9.) According to Northrop, the CTA shows that "whatever actions Northrop took (or did not take) to maintain the dirt path on which Plaintiff's accident occurred were governed by" federal regulations. (*Id.*) And regarding maintenance of the GEM utility truck, Northrop concedes that under the CTA it was responsible for inspecting and maintaining its own equipment and property. (*Id.* at 10.) Even so, Northrop contends that such maintenance was subject to direct federal regulation because the CTA requires them to have an "approved written Environmental, Health and Safety Program" to cover work performed at their facility. (*Id.*)

It is telling that Northrop cannot point to a single decision it actually made regarding maintenance of the dirt road or GEM utility truck, or demonstrate how any such decision was directed by the CTA. The crux of Northrop's argument is that because any actions it hypothetically could have taken were required to meet the CTA guidelines, there is a causal nexus between whatever it did or did not do and the conduct complained of. But Northrop has the burden to exclude the possibility that whatever acts it took or did not take were not justified by federal direction. *Mesa,* 489 U.S. at 132. Merely pointing to a general safety provision does not exclude this possibility. In short, although the CTA shows that Northrop acted under the general auspices of federal direction, it fails to demonstrate that the Air Force exercised

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 3872218 (C.D.Cal.)
**(Cite as: 2013 WL 3872218 (C.D.Cal.))**

direct and detailed control over Northrop. Moreover, Northrop fails to demonstrate that the alleged incident occurred because of that federal control. But in an effort to convince the Court otherwise, Northrop points to a number of cases that actually illustrate the weakness of their position.

In *Reaser v. Allis Chambers Corp.*, plaintiffs brought a failure to warn claim against multiple defendants who supplied asbestos-containing products for Navy submarines. No. CV 08–1296–SVW (SSx), 2008 WL 8911521, at *1 (C.D.Cal. Jun. 23, 2008). The products were built to meet precise specifications supplied by the Navy, and the Navy maintained complete control over the placement and content of the warnings. *Id.* at *3. Because any alleged failure to warn "resulted from the Navy's prohibitions and/or control over any such warning," the court found the causal nexus element satisfied. *Id.* at *5. Here, Northrop fails to show that any acts or omissions regarding maintenance of the road or GEM utility vehicle were controlled by the Air Force. At most, the CTA compels Northrop to comply with various Air Force safety standards; how compliance with these standards had anything to do with Early's injuries is unclear.

*6 Northrop's reference to *McGee v. Arkel Int'l, LLC,* is equally unavailing. 716 F.Supp.2d 572 (S.D.Tex.2009). *McGee* concerned the death of an army serviceman who died in Iraq while operating a power washer connected to an improperly grounded generator. Defendants contracted with the army to perform maintenance on 16 generators, but they were not authorized to perform any work on the generator at issue. *Id.* at 577. The causal nexus element was easily satisfied because defendants' failure to maintain the generator was the direct result of being prevented from doing so by a military contract. *Id.* Unlike the contract in *McGee,* the CTA did not prevent Northrop from maintaining the dirt road or providing a working seatbelt in the GEM utility truck. Although the

CTA required Northrop to follow certain guidelines and receive permits before making modifications, Northrop makes no effort to show that it even attempted to make any modifications or that Early's injuries occurred because they followed the CTA guidelines. (Opp'n 10.)

A contract with the government is not a one-way ticket to federal court. While the Court is mindful that federal-officer removal is construed broadly, there must still be a causal nexus between the charged conduct and the actions directed by the federal official. *Acker,* 527 U.S. at 431. The CTA does not demonstrate that a federal official directed Northrop's decisions regarding maintenance of the dirt road or GEM utility trucks. Thus, Northrop fails to satisfy the causal-nexus element required for federalofficer removal jurisdiction.

Because Northrop has not established a necessary element for federal-officer jurisdiction, the Court declines to opine whether the other two elements have been satisfied.

### V. CONCLUSION
For the reasons discussed above, Plaintiffs' Motion for Remand is **GRANTED.**

### IT IS SO ORDERED.

C.D.Cal.,2013.
Early v. Northrop Grumman Corp.
Not Reported in F.Supp.2d, 2013 WL 3872218 (C.D.Cal.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Exhibit M

Cuomo v. Air & Liquid Systems Corp., Slip Copy (2013)

2013 WL 5913379
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Susan CUOMO, Individually and as Administratrix
for the Estate of Joseph Cuomo, Plaintiffs,
v.
AIR & LIQUID SYSTEMS CORP., et al., Defendants.

No. 13 Civ. 273(SAS).    |    Nov. 1, 2013.

**Attorneys and Law Firms**

Kyle A. Shamberg, Esq., Weitz & Luxenberg, P.C., New York, NY, for Plaintiffs.

Eric R.I. Cottle, Esq., K & L Gates LLP, New York, NY, for Defendant.

**Opinion**

### OPINION AND ORDER

SHIRA A. SCHEINDLIN, District Judge.

### I. INTRODUCTION

*1 On January 11, 2013, defendant Crane Co. ("Crane") removed this asbestos-related tort action to this Court, invoking the federal officer removal statute, section 1442(a)(1) of Title 28 of the United States Code. Plaintiffs Joseph and Susan Cuomo now move to remand the suit to state court. For the reasons set forth below, the Cuomos' motion is granted.

### II. BACKGROUND

Susan and Joseph Cuomo, brought this action in New York state court on November 28, 2012.[1] Joseph Cuomo, now deceased, served in the United States Navy aboard the USS Ponce and USS Coontz as a quarter master from 1974 through 1980.[2] On December 30, 2009, Joseph was diagnosed with lung cancer.[3] The Cuomos assert that defendants are liable to them for failing to warn Joseph about the dangers of absestos exposure.[4] In response, Crane asserts a federal contractor defense which—when properly raised—allows removal to federal court.[5] The case was removed to this Court on January 11, 2013 pursuant to the federal officer removal statute.[6]

On August 9, 2013, the Cuomos filed the instant motion to remand, asking that the case be remanded to state court because Crane lacks a colorable federal contractor defense.[7] The Cuomos argue that: (1) there is no evidence that the Navy prohibited Crane from warning about the asbestos in its product, and therefore nothing prevented Crane from complying with both state law warnings requirements and Navy specifications; and (2) Crane did not attempt to warn the Navy of the dangers of asbestos, nor did the Navy possess knowledge of the dangers of asbestos during the time period of Joseph's exposure.[8]

Crane responds that the Navy need not have precluded it from giving warnings in order to raise a colorable federal contractor defense.[9] Alternatively, it argues that the Navy's specifications did in fact preclude Crane from supplying the state law warnings and it should be permitted to prove this at trial.[10] Finally, Crane contends that the declaration of its expert—Dr. Samuel A. Forman—establishes that the Navy was aware of the hazards of asbestos.[11]

### III. APPLICABLE LAW

#### A. Federal Officer Removal
The well-pleaded complaint rule dictates that a defendant may remove an action from state court to federal court only if the case could have been filed in federal court in the first instance.[12] Thus federal question jurisdiction may be invoked only ' "when a federal question is presented on the face of the plaintiff's properly pleaded complaint.' "[13] Suits against federal officers are an exception to this general rule.[14] "Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint ... if [a] defense depends on federal law."[15]

The federal officer removal statute provides that "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office" may remove to federal court.[16] If the defendant seeking removal is not a federal officer or agency, three conditions must be satisfied for removal to be warranted. *First*, the defendant must show that it is a "person" as that term is used in section 1442(a)

(1).[17] *Second,* the defendant must offer a colorable federal defense.[18] *Third,* "it must establish that it was 'acting under' a federal officer, which subsumes the existence of a 'causal connection' between the charged conduct and asserted official authority."[19]

*2 While other removal statutes are interpreted narrowly,[20] the Supreme Court has emphasized that "the federal officer removal statute is not narrow or limited."[21] Indeed, "the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).' "[22] Nevertheless, the Supreme Court has limited federal officer removal where a defendant claims only that it complied with federal regulations or rules issued by federal regulatory agencies.[23]

**B. Federal Contractor Defense**

The federal contractor defense, if established, "presents a colorable federal defense in both design defect and failure to warn cases."[24] "The [federal] contractor defense is premised on federal displacement of state law where state law significantly conflicts with the federal interest embodied in the federal government's sovereign immunity for discretionary functions."[25] To show such a conflict, and thus to assert this federal defense, a defendant contractor must satisfy three requirements. *First,* it must demonstrate that ' "the United States approved reasonably precise specifications' for the military equipment supplied by the contractor."[26] *Second,* it must show that ' "the equipment conformed to those specifications.' "[27] *Third,* the defendant contractor must show that it ' "warned the United States about the dangers in the use of the equipment that were known to the [contractor] but not to the United States.' "[28] In the failure to warn context, the first prong of this test requires a showing that "whatever warnings accompanied the product resulted from a determination of a government official, and thus that the Government itself 'dictated' the content of the warnings meant to accompany the product."[29]

**IV. DISCUSSION**

**A. Party Submissions**

**1. Crane's Exhibits**

In support of removal, Crane attached an affidavit of Admiral David P. Sargent, Jr.[30] Admiral Sargent served as an engineering officer in the Navy during the relevant time period and assisted in the acceptance of ship designs.[31] Admiral Sargent states that:

> OEMs [Crane Co.] would not have been permitted, under the specifications, associated regulations and procedures, nor under the actual practice as it evolved in the field, to vary or to deviate in any respect form the Navy specifications in ... affixing any type of warning or caution statement to equipment ... beyond those specifically required by the Navy without prior discussion and express approval by the Navy.[32]

Crane also attaches the affidavit of Dr. Samuel A. Forman who served in the Navy as a medical officer from 1977 through 1983, and as a civilian employee of the Navy until 1986.[33] Importantly, in 1983, at the request of a Navy JAG officer, Dr. Forman joined a team that investigated the Navy's knowledge of the health hazards of asbestos.[34] Dr. Forman found that as "[a]s early as 1922, the Navy recognized, as exemplified by its instructions to officers published in the Navy Medical Bulletin, the health hazards associated with airborne asbestos dust and the appropriate protective measures to prevent asbestos exposure."[35] Dr. Forman attests that he had "not located a single instance in which the Navy, at any time during the 1930s through the 1960s, instructed or permitted a supplier of engineering equipment to a vessel or facility to affix or provide any asbestos related warning with its equipment."[36]

**2. The Cuomos' Exhibits**

*3 In support of their motion to remand, the Cuomos have attached their own exhibits. The Cuomos contend that Crane's exhibits show that the manufacturer had discretion as to whether and when to issue a warning regarding the use of asbestos.[37] Their expert, Captain Arnold P. Moore, declares that the Navy "relied heavily upon its manufacturers and vendors to identify hazards associated with their products" and "to provide warnings" for such hazards.[38]

The Cuomos also attach Dr. Forman's deposition testimony in a New York asbestos litigation.[39] In that case, Dr. Forman affirmed that "if a warning on an asbestos product or on a container ... was consistent with the Navy's understanding of the hazard and how it wished to control the hazard, then it would allow the warning."[40] Dr. Forman admitted that he

Cuomo v. Air & Liquid Systems Corp., Slip Copy (2013)

could not cite a specific example where the Navy denied a manufacturer's proposed warning.[41]

**B. Colorable Federal Defense**

The Cuomos assert that Crane failed to raise a colorable federal contractor defense to their claim of failure to warn.[42] Specifically, they contend that the Navy did *not prohibit* Crane from complying with state law warning requirements but allowed Crane to exercise its discretion to identify appropriate warnings.

The federal contractor defense does not require that a defendant show that the federal government actively prohibited the defendant from issuing a warning.[43] However, in a failure to warn case, Crane can assert a colorable defense only if the Navy "dictated the contents of the warnings" to it.[44] Crane has failed to do so.

The Sargent Affidavit states that the Navy exercised control over the wording of proposed manufacturer warnings, including "word-by-word line edits."[45] However, the Cuomos' evidence clarifies that while the Navy exercised control over specific wording of warnings, it "relied heavily" on manufacturers to identify hazards and provide the substance of those warnings.[46] Crane has provided no evidence indicating that the Navy either forbid an asbestos warning or actively dictated the substance of any proposed asbestos warning. Crane fails to ' "rebut the obvious inference: that [it] never tried to warn about asbestos at all.' "[47]

If "the government was silent as to whether or not [a defendant is] permitted to warn, or that there was no discussion about the content of the warnings," then there can be no significant conflict between federal and state policy.[48] Thus, Crane has not presented a colorable federal contractor defense for the purpose of federal officer removal.

**V. CONCLUSION**

For the foregoing reasons, the Cuomos' motion to remand this action to state court is granted. The Clerk of the Court is directed to close this motion (Dkt. No. # 38) and this case.

SO ORDERED:

Footnotes

1       *See* 08/09/13 Plaintiff's Memorandum in Support of Motion to Remand ("Pl.Mem."), at 1.
2       *See id.*
3       *See* Plaintiff's Initial Fact Sheet ¶ 9.
4       *See* Pl. Mem. at 1.
5       *See* 08/30/13 Defendant's Memorandum in Opposition to Plaintiff's Motion to Remand ("Def.Mem."), at 1. Federal officer removal is warranted where the defendant: (1) establishes that it is a "person" under the § 1442(a)(1); (2) raises a colorable federal defense; and (3) it was "acting under" a federal officer. *See In re Methyl Tertiary Butyl Ether ("MBTE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir.2007).
6       *See* Pl. Mem. at 1; 28 U.S.C. § 1442(a)(1).
7       *See* Pl. Mem. at 6.
8       *See id.* at 7, 14–15.
9       *See* Def. Mem. at 2.
10      *See id.* at 6.
11      *See id.* at 10.
12      *See City of Rome v. Verizon Commc'n, Inc.*, 362 F.3d 168, 174 (2d Cir.2004) (citation omitted).
13      *Vera v. Saks & Co.*, 335 F.3d 109, 113 (2d Cir.2003) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). *Accord Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).
14      *See Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999). *Accord Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 136 (2d Cir.2008).
15      *Jefferson Cnty.*, 527 U.S. at 431.
16      28 U.S.C. § 1442(a)(1).
17      *See In re MBTE*, 488 F.3d at 124.
18      *Id.* (citing *Mesa v. California*, 489 U.S. 121, 129 (1989)).
19      *Id.* (citing *Willingham v. Morgan*, 395 U.S. 402, 409 (1969)).

Cuomo v. Air & Liquid Systems Corp., Slip Copy (2013)

20    *See California Pub. Employees' Ret. Sys. v. WorldCom, Inc.,* 368 F.3d 86, 100 (2d Cir.2004).

21    *Willingham,* 395 U.S. at 406.

22    *Arizona v. Manypenny,* 451 U.S. 232, 242 (1981) (quoting *Willingham,* 395 U.S. at 407). *Accord Durham v. Lockheed Martin Corp.,* 445 F.3d 1247, 1253 (9th Cir.2006) ("Because it's so important to the federal government to protect federal officers, removal rights under section 1442 are much broader than those under section 1441.").

23    *See Watson v. Philip Morris Cos., Inc.,* 551 U.S. 142, 153 (2007) ("A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' ... that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored.").

24    *Machnik v. Buffalo Pumps Inc.,* 506 F.Supp.2d 99, 102 (D.Conn.2007) (citing *Boyle v. United Techs. Corp.,* 487 U.S. 500, 512 (1988); *Grispo v. Eagle–Picher Indus., Inc.,* 897 F.2d 626, 629 (2d Cir.1990)).

25    *In re Brooklyn Navy Yard Asbestos Litig.,* 971 F.2d 831, 839 (2d Cir.1992) (citing *Boyle,* 487 U.S. at 511).

26    *Machnik,* 506 F.Supp.2d at 102 (quoting *Boyle,* 487 U.S. at 512).

27    *Id.* (quoting *Boyle,* 487 U.S. at 512).

28    *Id.* (quoting *Boyle,* 487 U.S. at 512).

29    *Grispo,* 897 F.2d at 631 (citations omitted). *Accord Machnik,* 506 F.Supp.2d at 103 ("To prove the 'reasonably precise specifications' requirement, [the defendant] must show that the government actively participated in creating the specifications for the products and warning labels [defendant] supplied, and that the government imposed these specifications on [defendant].") (citing *In re Agent Orange Prod. Liab. Litig.,* 304 F.Supp.2d 404, 434 (E.D.N.Y.2004)).

30    *See* 5/07/12 Affidavit of Admiral David P. Sargent, Jr. ("Sargent Aff."), Exhibit ("Ex.") 3 to 1/11/13 Defendant Crane Co.'s Notice of Removal ("Notice of Removal").

31    *See id.* ¶¶ 1–4.

32    *Id.* ¶ 58. The Cuomos have attached those specifications to their brief. *See* "Military Specification: Manual, Technical, For Mechanical and Electical Equipment", Ex. 7 to PL Mem. For example one specification states that "[w]hen necessary, emphatics such as 'NOTE', 'CAUTION', and 'WARNING' shall be used as adjuncts to the text." *Id.* at § 3.3.3.2. Furthermore, these warnings are to be used whenever there is a "real need." *Id.*

33    *See* 5/03/12 Affidavit of Dr. Samuel A. Forman, Ex. 4 to Notice of Removal, ("Forman Aff.") ¶¶ 1–3.

34    *See id.* ¶ 9.

35    *Id.* ¶ 27.

36    *Id.* ¶ 59.

37    *See* Pl. Mem. at 12.

38    9/08/08 Affidavit of Captain Arnold P. Moore, Ex. 4 to PL Mem. ("Moore Aff.") ¶ 11.

39    *See* 9/07/12 Deposition of Dr. Samuel A. Forman, Ex. 9 to Pl. Mem.

40    *Id.* at 57–58.

41    *See id.* at 59–60.

42    *See* Pl. Mem. at 1.

43    *See Grispo,* 897 F.2d at 631.

44    *Id.*

45    Sargent Aff. ¶ 60.

46    Moore Aff. ¶ 11.

47    *Miranda v. Abex Corp.,* No. 08 Civ. 5509, 2008 WL 4778886, at *3 (S.D.N.Y. Oct. 31, 2008) (quoting *Hilbert v. McDonnell Douglas Corp.,* 529 F.Supp.2d 187, 202 (D.Mass.2008)).

48    *Id. Accord Hilbert,* 529 F.Supp. at 199 ("If no federal policy is infringed and the contractor had discretion to warn, then the affirmative federal contractor defense must fail.").

---

**End of Document** © 2014 Thomson Reuters. No claim to original U.S. Government Works.