**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ARTHUR HAMMELL, et al., | : | CIVIL ACTION NO. 14-13 (MLC) |
|  | : |  |
| Plaintiffs, | : | **MEMORANDUM OPINION** |
|  | : |  |
| v. | : |  |
|  | : |  |
| AIR & LIQUID SYSTEMS CORPORATION, et al., | : |  |
|  | : |  |
| Defendants. | : |  |

**COOPER, District Judge**

Arthur Hammell and Linda Hammell ("the Plaintiffs") brought this action to recover damages for personal injuries allegedly caused by exposure to asbestos ("Asbestos Action") in New Jersey Superior Court, Middlesex County ("Middlesex County Superior"). (See dkt. entry no. 1-5, Compl.) The Asbestos Action was removed to this Court. (See dkt. entry no. 1, Notice of Removal at 1.) The Plaintiffs now move to remand the Asbestos Action. (See dkt. entry no. 82-2, Pls.' Br. at 1-2.) For the following reasons, this Court will deny the Motion insofar as it seeks remand.

**BACKGROUND**

The Plaintiffs allege Arthur Hammell ("Hammell") was exposed to asbestos during various periods between 1950 and "the 1970s." (See Compl. at 4.) From approximately April 5, 1962 through September 18, 1964, the Plaintiffs allege that Hammell was exposed to asbestos while serving as a boilerman in the U.S. Navy on a

ship known as the USS Roan.  (Id. at 3.)  During this period, Defendant Foster Wheeler

Energy Corporation ("FWE") manufactured boilers and auxiliary equipment, and

Defendants General Electric Company ("GE") and CBS Corporation ("CBS")

(collectively, "Contractor Defendants") manufactured turbines for Navy ships pursuant to

government contracts.  (See dkt. entry no. 103, Defs.' Br. at 3-6.)

The Plaintiffs brought this Asbestos Action in Middlesex County Superior on

November 15, 2013, asserting personal injury claims against the Contractor Defendants

and many other defendants.  (See Compl. at 3-6.)  The Plaintiffs assert that the Contractor

Defendants failed to warn Hammell of the hazards of the alleged asbestos-containing

machinery.  (Id. at 8-9.)  The Plaintiffs also allege that their failure to warn was the actual

and proximate cause of Hammell's eventual diagnosis of mesothelioma.  (Id. at 8.)

The Asbestos Action was removed pursuant to the federal officer removal statute,

28 U.S.C. § ("Section") 1442(a)(1) ("Federal Officer Removal Statute").  (See Notice of

Removal at 1.)  In support of removal, the Contractor Defendants assert that they

manufactured and sold equipment pursuant to Navy contracts sufficient to establish a

government contractor defense ("Government Contractor Defense") under the Federal

Officer Removal Statute.  (Id. at 2.)  The Plaintiffs now move to remand the Asbestos

Action to Middlesex County Superior.  (See Pls.' Br. at 1.)

## DISCUSSION

## I.    LEGAL STANDARD

Pursuant to the Federal Officer Removal Statute the "United States or any agency

thereof or any officer…of the United States or of any agency thereof, [sued] in an official

2

or individual capacity, for or relating to any act under color of such office…" may invoke removal.  28 U.S.C. § 1442(a)(1).  The statutory provision should be "broadly construed" and the removing party bears the burden of proving that subject-matter jurisdiction is proper under the Federal Officer Removal Statute.  Sun Buick v. Saab Cars USA, 26 F.3d 1259, 1262 (3d Cir. 1994); see MacQueen v. Union Carbide, No. 13–831, 2014 WL 108535, at *1 (D. Del. Jan. 9, 2014), adopting, 2013 WL 6571808, at *2 (D. Del. Dec. 13, 2013) (Magistrate Judge Report and Recommendation); Lewis v. Asbestos Corp., No. 10-650, 2012 WL 3240941, at *4 (D.N.J. Aug. 7, 2012).

To establish that removal is proper under the Federal Officer Removal Statute, the Contractor Defendants must establish: (1) that they are "persons" within the meaning of the statute; (2) that the Plaintiffs' claims are based upon the Contractor Defendants' alleged conduct "acting under" a federal office or officer; (3) a colorable federal defense; and (4) a causal nexus between the federal direction and the conduct at issue.  Mesa v. California, 489 U.S. 121, 124-26, 129-35 (1989); Feidt v. Owens Corning Fiberglas Corp., 153 F.3d 124, 127 (3d Cir. 1998).  The Court analyzes the requirements and determines that the Contractor Defendants satisfy each.

**A.    Corporate Personhood and the "Acting Under" Requirement**

The Federal Officer Removal Statute applies to persons and corporations.  See Hagen v. Benjamin Foster Co., 739 F.Supp.2d 770, 776 n.6 (E.D. Pa. 2010).  Accordingly, Section 1442(a)(1) applies to the Contractor Defendants.  Id.; see also Hicks v. Boeing Co., No. 13-393, 2014 WL 1391104, at *1 (D. Del. Apr. 8, 2014), adopting, 2014 WL 1051748, at *4 (D. Del. Mar. 17, 2014) (Magistrate Judge's Report

3

and Recommendation stating there "is no dispute that [defendant], as a corporation, is a 'person'" under the Federal Officer Removal Statute).

A defendant "acts under" a federal office or officer when that defendant's actions exceed mere compliance with a federal legal or regulatory scheme. Watson v. Philip Morris Cos., 551 U.S. 142, 152-53 (2007). In the context of failure to warn claims, a removing defendant must identify facts sufficient to establish that the government's actions transcended "rubber stamping" the defendant's policies. Tate v. Boeing Helicopters, 55 F.3d 1150, 1154-57 (6th Cir. 1995); Walkup v. Air & Liquid Sys. Corp., No. 12-1635, 2013 WL 5798701, at *1 (D. Del. Oct. 24, 2013), adopting, 2013 WL 5448623, at *7 (D. Del. Sept. 26, 2013) (Magistrate Judge Report and Recommendation). Rather, a corporate entity "acts under" federal authority by following express federal directives. Watson, 551 U.S. at 152. In order to establish subject-matter jurisdiction under the Federal Officer Removal Statute, the removing defendant must demonstrate that the actions that led to the lawsuit were based on a federal officer's direct orders or comprehensive and detailed regulations. See Walkup, 2013 WL 5798701, at *1, adopting, 2013 WL 5448623, at *2; Lewis, 2012 WL 3240941, at *4-5; Hagen, 739 F.Supp.2d at 784.

The Contractor Defendants assert sufficient evidence to establish they acted pursuant to express federal directives. The Contractor Defendants' affidavits, for example, describe detailed contracts, communications between the federal government and the corporate entities, and the level of control that the government maintained over the machinery. (See generally dkt. entry no. 103-8, Lehman Aff. (statements of former

4

U.S. Navy Admiral).)  Among voluminous evidence, the Contractor Defendants submit

the testimony of retired Navy Captain Lowell regarding Navy participation in reviewing

and approving equipment manuals.  (See dkt. entry no. 103-63, Lowell Dep. at 159:18-

160:12.)  Lowell specifically testified that the policies governing boilers and turbines

"weren't just going to be rubber-stamped" by Navy officials.  (Id. at 160:13-18.)  This

evidence is sufficient to establish that the Contractor Defendants operated pursuant to

Navy directives.  See Hicks, 2014 WL 1391104, at *1, adopting, 2014 WL 1051748, at

*8-9 ("acting under" requirement met because defendants submitted affidavits to

establish that defendants acted pursuant to direct orders and detailed regulations);

Walkup, 2013 WL 5798701, at *1, adopting, 2013 WL 5448623, at *5-7 (affidavits

stating that defendants designed and manufactured equipment pursuant to government

specifications sufficient to satisfy the "acting under" requirement); Bouchard v. CBS

Corp., No. 11-458, 2012 WL 1344388, at *9 (E.D. Pa. Apr. 17, 2012) (recognizing

evidence that defendants acted pursuant to government contracts and in accordance with

government specifications as sufficient to satisfy the "acting under" requirement); Hagen,

739 F.Supp.2d at 784-85 (evidence demonstrating "the Navy was responsible for the lack

of warnings" sufficient to meet the "acting under" requirement).  Accordingly, the Court

finds the Contractor Defendants satisfy Section 1442(a)(1)'s "acting under" requirement.

## B.    Colorability Requirement

A defendant must assert a colorable defense in order to properly remove an action

to federal court under the Federal Officer Removal Statute.  Feidt, 153 F.3d at 127.  The

Contractor Defendants here rely upon the Government Contractor Defense to justify

removal of the Plaintiffs' failure to warn claims.  (<u>See</u> Defs.' Br. at 10.)  This defense

shields government contractors from liability for equipment when: (1) the United States

approved reasonably precise specifications; (2) the equipment conformed with these

specifications; and (3) the supplier warned the United States about the dangers associated

with the equipment that were known to the supplier but not to the United States ("<u>Boyle</u>

Test").  <u>See</u> <u>Boyle v. United Techs. Corp.</u>, 487 U.S. 500, 512 (1988).  In order to

determine whether the Contractor Defendants assert a colorable defense, the Court

considers each requirement.

### 1.      Exercise of Discretion

Evidence related to the government's involvement in designing, manufacturing,

and delivering the Contractor Defendants' machinery is sufficient to satisfy the first part

of the <u>Boyle</u> Test.  <u>See, e.g.</u>, <u>Tate</u>, 55 F.3d at 1154-57.  The Contractor Defendants cite

evidence regarding Navy specifications, government contracts, government contractors'

technical manuals, and discussions between the Navy and the Contractor Defendants to

establish government involvement.  (<u>See, e.g.</u>, dkt. entry no. 103-39, Hobson Aff. I at ¶ 1;

dkt. entry no. 103-40, Hobson Aff. II at ¶ 3 (former GE Manager of Navy Customer

Service providing "[t]he U.S. Navy had precise specifications, practices and procedures

that governed the content of any communication affixed to machinery…"); dkt. entry no.

103-7, Schroppe Aff. at ¶¶ 1, 12 (former FWE President providing "[t]he boiler proposal

would be reviewed by the shipyard with the understanding that the proposed design,

prepared specifically for the Navy…conformed to all appropriate specifications….[o]nce

final price negotiations were complete, the contract was awarded to Foster Wheeler");

dkt. entry no. at 103-43, Gate Aff. at ¶¶ 1, 15 (former CBS Manager of Design

Verification of the Marine Division providing "the Navy retained ultimate decision

authority over the design of the turbines.  If an engineering disagreement arose between

the Navy and the outside design consultant, the Navy controlled the design adopted.  All

final design drawings and specifications required express Navy approval and

adoption.").)  This evidence is sufficient to establish that the government exercised

sufficient discretion over the machinery, including determining whether warnings should

have been provided to end users.  See Walkup, 2013 WL 5798701, at *1, adopting, 2013

WL 2013 5448623, at *6 (affidavits stating the Navy controlled "the decision of which

warnings should or should not be included" sufficient "to plausibly show that the Navy

was responsible for the product design and lack of warnings"); Hagen, 739 F.Supp.2d at

784 (recognizing affidavits stating that the government precluded defendants from

affixing "any type of warning or caution statement" on the machinery in question as

sufficient evidence of government direction and control); Kirks v. Gen. Elec. Co., 654

F.Supp.2d 220, 224 (D. Del. 2009) (relying upon similar affidavits to determine that

defendant "satisfied its burden to prove that plaintiffs' failure-to-warn claims [were]

based upon [defendant's] conduct 'acting under' the office of the Navy and its officers").

### 2.    Defendants' Conformity to Navy Specifications

The Boyle Test also requires the Contractor Defendants to establish their

conformity to Navy specifications.  Boyle, 487 U.S. at 512.  Adherence to government

specifications precluding a government contractor from applying warning labels to

machinery is sufficient to demonstrate conformance.  See, e.g., Bouchard, 2012 WL

1344388, at *10 ("[I]t is clear that the Navy was responsible for the design specifications of the ship and the finished equipment conformed to those specifications as demonstrated by the Navy's acceptance of each ship.  This satisfies the first two elements of the government contractor defense."); Hagen, 739 F.Supp.2d at 784.

According to the Contractor Defendants, comprehensive Navy specifications governed every aspect of the machinery.  (See, e.g., Hobson Aff. I at ¶ 8 ("[s]upervision and control were exercised through contract documents, design construction drawings, written specifications and personal oversight of GE's work by ship engineers and machinery specialists employed by the U.S. Navy.").)  With respect to the failure to warn claims, the Contractor Defendants assert that they were not permitted to include any type of warning or caution statement and that the Navy controlled "the decision of which warnings should or should not be included."  (See Lehman Aff. at ¶¶ 10, 14.)  The Contractor Defendants assert that military specifications "governed every significant characteristic of the equipment used on U.S. ships, including the instructions and warnings."  (Id. at ¶ 10.)  Accordingly, the Contractor Defendants satisfy the conformity requirement under the Boyle Test.

### 3.    Knowledge Requirement

A removing defendant must demonstrate "[unawareness] of any dangers that the Navy was unaware of" to satisfy the Boyle Test.  Bouchard, 2012 WL 1344388, at *10. The removing defendant need not demonstrate "the government knew as much or more than the defendant contractor about the hazards of the project or product" to meet the knowledge requirement.  Beaver Valley Power Co. v. Nat'l Eng'g & Contracting Co.,

8

883 F.2d 1210, 1216-19 (3d Cir. 1989). The Contractor Defendants present evidence sufficient to satisfy the knowledge requirement in this case.

With respect to their knowledge regarding health risks associated with asbestos, the Contractor Defendants submit conflicting evidence regarding the utilization of asbestos-containing equipment. (Compare Hobson Aff. I at ¶ 7 ("As manufactured and shipped to the Navy by GE, turbines did not have any thermal insulation materials (whether containing asbestos or otherwise) anywhere on them.") with Gate Aff. at ¶ 11 ("Particularly through the early 1970's, some of these [Navy] specifications required the use of asbestos-containing materials…").) Notwithstanding this conflict, the affidavits provide sufficient evidence that any asbestos-containing equipment was manufactured pursuant to Navy directives. (See Gate Aff. at ¶ 11.) Moreover, the Contractor Defendants submit an affidavit that suggests that the Navy may have had superior knowledge regarding the health risks associated with asbestos at the time of manufacture. (See dkt. entry no. 103-49, Forman Aff. I at ¶ 1; dkt. entry no. 103-51, Forman Aff. III at ¶ 56 (Dr. Forman providing "[g]iven the Navy's state-of-the-art knowledge concerning asbestos related hazards and its robust safety and health program, it would be unreasonable to assume that the Navy would have accepted any advice pertaining to asbestos related safety precautions from a manufacturer of equipment.").) Based upon this evidence, the Contractor Defendants satisfy the knowledge requirement under Boyle and therefore establish a colorable defense to the Plaintiffs' failure to warn claim. See, e.g., Bouchard, 2012 WL 1344388, at *10; Hagen, 739 F.Supp.2d at 784; Seigfried v. Allegheny Ludlum Corp., No. 09-125, 2009 WL 1035001, at *13 (W.D. Pa. Apr. 17,

2009) ("The affidavits by Admiral Lehman, Betts and Hobson are sufficient to establish that the Navy had precise specifications….and Plaintiffs' motion to remand should be denied.").

### C.      Causal Nexus Requirement

Removal under Section 1442(a)(1) also requires the Contractor Defendants to establish a causal nexus between the conduct performed under federal direction and the Plaintiffs' failure to warn claim.  Mesa, 489 U.S. at 131-34.  To do so, the Contractor Defendants must "by direct averment exclude the possibility that [the Contractor Defendants' action] was based on acts or conduct…not justified by [the Contractor Defendants'] federal duty."  Id. at 132.  Similar to the colorability requirement, the Contractor Defendants must demonstrate that they acted at the federal government's command to establish the requisite causal nexus.  Id.  As a practical matter, the causal nexus requirement is redundant when a "defendant in a government contractor case makes out a colorable federal defense" because the causal nexus analysis "is essentially the same as [that associated with] the colorable defense requirement."  Hicks, 2014 WL 1391104, at *1, adopting, 2014 WL 1051748, at *7 n.8 (internal quotations and citation omitted); MacQueen, 2014 WL 108535, at *1, adopting, 2013 WL 6571808, at *2; Hagen, 739 F.Supp.2d at 785 (internal quotations and citation omitted).

As described above, the Contractor Defendants establish a colorable federal defense to the Plaintiffs' failure to warn claims.  The Navy's supervision and control over the machinery at issue serves as the predicate for this defense.  Seigfried, 2009 WL 1035001, at *10 (finding defendants established a causal nexus because "the affidavits

specifically refer[red] to…the federal officer who directed [defendant's] performance"). Accordingly, the Contractor Defendants establish the necessary causal connection because the conduct at issue was subject to government oversight.

## II.    PLAINTIFFS' EVIDENCE

The Plaintiffs, in support of a remand of the Asbestos Action, argue that the Government Contractor Defense does not apply here because the Contractor Defendants' affidavits lack the factual foundation to support a colorable Government Contractor Defense.  (See Pls.' Br.)  To support this argument, the Plaintiffs characterize the Contractor Defendants' evidence as "conclusory" and "speculative", and cite case law that granted remand on the grounds that the defendants' evidence was boilerplate.  (Id.) The Plaintiffs also rely upon contradictory affidavits to challenge the Contractor Defendants' evidence.  (Id. at 21-22.)

The Plaintiffs' evidence, however, is unavailing in light of Hagen's well-established pleading standard.  Hagen, 739 F.Supp.2d at 783; see also MacQueen, 2014 WL 108535, at *1, adopting, 2013 WL 6571808, at *6 n.12 (following the Hagen standard, at least in part, because it was established by a Multi-District Litigation court that had "dealt with thousands of similar cases from across the country"); Walkup, 2013 WL 5798701, at *1, adopting, 2013 WL 5448623, at *4 ("The standard articulated in Hagen has been adopted by federal district courts in a number of jurisdictions."); Vedros v. Northrop Grumman Shipbuilding, No. 11-1198, 2012 WL 3155180, at *5 (E.D. Pa. Aug. 2, 2012) (following the Hagen standard and holding a "heightened standard of proof is not appropriate at this stage of the proceedings").  The Hagen court expressly rejected

the heightened pleading standard, which the Plaintiffs urge this Court to adopt.  Hagen, 739 F.Supp.2d at 780-83 (criticizing "those courts that have seemingly required a heightened showing of a colorable federal defense").[1]  Rather, under the broadened Hagen standard, this Court must simply identify "facts which, viewed in the light most favorable to [the Contractor Defendants], would establish a complete defense at trial." Id. at 783; see also Hicks, 2014 WL 1391104, at *1, adopting, 2014 WL 1051748, at *4; Vedros, 2012 WL 3155180, at *5.  The Court is also mindful that under Hagen, the Government Contractor Defense is not onerous to satisfy at the removal stage because the Court is not called upon to "determine credibility, weigh the quantum of evidence or discredit the source of the defense" at this procedural juncture.  Hagen, 739 F.Supp.2d at 780-82; see also Hicks, 2014 WL 1391104, at *1, adopting, 2014 WL 1051748, at *7 (citing Hagen); Walkup, 2013 WL 5798701, at *1, adopting, 2013 WL 2013 5448623, at *4, *8 (same); In re Asbestos Prod. Liab. Litig., 770 F.Supp.2d 736, 744 n.3 (E.D. Pa. 2011) (same).

The Court must simply analyze "the sufficiency of the facts stated" to determine whether "the defendant asserting [the defense] identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial" at this procedural stage.  Hagen, 739 F.Supp.2d 782-83; see also Walkup, 2013 WL 5798701, at *1, adopting, 2013 WL 2013 5448623, at *4, *8 (adopting the Hagen standard); Vedros,

---

[1] Although the Plaintiffs argue that Hagen was "wrongly decided," the brief cites no authoritative cases to persuade the Court.  (See Pls.' Br. at 28-29.)

2012 WL 3155180, at *5-6 (same).[2]  The Contractor Defendants' evidence meets this standard.  As previously discussed, the Contractor Defendants' evidence demonstrates active and direct Navy involvement and control over the Contractor Defendants' machinery by regulating the design, manufacture, and delivery.  Even though the Plaintiffs' evidence contradicts the Contractor Defendants' affidavits here, it would be premature for the Court to "determine credibility, weigh the quantum of evidence or discredit the source of the defense" at this time.  Hagen, 739 F.Supp.2d at 782-83; see also Walkup, 2013 WL 5798701, at *1, adopting, 2013 WL 5448623, at *8 ("Given that [defendant] has satisfied the removal requirements under Section 1442(a)(1), consideration of the Plaintiffs' Evidentiary Objections is not warranted at this early stage of the proceeding.").

This Court determines that, viewing the evidence in the light most favorable to the Contractor Defendants, the evidence shows at this stage that they have satisfied all necessary requirements for removal under Section 1442(a)(1).  See, e.g., Hicks, 2014 WL 1391104, at *1, adopting, 2014 WL 1051748, at *4-8; Walkup, 2013 WL 5798701, at *1, adopting, 2013 WL 5448623, at *5-9; Asbestos Prod. Liab. Litig., 770 F.Supp.2d 742-44; Hagen, 739 F.Supp.2d at 782-83.  Accordingly, the Plaintiffs' request to remand will be denied.

---

[2] As a procedural matter, the Hagen court recognized that the evidentiary merits will be tested on motion for summary judgment or at trial.  Hagen, 739 F.Supp.2d at 783 n.13.  At the summary judgment stage in this case, the Contractor Defendants will face the summary judgment standard and must demonstrate the absence of a genuine issue of material fact and that they are entitled to the government contractor defense as a matter of law.  Willis v. BW IP Int'l, 811 F.Supp.2d 1146, 1153 (E.D. Pa. 2011).

## CONCLUSION

The part of the Plaintiffs' motion seeking remand of the Asbestos Action to

Middlesex County Superior will be denied.  The Court will issue an appropriate order.


                                             s/ Mary L. Cooper       

                                            **MARY L. COOPER**

                                            United States District Judge


Dated:  August 29, 2014

14