NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LINDA HAMMELL, individually and as executrix of the estate of ARTHUR HAMMELL, <br><br> Plaintiff, <br><br> v. <br><br> AIR & LIQUID SYSTEMS CORPORATION, et al., <br><br> Defendants. | CIVIL ACTION NO. 14-13 (MLC) <br><br><br> **MEMORANDUM OPINION** |

**COOPER, District Judge**

Plaintiff, Linda Hammell, individually and as executrix of the estate of Arthur Hammell, asserts that Arthur Hammell ("Hammell") was exposed to asbestos-containing products that were manufactured, distributed, or supplied by certain defendants during his service in the United States Navy ("Navy"). (Dkt. 1-5 at 7–8; see also dkt. 266 at 2, 4.)[1] Foster Wheeler, LLC, named herein as Foster Wheeler Energy Corp. ("Defendant"), moves for summary judgment in its favor as to all claims asserted against it on, inter alia, the following grounds: (1) the government contractor defense; and (2) the bare metal defense. (Dkt. 157-1 at 6; dkt. 194; see also dkt. 1-5 at 7.)

---

[1] The Court will cite to the documents filed on the Electronic Case Filing System ("ECF") by referring to the docket entry numbers by the designation of "dkt." Pincites reference ECF pagination.

Plaintiff opposes the motion and cross-moves for summary judgment in her favor as to the government contractor defense. (Dkt. 224; dkt. 151.) For the reasons described below, the Court will deny Plaintiff's cross motion and grant Defendant's motion for summary judgment based on the bare metal defense.

## BACKGROUND

I.     **FACTUAL BACKGROUND**

Hammell served as a boilerman in the Navy on a ship known as the USS Charles H. Roan (hereinafter, "Roan") from April of 1962 through September of 1964. (Dkt. 157-4 at 11, 17–18.) Hammell worked on the Roan when it was docked in the Brooklyn Navy Yard, and also when it was at sea. (Id. at 18, 26.) As part of his job duties, Hammell operated machinery, including boilers and superheaters. (Id. at 18, 75.) Some of his duties also involved removing and replacing gaskets and rope packing on the doors of that machinery. (Id. at 85.) Plaintiff alleges that the gaskets and rope packing used in connection with the boilers and superheaters contained asbestos. (Dkt. 82-3 at 2.)

Defendant provided boilers and superheaters for the Roan pursuant to a government contract that was executed in 1943. (Dkt. 157-5 at 3.) According to Defendant, the original gaskets were removed and replaced dozens of times between 1943 and April of 1962, when Hammell first boarded the vessel. (Id. at 9.) Defendant asserts that it did not supply or install any asbestos-containing equipment for the Roan. (Id.)

Hammell was diagnosed with mesothelioma in July of 2013 at the age of seventy. (Dkt. 1-5 at 8, 22.) He died on April 2, 2015. (Dkt. 262-1 at 8.)

## II. PROCEDURAL BACKGROUND

Plaintiff initially brought this action in New Jersey Superior Court, Middlesex County ("Middlesex County") on November 15, 2013 against this Defendant and many others. (See dkt. 1-5 at 6–8.) Plaintiff alleged that Defendant failed to warn Hammell of the hazards of the alleged asbestos-containing machinery that it supplied to the Navy. (Id. at 13–14.) According to Plaintiff, Defendant's failure to warn was the proximate cause of Hammell's injuries. (See id. at 14.)

This action was removed pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). (See dkt. 1 at 1.) Plaintiff moved to remand the action to Middlesex County. (Dkt. 82-2 at 6.) This Court denied Plaintiff's motion for remand. (Dkt. 167.) The Court now considers the pending motions for summary judgment below.

## DISCUSSION

## I. LEGAL STANDARD AND APPLICABLE LAW

### A. Legal Standard

Federal Rule of Civil Procedure ("Rule") 56 governs motions for summary judgment. See Fed.R.Civ.P. 56(a). Pursuant to Rule 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The movant has the initial burden of proving the absence of a genuinely-disputed material fact regarding the claims at issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 331 (1986). The nonmoving party, in response, must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts

3

showing that there is a genuine issue for trial." Id. at 324 (internal citation and quotation omitted).  Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011) (internal citation and quotation omitted).

Summary judgment is "proper if, viewing the record in the light most favorable to the non-moving party and drawing all inferences in that party's favor, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." United States ex rel. Kosenske v. Carlisle HMA, Inc., 554 F.3d 88, 94 (3d Cir. 2009). With respect to the government contractor defense, at the motion for summary judgment stage, the movant bears the burden of demonstrating the absence of a genuine issue of material fact, and that it is entitled to the government contractor defense as a matter of law. Willis v. BW IP Int'l, Inc., 811 F.Supp.2d 1146, 1149 (E.D. Pa. 2011).

### B.    Applicable Law

Plaintiff argues that either maritime law or New York law governs this case, whereas Defendant argues that either maritime law or New Jersey law applies. (Compare dkt. 224 at 37–40, with dkt. 157-1 at 7.)  The Court provides the following analysis, and determines that maritime law governs this case.

Maritime law applies when a claim meets both a "locality test" and a "connection test." Conner v. Alfa Laval, Inc., 799 F.Supp.2d 455, 461–66 (E.D. Pa. 2011).  The locality test is satisfied when a tort related to a claim at issue occurred: (1) on navigable waters, which includes vessels that are docked in shipyards; or (2) on land, but as the

result of a "vessel on navigable waters." Duenas v. Gen. Elec. Co., MDL No. 875, 2014 WL 345232, at *1 n.1 (E.D. Pa. Jan. 29, 2014). The connection test is met when the tort related to the claim at issue: (1) had a potentially disruptive impact on maritime commerce; and (2) bore a substantial relationship to traditional maritime activity. Conner, 799 F.Supp.2d at 466–69 (holding that alleged asbestos exposure "plainly had a potentially disruptive impact on maritime commerce as to the injured parties" and finding that the allegedly-defective products bore "a substantial relationship to traditional maritime activity.").

The locality test is satisfied here, because the alleged asbestos exposure occurred when Hammell was aboard the Roan when it was docked at the Brooklyn Navy Yard and when it was at sea. See supra p.2; see also Conner, 799 F.Supp.2d at 466 ("Thus, in the case of asbestos-related disease arising from work on or around ships, the Court concludes that the locality test is satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters."); Abbay v. Armstrong Int'l, Inc., MDL No. 875, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012) (stating that "it is important to note that work performed aboard a ship that is docked at the shipyard is sea-based work, performed on navigable waters.").

The connection test is also met here, because the alleged asbestos exposure occurred when Hammell was performing sea-based tasks related to the maintenance of the Roan. See supra p.2 (describing tasks Hammell completed on the vessel); see also Conner, 799 F.Supp.2d at 467–69; Abbay, 2012 WL 975837, at *1 n.1 ("When a worker whose claims meet the locality test was primarily sea-based during the asbestos exposure,

those claims will meet the connection test necessary for the application of maritime law."). Accordingly, the Court finds that maritime law governs this case.

## II. LEGAL STANDARD APPLIED HERE: GOVERNMENT CONTRACTOR DEFENSE

The government contractor defense shields independent contractors from tort claims related to military equipment when: (1) the United States Government ("Government") approved reasonably precise specifications related to the equipment; (2) the equipment at issue conformed to those specifications; and (3) the supplier warned the Government about the dangers related to the equipment that were known to the supplier but not the Government (hereinafter, "the Boyle Test"). Boyle v. United Techs. Corp., 487 U.S. 500, 512 (1988); Faddish v. Gen. Elec. Co., MDL No. 875, 2010 WL 4146108, at *6–7 (E.D. Pa. Oct. 20, 2010).

A defendant must provide evidence that the Government adopted military specifications that prevented manufacturers from affixing information on the product at issue in order to satisfy the first factor with respect to a failure to warn claim. Faddish, 2010 WL 4146108, at *7. Such military specifications demonstrate that the Government "exercised its discretion" regarding the warnings – or lack thereof – on the product at issue. Id. The second factor is satisfied when a defendant shows that it complied with Government directives. Id. The third factor is met upon a defendant's showing that: (1) it warned the Government of the hazards related to the product at issue; or (2) the Government was equally aware of those hazards. Id. Thus, applying the Boyle Test here, Defendant would be entitled to summary judgment as to the government contractor

6

defense if: (1) the Government adopted military specifications that limited warnings affixed to the products at issue; (2) Defendant complied with those directives; and (3) Defendant warned the Government about the hazards of asbestos or the Government was already aware of such hazards.  Id.

Defendant argues that it meets each factor under the Boyle Test, and is thereby immune from liability, whereas Plaintiff disagrees.  (Compare dkt. 157-1 at 28 (arguing that Defendant "is afforded the protection of the government contractor defense, as articulated by the U.S. Supreme Court in Boyle…."), with dkt. 224 at 12–28 (arguing that the government contractor defense under Boyle does not immunize Defendant).)  The Court analyzes the opposing arguments with respect to the first factor – and the evidence submitted by the parties in support thereof – and finds that neither party is entitled to summary judgment as to the government contractor defense.

**A.     Defendant's Argument and Supporting Evidence: First Factor**

Defendant argues, with respect to the first factor, that the "Navy exercised complete discretion and control over the warnings that accompanied" all products at issue. (Dkt. 157-1 at 6.)  More specifically, Defendant contends that "[s]trict military specifications governed every characteristic of the equipment" that Defendant supplied to the Navy, "as well as any markings that could be placed on the equipment."  (Id. at 9.) Defendant cites to military specifications in support of these arguments, which it construes as having mandated "precise drawings, performance requirements, qualified materials, and size limitations, among many other detailed requirements."  (Id. at 10.)

7

Defendant relies upon, inter alia, the following military specification, which the Court summarizes below:

> **Military Specification MIL-B-18381B(SHIPS) ("MIL-B-18381B(SHIPS)"):** MIL-B-18381B(SHIPS) was adopted on May 18, 1961. The policies therein governed, inter alia, the drawing specifications, performance requirements, and size limitations for boilers supplied to the Navy.

(Dkt. 157-8 at 2–32.)

Defendant argues that MIL-B-18381B(SHIPS) was one way that the Navy exercised control over any markings that manufacturers affixed on equipment. (Dkt. 157-1 at 10.) According to Defendant, this military specification, among others, "determined the scope of … permissible warnings" sufficient to satisfy the first factor of the Boyle Test. (Id. at 10, 25.)[2]

Defendant also submits affidavits and declarations to support the argument that the "Navy controlled every aspect of the design, manufacture, testing and acceptance of every vessel and all the equipment and machinery within the vessel, including the boilers…" (Id. at 10.) The Court briefly describes one affidavit below:

> **July 12, 2007 Affidavit of Rear Admiral Ben J. Lehman ("Lehman Affidavit"):** Ben J. Lehman ("Admiral Lehman") is a Retired Navy Admiral. He commenced active duty on June 1, 1942 and worked as a Ship Superintendent and Dry Docking Officer in the Brooklyn Navy Yard from 1942 through 1944. He was promoted to Rear Admiral in 1977, when he was employed in the Naval Reserve. Throughout his service, he supervised the installation of machinery on Navy ships. Based upon this experience, he claimed to be "thoroughly familiar" with Navy specifications and inspection procedures. According to Admiral Lehman, all boilers were "designed and manufactured in accordance with detailed specifications

---

[2] The Court need not analyze each military specification cited by the parties to rule as to the government contractor defense.

8

written, approved, and issued by the U.S. Navy….." Admiral Lehman also stated that the Navy retained "final say" over the design of any piece of purchased equipment.

(Dkt. 157-6 at 2–9.)

### B. Plaintiff's Argument and Supporting Contradictory Evidence: First Factor

Plaintiff argues that Defendant fails to satisfy the first factor of the Boyle Test, and asks this Court to grant summary judgment in her favor as to the government contractor defense. (Dkt. 224 at 12, 14–18; see also dkt. 151-1.) According to Plaintiff, the evidence cited by Defendant fails "to show that the Navy prohibited, rejected, modified, or even actually considered an asbestos warning." (Dkt. 224 at 17.) Plaintiff cites, in support thereof, Section 5.1.1.3 of MIL-B-18381B(SHIPS), which the Court summarizes below:

> **MIL-B-18381B(SHIPS), Section 5.1.1.3 Marking:** Section 5.1.1.3 of MIL-B-18381B(SHIPS) provides that "marking information shall be provided on interior packages and exterior shipping containers in accordance with the contractor's commercial practice."

(Dkt. 224-26 at 26.)

Plaintiff also cites to, inter alia, the below-summarized military specification, which Plaintiff construes as having permitted manufacturers to affix warning labels to machinery:

> **MIL-STD-129, Section 2.2.10.4.3:** This military specification was adopted on April 10, 1957. Pursuant to Section 2.2.10.4.3 of this specification, all "package units of hazardous chemicals" were to be affixed with warning labels in accordance with the Manufacturing Chemists Association's Manual L-1, A Guide for Preparation of Warning

9

>Labels for Hazardous Chemicals or in accordance with appropriate Department of Defense instructions ("DOD Instructions").[3]

(Dkt. 224-25 at 30–31.)

Plaintiff also provides the following deposition testimony of Admiral Lehman to challenge Defendant's reliance on the Lehman Affidavit:

>**November 9, 2010 Deposition Testimony of Admiral Lehman:** Admiral Lehman testified that MIL-STD-129 permitted "containers of asbestos products" to bear asbestos labels.

(Dkt. 224-26 at 97, 115.)

Plaintiff argues that Admiral Lehman's testimony – in combination with Plaintiff's interpretation of MIL-B-18381B(SHIPS) and MIL-STD-129 – permitted Defendant to affix warning labels on the products that it supplied to the Navy. (Dkt. 224 at 16.) Relying upon this evidence, Plaintiff argues that Defendant "could have warned" about its hazardous products, and therefore the government contractor defense does not apply here. (Id. at 15–16.)

### C. Analysis

The Court finds that Plaintiff has submitted evidence that contradicts – or at least appears inconsistent with – the evidence provided by Defendant. Compare supra Sec. II.A, with supra Sec. II.B. Specifically, the Court cannot reconcile the parties' interpretations of MIL-B-18381B(SHIPS) and MIL-STD-129. Moreover, the deposition

---

[3] Plaintiff then cites to various sections of the DOD Instructions, which Plaintiff construes as having required a manufacturer to affix warning labels to hazardous products under MIL-STD-129, Section 2.2.10.4.3. (See dkt. 224 at 16 (citing dkt. 224-25 at 74–102).)

testimony of Admiral Lehman facially controverts statements in the Lehman Affidavit upon which Defendant relies.

Contrary to Defendant's suggestion, and based upon a review of the evidence submitted by the parties, this Court cannot find that there is no issue of fact regarding whether the Navy "decided which warnings should and should not be provided to end users" under the first factor of the Boyle Test. (Dkt. 157-1 at 27.) The evidence submitted raises genuine issues of material fact as to whether the Navy retained sufficient discretion over labeling practices to satisfy this factor. Willis, 811 F.Supp.2d at 1156. Accordingly, upon granting all reasonable inferences in favor of Plaintiff, the Court will deny Defendant's motion and Plaintiff's cross motion for summary judgment as to the government contractor defense. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Willis, 811 F.Supp.2d at 1156–57.[4]

## III. BARE METAL DEFENSE AND CAUSATION UNDER MARITIME LAW

### A. Legal Standard: Bare Metal Defense

The bare metal defense, as interpreted and applied under maritime law, limits liability imposed on a defendant to the asbestos-containing products that it manufactured or distributed. Lindstrom v. A-C Prod. Liab. Trust, 424 F.3d 488, 492–95 (6th Cir. 2005); see also Conner v. Alfa Laval, Inc., 842 F.Supp.2d 791, 801 (E.D. Pa. 2012) (adopting Lindstrom and holding that "under maritime law, a manufacturer is not liable for harm caused by, and owes no duty to warn of the hazards inherent in, asbestos

---

[4] Because the Court finds that there is an issue of fact as to the first factor of the Boyle Test, the Court need not apply the remaining factors.

products that the manufacturer did not manufacture or distribute."). Stated differently, under the bare metal defense, a defendant owes no duty to warn of the hazards inherent in asbestos products that it did not manufacture, distribute, sell, or place into the stream of commerce. Conner, 842 F.Supp.2d at 802; see also Barnes v. Foster Wheeler Corp., No. 13-1285, 2014 WL 2965699, at *3–5 (D.N.J. June 30, 2014) ("to prevail on a tort claim for asbestos exposure, plaintiff must identify an asbestos-containing product manufactured or supplied by defendant."). The bare metal defense often applies in cases where a defendant's "products and component parts are incorporated into each other or designed to be used in combination with each other (e.g., gaskets and packing incorporated into pumps and turbines, or insulation applied externally to them)." Filer v. Foster Wheeler, LLC, 994 F.Supp.2d 679, 691 (E.D. Pa. 2014). Thus, under maritime law, "the burden is on the Plaintiff to establish exposure to [an asbestos-containing] product manufactured or supplied by Defendant." Devries v. Gen. Elec. Co., MDL No. 875, 2014 WL 6746811, at *1 n.1 (E.D. Pa. Oct. 10, 2014).

    **B.    Legal Standard: Causation**

A plaintiff must establish causation for an asbestos claim under maritime law by demonstrating that: "(1) he was exposed to the defendant's product[;] and (2) the product was a substantial factor in causing the injury he suffered." Lindstrom, 424 F.3d at 492. A plaintiff may rely upon direct or circumstantial evidence to support an inference related to asbestos exposure. See id.

A mere "minimal exposure" to a defendant's product, however, is insufficient to establish causation. Id. "Likewise, a mere showing that defendant's product was present

somewhere at plaintiff's place of work is insufficient." Id. Rather, a plaintiff must show "a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural." Id. (internal citation and quotation omitted). A plaintiff, in order to survive a motion for summary judgment, must also persuade a court that the evidence related to any alleged exposure was a substantial factor in the development of an illness, and is not based on "conjecture" or otherwise "impermissibly speculative." Devries, 2014 WL 6746811, at *1 n.1 ("[N]o reasonable jury could conclude from the evidence that Plaintiff was exposed to asbestos from a product manufactured or supplied by Defendant such that it was a substantial factor in the development of his illness, because any such finding would be based on conjecture."); Sellers v. Air & Liquid Sys. Corp., MDL No. 875, 2014 WL 6736385, at *1 n.1 (E.D. Pa. Sept. 30, 2014) ("[N]o reasonable jury could conclude from the evidence that Plaintiff was exposed to asbestos from a gasket manufactured or supplied by [Defendant] such that it was a substantial factor in the development of his illness because any such finding would be impermissibly speculative.").

    **C.**    **Defendant's Arguments**

Defendant argues that Plaintiff fails to establish that Defendant manufactured or distributed alleged asbestos-containing products relevant here as a matter of law. (Dkt. 157-1 at 32–34.) Defendant, in support thereof, submits that it "is patently clear from the discovery in this case that [Plaintiff's] claims relate to alleged[] asbestos-containing component parts such as gaskets, packing and insulation." (Id. at 33.) Defendant argues that Plaintiff provides no evidence that Defendant manufactured or distributed any

13

asbestos-containing component parts. (Id.) Hammell testified, for example, that he did not know whether the gaskets and packing he removed and replaced on Defendant's boilers and superheaters were supplied by Defendant. (Id. (citing dkt. 157-4 at 82).) Moreover, Defendant contends that any original gaskets and component parts used with Defendant's products were removed and replaced "dozens of times" between 1943 and 1962, when Hammell first boarded the Roan. (Id.)

### D. Plaintiff's Arguments

Plaintiff argues that the bare metal defense does not apply here, because recent case law expanded the scope of Defendant's liability. (Dkt. 224 at 25 (citing Filer, 994 F.Supp.2d 679; Salisbury v. Asbestos Corp. Ltd., MDL No. 875, 2014 WL 345214 (E.D. Pa. Jan. 29, 2014); Founds v. Foster Wheeler LLC, MDL No. 875, 2014 WL 345224 (E.D. Pa. Jan. 29, 2014); Duenas, 2014 WL 345232, at *1 n.1).) See infra p.15 for the Court's analysis of these cases. Plaintiff also argues that Defendant had a duty to warn Hammell with respect to the boilers and superheaters because it "published a catalogue with the full range of asbestos materials that the company recommended be used with its boilers." (Dkt. 224 at 24.) Finally, Plaintiff argues that the bare metal defense does not displace traditional tort law duties. (See id. at 23–36.)

### E. Analysis

The Court finds that Defendant has established a complete bare metal defense and is therefore entitled to summary judgment in its favor on this issue. Based upon the materials submitted by the parties, the Court does not find any evidence that Defendant manufactured any alleged asbestos-containing products aboard the Roan at the time of

14

Hammell's alleged exposure. Nor does the Court find evidence that Defendant placed any injury-inducing products that caused Hammell's alleged injuries into the stream of commerce during the relevant time period. Accordingly, the Court finds that Defendant cannot be responsible for any injury-inducing product that it did not manufacture or distribute. Lindstrom, 424 F.3d at 494–95; Conner, 842 F.Supp.2d at 801–03.

      The Court also rejects the cases cited by Plaintiff to overcome the bare metal defense as factually-inapposite here. In each case cited, the relevant defendant was a shipbuilder. See Filer, 994 F.Supp.2d at 682 (considering "whether, under maritime law, a builder of Navy ships is liable under a negligence theory for asbestos-related injuries arising from products it installed aboard a ship"); Salisbury, 2014 WL 345214, at *1 n.1 (asbestos suit against shipbuilder defendant); Founds, 2014 WL 345224, at *1 n.1 (defendant "built ships"); Duenas, 2014 WL 345232, at *1 n.1 (defendant "built ships"). The bare metal defense did not apply in those cases because the shipbuilder defendants did not design or manufacture the relevant "products and component parts" that were designed to be "used in combination with each other." Filer, 994 F.Supp.2d at 691 (emphasis added); see also In re Asbestos Prods. Liab. Litig., MDL No. 875, 2011 WL 346822, at *6 (E.D. Pa. Jan. 13, 2011) (Magistrate Judge report and recommendation stating "under maritime law a defendant is only legally responsible for component parts

which it either manufactured [or] distributed"), adopted by 2011 WL 359696 (E.D. Pa. Feb. 3, 2011).[5]

Plaintiff here fails to adduce evidence sufficient to establish that Defendant supplied any alleged asbestos-containing products present while Hammell was aboard the Roan. As such, no reasonable jury could conclude from the evidence before the Court that Defendant's products caused Hammell's alleged injuries. Sellers, 2014 WL 6736385, at *1 n.1 (reasoning that "[w]hile it is possible that the [alleged asbestos-containing machinery] to which [plaintiff] was exposed [was] supplied by [Defendant], it is also possible that the [alleged asbestos-containing machinery was] supplied by another entity."). Accordingly, the Court will grant summary judgment in favor of Defendant on the issue of the bare metal defense. Devries, 2014 WL 6746811, at *1 n.1 (granting Defendant's motion for summary judgment due to the paucity of "evidence that the [alleged asbestos-containing machinery] to which Plaintiff was exposed [was] manufactured or supplied by" Defendant); Sellers, 2014 WL 6736385, at *1 n.1 (same).

---

[5] The Filer court further explained that "[b]ecause a ship is not a 'product,' the various products installed therein are not component parts of the ship; … designed to be used in connection with each other." 994 F.Supp.2d at 691.

16

## CONCLUSION

For the above-stated reasons, the Court will grant Defendant's motion for summary judgment as to the bare metal defense and enter judgment in favor of Defendant. The Court will issue an appropriate order and judgment.

      s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

**Dated:** June 26, 2015